# EXHIBIT 8

**Kroub, Gaston (Assoc-NY-IP)**

| | |
|---|---|
| From: | Gothing, Andrea L. [ALGothing@rkmc.com] |
| Sent: | Tuesday, February 07, 2006 4:01 PM |
| To: | Kroub, Gaston (Assoc-NY-IP) |
| Cc: | Preston, Thomas |
| Subject: | Amended Complaint |

>>>> Please read the confidentiality statement below <<<<

Dear Gaston,

As you are aware, under Delaware Local Rule 7.1.1, Internet Media is required to make reasonable efforts to reach an agreement with opposing counsel regarding proposed amendments to the complaint. In accordance with this rule and pursuant to our phone conversation, attached please find Internet Media's Draft Amended Complaint. I direct your attention to paragraph 38, which relates specifically to Office Depot.

Please contact me if you have any questions or comments.

Your prompt response is greatly appreciated.

Andrea


Andrea L. Gothing
Attorney
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Office phone: (612) 349-8271
E-mail address: algothing@rkmc.com

**ROBINS, KAPLAN, MILLER & CIRESI** LLP

Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this

3/15/2006

communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

3/15/2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNET MEDIA CORPORATION,<br>        Plaintiff,<br><br>v.,<br><br>DELL, INC.,<br>OFFICE DEPOT, INC.,<br>J.C. PENNEY COMPANY, INC.,<br>WILLIAMS-SONOMA, INC.,<br>J. CREW GROUP, INC.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND
DEMAND FOR JURY TRIAL**

1. Internet Media Corporation, for its causes of action against Defendants states and alleges as follows:

**NATURE OF THE ACTION**

2. This is an action for patent infringement. Plaintiff Internet Media Corporation ("Plaintiff" or "Internet Media") is the assignee of United States Patent No. 6,049,835 ("the '835 patent") entitled "System for providing easy access to the World Wide Web utilizing a published list of preselected Internet locations together with their unique multi-digit jump codes." A copy of the '835 patent is attached hereto as Exhibit 1. The '835 patent is directed generally to a system and method for quickly and easily accessing preselected desired addresses or URLs on the Internet.

## THE PARTIES

3. Plaintiff Internet Media is a Virginia Corporation having its principal place of business at 200 Winchester Street, Warrenton, VA 20186.

4. Defendant Dell, Inc. is a Delaware corporation having its principal place of business at One Dell Way, Round Rock, Texas 78682.

5. Defendant Office Depot, Inc. ("Office Depot") is a Delaware corporation having its principal place of business at 2200 Old Germantown Road, Delray Beach, FL 33445.

6. Defendant J.C. Penney Company, Inc. ("JCPenney") is a Delaware corporation having its principal place of business at 6501 Legacy Drive, Plano, Texas 75024.

7. Defendant Williams-Sonoma, Inc. ("Williams-Sonoma") is a California corporation having its principal place of business at 3250 Van Ness Avenue, San Francisco, CA 94109.

8. Defendant J. Crew Group, Inc. ("J. Crew") is a New York corporation with its principal place of business at 770 Broadway, 11 Floor, New York, New York 10003.

9. All of the Defendants are United States Corporations offering products for sale on the World Wide Web ("Web"). Each Defendant provides catalogs and print advertisements that include a plurality of product listings. Some or all of the product listings include a code that when entered into a box on a particular Web page, permits a Web user to quickly and easily access preselected desired addresses or URLs on the Web.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1338(a) because this action for patent infringement arises under the laws of the United States, including 35 U.S.C. §§ 271 and 281-285.

11. Personal jurisdiction over Defendants comports with the United States Constitution and 10 Del. C. § 3104 because Defendants are either citizens of the State of Delaware or because, upon information and belief, Defendants do business in this judicial district, have committed and continue to commit, or have contributed and continue to contribute to, acts of patent infringement in this judicial district as alleged in this Complaint, or otherwise have sufficient contacts with the state.

12. Venue is proper in this judicial district under the provisions of 28 U.S.C. §§ 1391(b), (c) and § 1400(b).

## FACTUAL BACKGROUND

13. On April 11, 2000, the '835 patent entitled "System for providing easy access to the World Wide Web utilizing a published list of preselected Internet locations together with their unique multi-digit jump codes" was duly and legally issued to Internet Media Corporation.

14. The '835 is valid and enforceable.

15. Eric F. Gagnon is the named inventor of the '835 patent. Mr. Gagnon holds a Bachelor of Arts in Business Administration from George Washington University and has been in the advertising and publishing business for over twenty years.

16. In 1994, Mr. Gagnon founded Internet Media Corp. That same year, Internet Media published "What's on the Internet," a guidebook to internet newsgroups and talk groups. Thereafter, in the fall of 1995, Internet Media published "What's on the Web," a guidebook to thousands of Web locations. Each listing in the guidebook includes a unique code. When a Web user enters the code into a box on a predetermined Web location, the user is directed to a desired Web page corresponding to the listing in the guidebook.

## COUNT I – DELL'S INFRINGEMENT OF PATENT NO. 6,049,835

17. Dell markets its products to consumers by advertising in a variety of printed publications, such as print media, catalogs and customer newsletters.

18. In 1999, Dell introduced E-Value codes, which are codes used "to provide customer and small businesses with a quick and easy way to go from a Dell print advertisement directly to the Internet for the latest price and product information." See Exhibit 2 (Press release).

19. A customer looks for the E-Value code next to the item of interest in the printed publication and then the customer submits the code online. When a customer enters the E-value code into a location on a Web page on Dell's Web site, the customer is directed to a desired Web page.

20. According to a senior vice president and general manager quoted in a Dell Press Release, "E-Value provides the simplicity and ease that are sought by many consumers and small businesses and is another example of how [Dell] continue[s] to make it easy for customers to do business online and buy direct from Dell." See Exhibit 2 (Press release).

21. Dell has directly, indirectly, contributorily, and/or by inducement, infringed claims of the '835 patent in this judicial district and elsewhere in the United States, literally and/or under the doctrine of equivalents.

22. Dell's use of the patented technology is illustrated in part by exhibits 3, 4 and 5, which are attached herewith.

23. Exhibit 3 is a copy of a page from a Dell print advertisement. Included in this print advertisement is an E-Value code for the Dell Dimension™ 2400.

24. Exhibit 4 is a copy of a screen shot of a Dell Web page. Included in this screen shot are entry boxes for entering an E-Value Code.

25. Exhibit 5 is a copy of a screen shot for a Web page for the Dell Dimension™ 2400 that resulted from the entry of the E-Value code found on Exhibit 3 into the entry boxes found on Exhibit 4.

26. The infringement by Dell of the '835 patent has injured Internet Media, has caused it financial damage, and will continue to do so unless enjoined by the Court.

27. <u>Since at least August 29, 2005, the date on which this action was filed, Dell has had actual knowledge of the '835 patent and has willfully, deliberately, and intentionally infringed the claims of said patent.</u>

**COUNT II – OFFICE DEPOT'S INFRINGEMENT OF U.S. PAT. NO. 6,049,835**

28. Office Depot, Inc. is a global supplier of office products and services. "With annual sales approaching $14 billion, Office Depot provides more office products and services to more customers in more countries than any other company." <u>See</u> Exhibit 6 (Media Relations: About Office Depot).

29. Office Depot's business segments include multiple sales channels including Internet sites and catalogs. Office Depot is a leader in every distribution channel - including catalog and e-commerce sales. <u>See</u> Exhibit 6 (Media Relations: About Office Depot).

30. "With $3.1 billion in online sales in FY'04, the Company is the world's number three Internet retailer." <u>See</u> Exhibit 6 (Media Relations: About Office Depot).

31. Office Depot provides customers with catalogs and print advertisements that include a plurality of product listings. Some or all of the product listings include a code. When a customer enters a code from a particular catalog or print advertisement into a box on a Web

page of a specific Office Depot Web site (such as www.officedepot.com or www.viking.com) the customer is directed to a desired Web page.

32. Office Depot has directly, indirectly, contributorily, and/or by inducement, infringed claims of the '835 patent in this judicial district and elsewhere in the United States, literally and/or under the doctrine of equivalents.

33. Office Depot's use of the patented technology is illustrated in part by exhibits 7, 8 and 9, which are attached herewith.

34. Exhibit 7 is a copy of a page from an Office Depot print advertisement. Included in this print advertisement is a code for Sanford® Sharpie® Permanent Fine-Point Markers.

35. Exhibit 8 is a copy of a screen shot of an Office Depot Web page. Included in this screen shot is an entry box for entering a code.

36. Exhibit 9 is a copy of a screen shot for a Web page for the Sanford® Sharpie® Permanent Fine-Point Markers that resulted from the entry of the code found on Exhibit 7 into the Web page shown in Exhibit 8.

37. The infringement by Office Depot of the '835 patent has injured Internet Media, has caused it financial damage, and will continue to do so unless enjoined by the Court.

38. Since at least August 29, 2005, the date on which this action was filed, Office Depot has had actual knowledge of the '835 patent and has willfully, deliberately, and intentionally infringed the claims of said patent.

**COUNT III– JCPENNEY'S INFRINGEMENT OF U.S. PAT. NO. 6,049,835**

39. "[JCPenney] sells family apparel, jewelry, shoes, accessories and home furnishings to customers through Department Stores, Catalog and the Internet." See Exhibit 10 (2004 Annual Report at 29).

40. "JCPenney Catalog, including e-commerce, is the nation's largest catalog merchant of general merchandise, and JCPenney.com is one of the largest apparel and home furnishings sites on the Internet." See Exhibit 11 (JCPenney Overview)

41. "Total Internet sales, which are an integral part of the Company's multichannel retailing strategy, increased approximately 32% in 2004 to $812 million." See Exhibit 10 (2004 Annual Report at 8)

42. JCPenney provides customers with catalogs and print advertisements that include a plurality of product listings. Some or all of the product listings include a code. When a customer enters the code into a location on a Web page on the JCPenney Web site, the customer is directed to a desired Web page.

43. JCPenney has directly, indirectly, contributorily, and/or by inducement, infringed claims of the '835 patent in this judicial district and elsewhere in the United States, literally and/or under the doctrine of equivalents.

44. JCPenney's use of the patented technology is illustrated in part by exhibits 12, 13 and 14, which are attached herewith.

45. Exhibit 12 is a copy of a page from a JCPenney print advertisement. Included in this print advertisement is a code for a 6-pc. Pad Set.

46. Exhibit 13 is a copy of a screen shot of a JCPenney Web page. Included in this screen shot is an entry box for entering a code.

47. Exhibit 14 is a copy of a screen shot for a Web page for the 6-pc. Pad Set that resulted from the entry of the code found in Exhibit 12 into the Web page shown in Exhibit 13.

48. The infringement by JCPenney of the '835 patent has injured Internet Media, has caused it financial damage, and will continue to do so unless enjoined by the Court.

49. <u>Since at least August 29, 2005, the date on which this action was filed, JCPenny has had actual knowledge of the '835 patent and has willfully, deliberately, and intentionally infringed the claims of said patent.</u>

**COUNT IV – WILLIAMS-SONOMA'S INFRINGEMENT OF U.S. PAT. NO. 6,049,835**

50. Williams-Sonoma's direct-to-customer segment sells products through its eight direct-mail catalogs (Williams-Sonoma, Pottery Barn, PotteryBarn Kids, Pottery Barn Bed + Bath, PBteen, Hold Everything, West Elm and Williams-Sonoma Home) and six e-commerce Web sites (williams-sonoma.com, potterybarn.com, potterybarnkids.com, pbteen.com, westelm.com and holdeverything.com). See Exhibit 15 (2004 Annual Report at 4).

51. In Fiscal Year 2004, direct-to-customer revenues increased 17.1%, driven by a 12.1% increase in catalog circulation and strong momentum in William-Sonoma's e-commerce channel. See Exhibit 15 (2004 Annual Report, Letter to Shareholders).

52. During 2004, Williams-Sonoma mailed over 368 million catalogs. See Exhibit 15 (2004 Annual Report, Letter to Shareholders).

53. Williams-Sonoma estimates that approximately 40% of its company-wide non gift registry Internet sales are incremental to the direct-to-customer channel and approximately 60% are catalog driven sales. See Exhibit 14 (2004 Annual Report at 4).

54. Williams-Sonoma's catalogs contain a plurality of product listings. Some or all of the product listings include a code. When a customer enters a code from a particular catalog (such as Williams-Sonoma) into a location on a Web page from a particular William-Sonoma Web site (such as www.williams-sonoma.com), the customer is directed to a desired Web page.

55. Williams-Sonoma has directly, indirectly, contributorily, and/or by inducement, infringed claims of the '835 patent in this judicial district and elsewhere in the United States, literally and/or under the doctrine of equivalents.

56. Williams-Sonoma's use of the patented technology is illustrated in part by exhibits 16, 17 and 18, which are attached herewith.

57. Exhibit 16 is a copy of a page from a William-Sonoma print advertisement. Included in this print advertisement is a code for Herb Snips.

58. Exhibit 17 is a copy of a screen shot of a Williams-Sonoma Web page. Included in this screen shot is an entry box for entering a code.

59. Exhibit 18 is a copy of a screen shot for a Web page for Herb Snips that resulted from the entry of the code found in Exhibit 16 into the Web page shown in Exhibit 17.

60. The infringement by Williams-Sonoma of the '835 patent has injured Internet Media, has caused it financial damage, and will continue to do so unless enjoined by the Court.

61. <u>Since at least August 29, 2005, the date on which this action was filed, Williams-Sonoma has had actual knowledge of the '835 patent and has willfully, deliberately, and intentionally infringed the claims of said patent.</u>

### COUNT V – J. CREW'S INFRINGEMENT OF U.S. PAT. NO. 6,049,835

62. J. Crew distributes products though retail stores, catalogs and a Web site located at www.jcrew.com.

63. In fiscal year 2004, J. Crew distributed 16 catalog editions with a circulation of approximately 50 million copies and approximately 5.4 billion pages circulated. See Exhibit (August 17, 2005, Form S-1 at 57).

64. In fiscal year 2004, J.Crew's Web site logged over 48 million visits. See Exhibit (August 17, 2005, Form S-1 at 58).

65. "The J. Crew catalog is the primary branding and advertising vehicle for the J. Crew brand" and the "catalog reinforces the J. Crew brand image and drives sales in all of [J. Crew's] sales channels." See Exhibit (August 17, 2005, Form S-1 at 58).

66. J. Crew catalogs contain a plurality of product listings. Some or all of the product listings include a code. When a customer enters a code from a particular catalog into a location on a Web page from J. Crew's Web, the customer is directed to a desired Web page.

67. J. Crew has directly, indirectly, contributorily, and/or by inducement, infringed claims of the '835 patent in this judicial district and elsewhere in the United States, literally and/or under the doctrine of equivalents.

68. J. Crew's use of the patented technology is illustrated in part by exhibits 20, 21 and 22, which are attached herewith.

69. Exhibit 20 is a copy of a page from a J. Crew print advertisement. Included in this print advertisement is a code for Classic wedge flip-flops.

70. Exhibit 21 is a copy of a screen shot of a J. Crew Web page. Included in this screen shot is an entry box for entering a code.

71. Exhibit 22 is a copy of a screen shot for a Web page for Classic wedge flip-flops that resulted from the entry of the code found in Exhibit 21 into the Web pate shown in Exhibit 22.

72. The infringement by J. Crew of the '835 patent has injured Internet Media, has caused it financial damage, and will continue to do so unless enjoined by the Court.

73. Since at least August 29, 2005, the date on which this action was filed, J. Crew has had actual knowledge of the '835 patent and has willfully, deliberately, and intentionally infringed the claims of said patent.

## DEMAND FOR JURY TRIAL

74. Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby respectfully requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment as follows:

A. That Defendants have infringed claims of the '835 patent literally and/or under the doctrine of equivalents;

B. That the Defendants and their respective agents, servants, officers, directors, employees and all persons acting in concert with them, directly or indirectly, be permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '835 patent;

C. That the Defendants be ordered to account for and pay to Plaintiff the damages to which Plaintiff is entitled as a consequence of the infringement of the '835 patent in an amount no less than a reasonable royalty for the use made of the invention by Defendants;

D. That such damages be trebled for the willful, deliberate, and intentional infringement by Defendants as alleged herein in accordance with Title 35 United States Code § 284;

E. That Plaintiff be awarded prejudgment interest, costs, disbursements and attorneys' fees herein in accordance with 35 U.S.C. § 285; and

F.  That Plaintiff be awarded such other and further relief as this Court may deem just and equitable.

| | |
|---|---|
| *Of Counsel:* | BLANK AND ROME LLP |
| Ronald J. Schutz<br>Diane L. Simerson<br>Andrea L. Gothing<br>Nicole N. Morris<br>ROBINS, KAPLAN, MILLER &<br>CIRESI, LLP<br>2800 LaSalle Plaza<br>800 LaSalle Avenue<br>Minneapolis, MN 55402-2015<br>(612) 349-8500 | <br>Thomas Preston<br>Chase Manhattan Centre<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>Ph: (302) 425-6478<br>Fax: (302) 425-6464<br>*Attorneys for Plaintiff* |

Dated: _____, 2006

# EXHIBIT 9

Vol. 4 Issue 34 • October 19, 1998

Mecklermedia.

# internet WORLD

The Voice Of E-Business And Internet Technology
www.iw.com

## E-Commerce
### BUYING AND SELLING ON THE NET

## THE BUSINESS CASE

# A Cyber Source For Office Supplies

**Office Depot sees a huge opportunity in online procurement**

By Karen Epper Hoffman

Market watchers believe that the real e-commerce opportunities online will be in the vast, and largely untapped, business-to-business sector. According to Forrester Research, that market will rocket from last year's $8 billion level to $327 billion by 2002.

So it's no surprise that in the race to cash in on this market, traditional business suppliers like **Office Depot** are pushing hard to seamlessly transfer to the Net the high-volume business of selling pens, paper clips, and everything else an office might need.

"Clearly, selling office supplies online is the low-hanging fruit in electronic commerce today," said Vernon Keenan, principal analyst at Keenan Vision Inc., San Francisco. "The market is complex and catalog-based, with commodity items that are price-sensitive."

Executives at the Office Depot office supplies chain certainly share that view. Having just launched the third generation of its business procurement site, Office Depot anticipates that its business customers will place 20 percent of their expected $1.6 billion in Office Depot orders electronically this year and 30 percent by 1999, according to Monica

### Big companies can save tens of millions of dollars.

Luechtefeld, the company's vice president for contract marketing.

The chain appears well on track to meet its ambitious goal. Last year, having launched its more basic second-generation site at midyear, the business services



Office Depot's Monica Luechtefeld says many early adopters of online procurement are large companies.

division took in $25 million of its overall $1.3 billion in revenue over the Internet.

But while buying a book online might be easy for an individual consumer, what's the incentive for an entire company to transition its complex ordering process to the Internet? Experts point out that while the revenue opportunities for sellers are great, the cost savings for business buyers may be even greater.

Aside from the fact that ordering office supplies is a "low-risk, non-mission-critical" entry point to electronic commerce, Luechtefeld said, "the real driver here is huge cost savings."

Luechtefeld pointed out that a study by the National Association of Purchasing Managers found that it costs between $125 and $175 to process each business purchasing order by conventional means. She added that Office Depot's own business customers claim it costs them an average $120 per purchase order—a cost that falls to about $35 when the process is automated.

"For large corporations, like Citigroup or Ford, with the right contracts, savings [by buying online] go into the tens of millions annually," said analyst Keenan.

While potential cost savings will attract companies to online

Reprinted with permission from INTERNET WORLD™, October 1998.
Copyright 1998 by Mecklermedia Corporation. All rights reserved. For reorders, call 651-582-3800.      986349

## E-Commerce

purchasing, Office Depot hopes its newly revamped service will keep business customers coming to its site—and will trump such traditional competitors as Staples.

The new site improves on Office Depot's previous business procurement site, which had been launched in mid-1997 and included purchasing controls, order approval, and inventory tracking. (Office Depot's initial foray into online business trade in 1996 was a joint effort to develop an online purchasing system for Massachusetts Institute of Technology.)

Recent enhancements include reduced ordering time, from an average of six minutes to three; a quick-ordering feature, so customers can go directly to items they want to order without going through a lengthy process; company- and user-specific requisition options; e-mail notifications that allow even employees without purchasing authority to check on order routing and status; and a broad-based adoption of the Open Buying on the Internet [OBI] protocol to guarantee that a buyer's procurement system can communicate with Office Depot's system.

Although using OBI has not yet swung much new business Office Depot's way, Luechtefeld, who is also president of the OBI Consortium, said that many large buying organizations have included OBI compatibility in their proposals. She added that more than two dozen companies have implemented OBI, or are in the process of doing so, and software firms such as Netscape, Microsoft, and CommerceOne are all launching OBI-compliant offerings.

Luechtefeld said Office Depot's various new features have not increased the size of orders, but they have reduced returns, since users can know more quickly what items are in stock and are able to more easily make alternative selections.



Business customers shop using password-protected accounts.

These new capabilities, combined with the desire for cost savings and a growing comfort with the Internet, are drawing between 200 and 225 new businesses to Office Depot's site every week.

The business site currently serves 6,800 companies that represent more than 40,000 users. Somewhat surprisingly, most of Office Depot's earliest online adopters are also its biggest customers; the vast majority of the business site's users are very large corporations, Luechtefeld said. This is a marked turnaround from a year ago, when Luechtefeld said security fears and systems integration issues had held back many companies from embracing online purchasing at all.

"It took [business customers] much longer than we expected to ramp up to online purchasing," she said. "Most of them hadn't sorted out firewall issues and had concerns about sending users out to the Web. They were just beginning to get the rules of online business interchange."

But Keenan of Keenan Vision still has his doubts—about the broad acceptance of OBI, and about the outlook for the short-term growth in online purchasing.

"OBI has not attained activation energy; right now there is an insufficient number of users to get past early adoption," he said.

While Keenan believes OBI is a vast improvement over traditional Electronic Data Interchange [EDI] systems and "has a chance for adoption," he said that competing would-be standards such as OTP and RosettaNet may hinder OBI's adoption—and interfere with Office Depot's online purchasing plans.

Keenan added that it might be possible for a big player like Office Depot, along with other OBI proponents, to "push OBI through the standards netherworld." But regardless of the potential for cost savings, he doubts that enough IT managers are focusing on the issue right now.

"Filling out procurement orders and writing checks is one of the most wasteful things a company can do," Keenan said. "So while online procurement is attractive to the CEO and the chief procurement officer, it will probably fall to the bottom of the list for IT managers, who have their hands full with Year 2000 and European currency compliance issues."

Luechtefeld, meanwhile, is undaunted. Savings will cause customers to buy online, she said, and Office Depot is well positioned to serve them when they make the move. "If a business customer wants to get started in electronic commerce," she said, "they are going to start with office supplies."

Office Depot—www.officedepot.com

---

**AT A GLANCE**

**Office DEPOT**

Office Depot
Delray Beach, Fla.

**Launched:** Sept. 1998 (third generation site); mid-'97 (original business services site launched); 1996 (first-generation business services development with MIT)

**Mission:** To sell office supplies and other merchandise to business customers, using technology to reduce costs for buyers

**Employees:** 30 in design and development (for business services online), MIS, and e-commerce support desk

**Traffic:** 6,800 companies registered for the service, with 40,000 users; 200-225 new companies visit site per week; $25 million in online orders from business services in 1997

**Development costs:** $5 million to $10 million

**Technical infrastructure:** Microsoft SiteServer 3; support modules to enhance and connect to AS/400 and IBM mainframe systems

**Competitors:** Staples, Boise Cascade

---

# Office DEPOT®

REPRINTED from

# COMPUTERWORLD

October 5, 1998 • Vol. 32 • No. 40

The World's Technology Newspaper
News updates, features, forums: www.computerworld.com

---

# Office Depot learns from experience

▸ *Upgrades Web site for corporate customers*

By Carol Sliwa

OFFICE DEPOT, INC. targeted small-business customers and consumers with the January launch of its Internet electronic-commerce site.

Now, its corporate contract customers — those who have negotiated pricing with the Delray Beach, Fla., office supplier — are getting the chance to reap the benefits of the technology used to build the Officedepot.com site.

Those Office Depot contract customers now can access the site via the World Wide Web rather than a private extranet connection. They also will see more individually tailored information because Office Depot is scrapping the cumbersome Common Gateway Interface scripts of the homegrown system, which contract customers had been using since June 1997, in favor of Active Server Pages that programmers wrote to work with Microsoft Corp.'s Site Server Commerce Edition.

"It was getting harder to update our internal system, and as we added customers at a rapid rate — about 200 to 250 customers per week — it required more hardware to do the processing," said Monica Luechtefeld, vice president of contract marketing and sales administration at Office Depot.

For corporate contract customers, a user's password needs to trigger a customized page view that displays the products the individual can order, with any special pricing. It also incorporates any business rules for the specific user, such as spending limits.

Active Server Pages — the term that Microsoft uses for the dynamic Web pages generated in the Windows NT Internet Information Server environment — can be created on the fly based on user input. Developers build templates using Hypertext Markup Language and Visual Basic scripts, and, based on user input, information is pulled from databases and inserted into the pages.

Office Depot has about 100 pages of actual logic, but they can deliver tens of thousands of customized views, said Francis Juliano, director of technology and product development at Officedepot.com.

On the back end, Office Depot programmers had to write the C++ and Visual Basic code to make the connections between Internet Information Server and existing IBM AS/400 order-processing system, where credit-card and address verification, inventory checking and order processing are done.

Because Microsoft Site Server is component-based, developers could choose only the ready-made modules they wanted to use and insert their own custom code — written in C++ and Microsoft's Component Object Model — to integrate with the AS/400 system that communicates with its mainframe databases.

**Microsoft Site Server will allow a company to update internal systems and add customers.**

### PLATFORM

"The thing about Microsoft's products [is] it's a platform," said Stan Dolberg, an analyst at Forrester Research, Inc. in Cambridge, Mass. "It has some out-of-the-box stuff, but the real benefit is that you can take it on your own terms and extend it."

Office Depot programmers wrote 25 to 30 messages specific to certain tasks to allow communication between Microsoft's Web server and IBM's AS/400.

"If you plan ahead and deliver a tight, small message vs. a large, bloaty thing, you get better performance," Juliano said. That's important in trying to encourage corporate customers to take their business online. Online ordering can reduce the time and cost of order entry, the number of errors made and the amount of unnecessary or multiple deliveries.

"Our size gives us great purchasing power," Luechtefeld said. "But the next step is to really work on reducing the total cost of a customer's order, and we need technology to help automate our processes and continue to drive costs down." □

---

**OFFICE DEPOT, INC.**

Headquarters: Delray Beach, Fla.
Founded: 1986
Number of stores: 649
Total net sales (1997): $6.7 billion
Number of corporate contract customers who order products online: 6,200

---

Copyright © 1998 #190945 by Computerworld, Inc., Framingham, MA 01701. Reprinted from COMPUTERWORLD.
Reprinted by Reprint Management Services, (717) 560-2001. http://www.rmsreprints.com — sales@rmsreprints.com