**UNREPORTED CASE 1**

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1

Not Reported in F.Supp., 1997 WL 854942 (N.D.Ga.), 45 U.S.P.Q.2d 1534
**(Cite as: Not Reported in F.Supp.)**

▷
Briefs and Other Related Documents

United States District Court, N.D. Georgia.
Emory University, Plaintiff and Counter-Defendant.
v.
GLAXO WELLCOME INC. and BIOCHEM
PHARMA INC., Defendants and Counter-Plaintiffs,
v.
Raymond F. SCHINAZI, Counter-Defendant.
**No. 1:96-CV-1868-GET.**

Dec. 16, 1997.

ORDER

TIDWELL, J.
*1 The above-styled matter is presently before the court on plaintiff Emory University's ("Emory") motion for leave to amend and supplement the complaint [docket no. 184-1].

Plaintiff moves this court for leave to amend its complaint to add an allegation that defendant Glaxo Wellcome Inc. ("Glaxo") committed willful infringement, and further, that Emory is entitled to treble damages and attorneys' fees.

*Background*

On July 23, 1996, Emory's patent 5,539,116 ("the '116 patent") issued from the U.S. Patent Office, and on that same day, plaintiff filed a complaint against defendants alleging patent infringement. Emory states that at the time the complaint was filed, Emory did not have sufficient information to demonstrate willful infringement; that is, that Glaxo had adequate knowledge prior to the issuance of Emory's '116 patent to put it on notice that Emory would obtain a patent, and that Glaxo's production and marketing of 3TC would constitute infringement.

Emory claims that it has recently obtained information that Glaxo willfully infringed Emory's '116 patent. First, according to Emory, Burroughs Wellcome was aware as early as December 1994 of Emory's pending patent application, and performed an assessment of Emory's patent rights to the compound 3TC. Emory also points to recently produced documents dated November 15, 1994 in which Burroughs Wellcome provided Glaxo Inc. with a copy of Emory's allowed 3TC patent claims for a foreign counterpart to Emory's '116 patent, and further advised Glaxo Inc. that equivalent claims were expected to issue in the United States. Finally, Emory contends that the documents reveal that Burroughs Wellcome offered to give Glaxo Inc. access to Emory's United States application file wrapper to "permit counsel to advise Glaxo of the scope and validity of the claims."

Based on this recently obtained information, Emory asks leave from this court to amend its complaint to add a claim for willful infringement, as well as treble damages and attorneys' fees.

*Discussion*

Federal Rule 15(a) allows amendments to be made by leave of court "when justice requires." Fed.R.Civ.P. 15(a). The decision whether to grant a party's request for leave to amend is within the trial court's discretion. *National Service Industries, Inc. v. Vafla Corp.,* 694 F.2d 246, 249 (11th Cir.1982). In making these determinations, the court should consider whether there has been undue delay in filing, bad faith or dilatory motive, prejudice to the opposing parties, as well as the futility of the amendment. *Local 472, Etc. v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982).

In support of its motion, Emory contends that while the decision to allow an amended supplemental complaint is within the discretion of the trial court, " unless there is a substantial reason to deny leave to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3 of 4

Not Reported in F.Supp.                                                                Page 2

Not Reported in F.Supp., 1997 WL 854942 (N.D.Ga.), 45 U.S.P.Q.2d 1534
**(Cite as: Not Reported in F.Supp.)**

amend, the discretion of the trial court is not broad enough to permit denial." *Espey v. Wainwright,* 734 F.2d 746, 750 (11th Cir.1984).

**\*2** Emory also claims its proposed amendment is not futile. Emory first contends that the filing of an infringement suit on the date the patent is issued does not preclude a finding of willful infringement where the the infringer, in this case Glaxo, had advance notice that the patent would issue. *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1193 (Fed.Cir.1996).

Additionally, Emory states that Glaxo's pre-issuance knowledge of Emory's patent rights created an affirmative duty to seek and obtain legal advice, *Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389-90 (Fed.Cir.1983), and that Glaxo's failure to allow discovery of the legal advice it received allows the trier of fact to draw the inference that the advice was unfavorable. *Kloster Speedsteel AB v. Crucible* Inc., 793 F.2d 1565, 1580 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

Finally, Emory states that Glaxo has admitted in its summary judgement motion papers that there is no issue that the Epivir 3TC products infringe the claims of Emory's '116 patent. For these reasons, Emory contends it is entitled to amend its complaint to add a claim for willful infringement, as well as to seek treble damages and recover any legal fees. 35 U.S.C. §§ 284,285.

In response, Glaxo contends that Emory's motion for leave to amend should be denied because the proposed amendment is futile, and because it was made after undue delay and would cause prejudice to Glaxo. First, Glaxo contends that Emory's motion to amend is futile. Glaxo cites authority indicating that in order to willfully infringe a patent, the patent must exist and one must have knowledge of it. *State Industries, Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed.Cir.1985). According to Glaxo, at the time the willful infringement allegedly occurred, Emory's '116 patent did not exist, and in fact, Emory's application had been rejected by the Patent Examiner.

Additionally, Glaxo contends that the legal authority cited by Emory is insufficient to support Emory's claim that Glaxo's pre-issuance knowledge was enough to support a claim of willful infringement. Glaxo claims that in the case cited by Emory, *National Presto Industries v. West Bend Co.,* 76 F.3d 1185 (Fed.Cir.1996), prior to being sued by the patentee, the defendant had notice that the Patent Office had issued a notice of allowance. According to Glaxo, this case is a narrow exception to the rule that an alleged infringer must have knowledge that an existing patent has been issued, and is not consistent with the facts in this case.

Second, Glaxo categorically denies Emory's claim that this information was "recently" discovered. Glaxo claims that as early as November 1994, Emory was fully aware that Burroughs Wellcome had a copy of Emory's patent application. According to Glaxo, Emory gave Burroughs Wellcome a copy of its patent application in connection with a potential, but never finalized, licensing agreement. Further, Glaxo maintains that Emory knew in December 1994 that Burroughs Wellcome intended to communicate this information to Glaxo Inc. because Burroughs Wellcome was negotiating on behalf of Emory with Glaxo Inc. Glaxo states that the court should deny Emory's motion as to late because Emory knew, almost three years ago, that Burroughs Wellcome had information relating to its '116 patent.

**\*3** In its reply brief, Emory restates its contention that its proposed amendment is not futile, and that its motion was not brought too late. With regard to futility, Emory states that while willfulness is usually based on conduct that occurs after a patent is issued, pre-patent conduct may also be used to support a finding of willfulness. *Minnesota Min. & Mfg. v. Johnson & Johnson,* 976 F.2d 1559, 1581-82 (Fed.Cir.1992). Emory further states that Glaxo is confusing the concept of liability, which could not arise before Emory's patent issued, with actions demonstrating willfulness, which is often based on actions occurring before the patent issued. *Milgo Elec. V. United Bus. Communication,* 623 F.2d 645, 665-66 (10th Cir.1980).

Emory concludes that Burroughs Wellcome's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 854942 (N.D.Ga.), 45 U.S.P.Q.2d 1534
**(Cite as: Not Reported in F.Supp.)**

pre-patent conduct is sufficient justification for this court to grant Emory leave to amend.

With regard to undue delay, Emory maintains that it did not have full knowledge of the facts supporting this motion because Glaxo withheld certain documents from Emory for over a year after this litigation was initiated. Specifically, Emory claims that Glaxo withheld documents evidencing that Burroughs Wellcome favorably assessed Emory U.S. patent rights in the 3TC compound, and that when offered, Glaxo Inc. declined to review documents outlining Emory's patent rights.

After reviewing the facts, as well as the authority cited by the parties, the court finds insufficient justification exists to allow Emory leave to amend its complaint to add a claim for willful infringement, including treble damages and attorneys' fees. In order to bring a claim for willful infringement, Emory must prove that the patent exists and the alleged infringer had knowledge of it. *State Industries, Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed.Cir.1985); *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556, 1562-63 (Fed.Cir.1994), *reh'g denied, in banc suggestion denied, cert. denied,* 514 U.S. 1078, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995), *citing State Industries,* 751 F.2d at 1336. According to the Federal Circuit, "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents." 46 F.3d at 1562.

The court finds further that *Milgo,* the case cited by Emory to support is contention that pre-patent conduct may be considered in determining willfulness, may be distinguished both from this case and from the prevailing case law. The court in *State Industries, Inc.* distinguished *Milgo,* by explaining that *Milgo* involved an elaborate and detailed copying scheme whereby a corps of engineers worked in secrecy for two years attempting to obtain the secret of Milgo's invention. 751 F.2d at 1238 (*citing* 623 F.2d at 652). Emory has failed to demonstrate that the egregious conduct demonstrated by the defendants in *Milgo* exists here, or justifies deviating from the general rule that in order to prove willfulness, the patentee must

prove that the patent exists and that the alleged infringer has knowledge of it.

*\*4 Finally, the court finds that there is evidence that in December 1994 Emory's '116 patent did not exist. Documents from the U.S. Department of Commerce, Patent and Trademark Office indicate that in December 1994, all of Emory's claims had been preliminarily rejected by the Patent Examiner. Indeed, it was not until almost a year and a half later, in May 1996, that the patent claims were allowed, and the patent itself did not issue until July 23, 1996. The authority cited by Emory does not support its contention that Glaxo's pre-issuance knowledge was sufficient to support a claim of willful infringement, and thus the court finds Emory's proposed amendment would be futile under Fed.R.Civ.P. 15(a).

Accordingly, Emory's motion for leave to amend [docket no. 184-1] is DENIED.

### Summary

Emory's motion for leave to amend [docket no. 184-1] is DENIED.

N.D.Ga.,1997.
Emory University v. Glaxo Wellcome Inc.
Not Reported in F.Supp., 1997 WL 854942 (N.D.Ga.), 45 U.S.P.Q.2d 1534

Briefs and Other Related Documents (Back to top)

• 1:96CV01868 (Docket) (Jul. 23, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**UNREPORTED CASE 2**

LEXSEE 2001 US DIST LEXIS 23575

**Multi–Tech Systems, Inc., a Minnesota Corporation, Plaintiff, vs. Dialpad.com, Inc., a California Corporation, Defendant.**

**Civ. No. 00–1540 (ADM/RLE)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

*2001 U.S. Dist. LEXIS 23575*

**August 28, 2001, Decided**

**SUBSEQUENT HISTORY:** Appeal denied, *Multi–Tech Sys. v. Dialpad.com, Inc., 2002 U.S. Dist. LEXIS 309* (D. Minn., Jan. 8, 2002)

**DISPOSITION:** [*1] Motions were ruled on..

**COUNSEL:** For MULTI–TECH SYSTEMS, INC, plaintiff: Kevin D Conneely, Ronald J Schutz, Darren Brayer Schwiebert, Misti Nelc, Robins Kaplan Miller & Ciresi, Mpls, MN.

For DIALPAD.COM, INC., defendant: Jeffrey John Keyes, Jay William Schlosser, Robin Caneff Gipson, Briggs & Morgan, Mpls, MN.

For DIALPAD.COM, INC., defendant: James E Parsons, Bryan K Anderson, Justin T Beck, Dani Y Rogers, Skjerven Morrill MacPherson Franklin & Friel, San Jose, CA.

For DIALPAD.COM, INC., defendant: Reginald D Steer, Skjerven Morrill Macpherson Franklin & Friel, San Francisco, CA.

For DIALPAD.COM, INC., counter–claimant: Jeffrey John Keyes, Jay William Schlosser, Robin Caneff Gipson, Briggs & Morgan, Mpls, MN.

For DIALPAD.COM, INC., counter–claimant: James E Parsons, Bryan K Anderson, Justin T Beck, Dani Y Rogers, Skjerven [*2] Morrill MacPherson Franklin & Friel, San Jose, CA.

For DIALPAD.COM, INC., counter–claimant: Reginald D Steer, Skjerven Morrill Macpherson Franklin & Friel, San Francisco, CA.

For MULTI–TECH SYSTEMS, INC., counter–defendant: Kevin D Conneely, Ronald J Schutz, Darren Brayer Schwiebert, Misti Nelc, Robins Kaplan Miller & Ciresi, Mpls, MN.

**JUDGES:** Raymond L. Erickson, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Raymond L. Erickson

**OPINION:**

ORDER

At Duluth, in the District of Minnesota, this 28th day of August, 2001.

I. Introduction

On August 9, 2001, the Court heard argument on the Plaintiff's Motion to Amend the Complaint, the Defendant's Motion Concerning the Scope of Prior Art Disclosure, and the Defendant's Motion to Compel Production of Documents. At the time of the Hearing, the Plaintiff Multi–Tech Systems, Inc. ("Multi–Tech"), appeared by Kevin D. Conneely, Esq., and the Defendant Dialpad.com, Inc. ("Dialpad"), appeared by Bryan K. Anderson, Esq. For reasons expressed at the Hearing, and briefly reiterated below, we grant the Plaintiff's Motion to amend the Complaint, and we grant, in part, the Defendant's Motion concerning the scope of prior art disclosures. We further grant, [*3] in part, the Defendant's Motion to Compel production of documents.

II. Discussion

A. Multi–Tech's Motion to Amend the Complaint.

Multi–Tech seeks to amend its Complaint, in order to add a claim of willful infringement, as it contends that Dialpad has continued its infringing activities even after it learned of Multi–Tech's assertions of infringement. The deadline in this case for amending the pleadings was August 22, 2001. n1

n1 The original deadline to amend the plead-

2001 U.S. Dist. LEXIS 23575, *3

ings was June 21, 2001, but the parties agreed, by stipulation, adopted by the Court on May 14, 2001, to extend a number of the deadlines in the Pre-trial Order, including the deadline to amend the pleadings.

Multi-Tech contends that Dialpad has known about its contention, concerning Dialpad's alleged infringement of four of Multi-Tech's patents, since the inception of this lawsuit in February of 2000. However, Dialpad still continues to offer the purportedly infringing product to consumers, and has not produced an attorney opinion as [*4] a potential shield to a willfulness claim. n2 Dialpad argues, however, that the willfulness claim is futile, and that the addition of the claim would prejudice it. We disagree.

    n2 Multi-Tech stresses, however, that the presence of an attorney opinion should not prevent the requested amendment, as such an opinion is only one factor in determining willful infringement. See, *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed. Cir. 1992)*("It is well settled that a potential infringer having actual notice of another's patent has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe," but "legal advice is only one factor to be considered, and an opinion of counsel does not guarantee against a finding of willfulness.").

1. Standard of Review. Where, as here, a Plaintiff seeks to amend its Complaint, *Rule 15(a), Federal Rules of Civil Procedure*, dictates [*5] that leave to amend shall be "freely given when justice so requires." *DeRoche v. All American Bottling Corp., 38 F. Supp.2d 1102, 1105–06 (D. Minn. 1998)*. The Supreme Court has explained the purposes of Rule 15(a) as follows:

    If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*; see also, *ARE Sikeston v. Weslock National, Inc., 120 F.3d 820, 832 (8th Cir. 1997); Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989)*.

Although we begin with a presumption of liberality, the right to amend is not absolute, see, *Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services, 188 F.3d 932, 939 (8th Cir. 1999)*, [*6] and an amendment to a pleading can be successfully challenged on the grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted. See, *Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999); Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989); Holloway v. Dobbs, 715 F.2d 390, 392–93 (8th Cir. 1983)*; but cf., *Karl's Inc. v. Sunrise Computers, Inc., 901 F.2d 657, 660 (8th Cir. 1990)*("colorable showing" sufficient to withstand application of clearly frivolous rule).

2. Legal Analysis. Dialpad initially asserts that Multi-Tech's Motion to amend would be futile, and it advances two bases for that assertion, but both fail. The first argument is that Multi-Tech has only made "mere allegations of willful infringement," and that such allegations, without support, are deficient. In particular, Dialpad notes that a claim of willful infringement focuses on the intent, reasonableness and belief of the alleged [*7] infringer, with respect to that asserted patent rights. See, e.g., *Pall Corp. v. Micron Separations, 66 F.3d 1211, 1221 (Fed. Cir. 1995)*. In order to obtain punitive damages for willful infringement, a patent holder must prove, by clear and convincing evidence, that the alleged infringer acted with the requisite disregard of the asserted patent rights. Id. Thus, in order to amend the Complaint, Dialpad argues that Multi-Tech must plead the willful infringement with particularity. It has provided no cases which support that proposition, however, and we have been unable to uncover any such authority. n3 Moreover, since *Rule 8(a), Federal Rules of Civil Procedure*, only requires "notice pleading," we find that the proposed amendment, at least in regard to the particularity of the amendment, is properly pled.

    n3 Dialpad cites the case of *Xilinx v. Altera, 1993 U.S. Dist. LEXIS 20724* and *1994 U.S. Dist. LEXIS 19362, 1993 WL 767688 (N.D. Cal., October 25, 1993, and February 8, 1994)*, in an attempt to support the proposition that Multi-Tech must plead willful infringement with particularity. However, that case, and the cases cited therein, stand for the proposition that the affirmative de-

fense of inequitable conduct on the Patent Office must be plead with particularity. Id. Thus, we find the decision inapposite.

[*8]

Dialpad also argues that Multi-Tech's assertion of willfulness treads upon its constitutional right to have its case heard before the Courts. In particular, Dialpad contends that it has simply continued innocent conduct, while exercising its right to have its case heard by the Court. While, in the end, such an assertion may prove to be true, Dialpad's argument is directed more at the substance of the willfulness claim, and such an inquiry is not appropriate under the Motion to Dismiss standard, which governs our futility analysis. See, e.g., See, *Becker v. Univ. of Nebraska at Omaha, supra at 908.* n4

> n4 Dialpad argues that, if we allowed the proposed amendment, the amendment cannot be asserted under *Rule 15(c), Federal Rules of Civil Procedure,* which allows the relation back of an amendment to the original Complaint but, rather, that the amendment must be deemed a supplemental pleading, as the "transactions or occurrences or events * * * happened since the date of the pleading sought to be supplemented." *Rule 15(d), Federal Rules of Civil Procedure.* Dialpad has not cited any cases which support such a proposition, however. Moreover, as Dialpad's duty of "good faith" arose at the time that it learned of the alleged infringement, we believe that an amendment for willful infringement is properly within the confines of Rule 15(c), rather than Rule 15(d).

[*9]

Finally, Dialpad contends that it will be prejudiced by this amendment. We note, however, that the deadline for amending the pleadings, which was established by the stipulation of the parties, had not passed at the time that Multi-Tech filed, and the parties argued, this Motion. Moreover, any discovery related to the alleged willful infringement claim would largely be in Dialpad's possession, as the issue turns on the reasonableness of Dialpad's actions — so any discovery, which relates to that issue, is self-effectuating. Therefore, finding no merit in the Defendant's argument, that the proposed willfulness amendment would be futile, or prejudicial, we grant Multi-Tech's Motion to Amend.

B. Dialpad's Motion Concerning the Scope of Prior Art Disclosures.

Dialpad seeks to add seventeen prior art references to its Prior Art Statement, which was served, in accordance

with our Pretrial Order, on March 19, 2001. Our Pretrial Order specifically stated:

> Defendant can add prior art to its original Statement only by leave of court, upon a showing:
>
> a. that it was not and could not reasonably have been located earlier by defendant; and
>
> b. that it is not merely cumulative [*10] of prior art already listed, and
>
> c. how defendant will be prejudiced if leave is denied, and plaintiff will not be prejudiced if leave is given.

Multi-Tech contends that Dialpad has not complied with these dictates and, therefore, that Dialpad's Motion to amend its prior art statement should be denied.

The seventeen references that Dialpad seeks to add to its Prior Art Statement can be broken down into three parts: fourteen references that were cited against the Multi-Tech patents-in-suit by other defendants, in the paralleling litigation; one reference — the Micron reference — that Dialpad contends Multi-Tech failed to produce through discovery until after Dialpad's prior art disclosure was required; and two references which Dialpad just recently discovered.

In regard to the fourteen references which were cited in the paralleling litigation against the same patents-in-suit, which are at issue here, we find that Dialpad has carried its burden in showing that the references are not cumulative and, most importantly, that Multi-Tech will not be prejudiced by the addition of these references. In particular, Multi-Tech has already been set to the task of defending against [*11] these references, by the identification of such references in the paralleling litigation, so there can be no legitimate claim of surprise or prejudice. Thus, we find no cogent reason to prevent Dialpad from adding these fourteen references to its Prior Art Statement, and the same is true for the Micron reference, as Multi-Tech had notice of that reference, as it own discovery responses confirm. Therefore, we find that it will not be prejudiced by the addition of the Micron reference. Thus, we grant Dialpad's Motion to add references 1, and 4–17.

In regard to the remaining two references, however, both of which Multi-Tech had no notice of until Dialpad requested permission to add the references to its Prior Art Statement, we believe there would be prejudice to Multi-Tech. Moreover, Dialpad has not shown why it could not

have identified these references in its original Prior Art Statement. Thus, we deny the Motion to add references 2 and 3.

C. Dialpad's Motion to Compel Production of Documents. n5

n5 Dialpad had also sought leave to amend its Answer but, since it filed this Motion, the parties have stipulated to that amendment. Therefore, the request for leave to amend is no longer an issue and, as a consequence, we deny that Motion, as moot.

[*12]

Dialpad seeks to Compel Multi-Tech to turn over documents with regard to two issues. First, Dialpad seeks "all documents relating to every executed or proposed patent assignment, license, offer to assign or license, covenant not to sue or grant of rights concerning the Multi-Tech patents-in-suit." Specifically, there appears to still be a dispute regarding licensing agreements with AT&T Microelectronics and its successor in interest, Lucent Technologies; PhoneFree; and Really Easy Internet.

While Multi-Tech seems to concede that the agreements themselves may be relevant to determine damages in this case, especially the "reasonable royalty" determination, it strongly objects to discovery of the settlement negotiations. First, it contends that *Rule 408, Federal Rules of Evidence*, n6 precludes the admission, into evidence, of such negotiations. However, as pointed out by Dialpad, Rule 408 goes to admissibility, and not discoverability. Of course, to be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1), Federal Rules of Civil Procedure.*

n6 Rule 408 provides as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[*13]

Second, Multi-Tech contends that it should not have to turn over the settlement negotiations because the agreements are the result of litigation, rather than an arms-length transaction for the license and, therefore, they do not represent a "reasonable royalty." However, we do not believe that such a determination is properly the province of Multi-Tech alone — rather, Dialpad should be able to test the licensing agreements by being able to weigh the factors that went into the final agreements which were reached. Therefore, we find that the licensing agreements, as well as the underlying negotiations, are relevant to this action, and Multi-Tech shall consequently produce them to Dialpad. As we stated at the Hearing, however, such a disclosure does not include documents privileged as attorney-client communications, or as attorney work product, where the mental impressions of the attorneys are disclosed, for example, or where the current negotiations have not reached an accord. Thus, on the issue of licensing agreements, we grant Dialpad's Motion to Compel, except as to privileged documents.

Dialpad also seeks an Order compelling Multi-Tech to produce all responsive documents from [*14] all named inventors. On November 8, 2000, counsel for Dialpad sent a letter to counsel for Multi-Tech, which requested the following confirmation:

Multi-Tech's production will include all responsive materials in its possession, custody or control, including but not limited to responsive material from the files of the named inventors (whether at work, home or elsewhere) and prosecution counsel and their firms. If Multi-Tech does not intend to search for and produce responsive materials maintained in such files, we will need to take the issue to the Court and issue appropriate subpoenas.

Exhibit J to Andrew D. Mastin Decl.

Multi-Tech responded by stating that it would "produce responsive documents from the inventors' files which may be located off Multi-Tech premises, if any exist." Exhibit K to Andrew D. Mastin Decl. Dialpad contends, however,

that Multi–Tech has not produced all responsive documents from Floreat, Inc. ("Floreat"), or from the named inventors, Ping Li ("Li"), Sidhartha Maitra ("Maitra"), or Steve Young ("Young"). n7

n7 Floreat, Inc. is a company that was contracted to create software for the Multi–Tech modem that is described in the patents-in-suit. Floreat, Inc. employed the non–Multi–Tech inventors.

[*15]

According to Multi–Tech, it has produced all responsive documents that it has in its possession, custody, or control. In particular, with regard to Floreat, which is an independent third-party, Multi–Tech does not have any of Floreat's documents in its possession, custody, or control. With regard to Young, Multi–Tech claims that he is not an employee of Multi–Tech but, rather, is an employee of Floreat, and that Dialpad has subpoenaed documents from, and already deposed Young, who stated that he did not have any documents responsive to Dialpad's request. Moreover, Multi–Tech does not have any of Young's documents in its possession, custody, or control. With regard to Li and Maitra, neither one still work for Multi–Tech. Although Multi–Tech has attempted to find Li, it has been unsuccessful and, with regard to Maitra, he unfortunately died one month prior to the filing of this Complaint. Thus, it appears Multi–Tech has done all that it can to disclose the documents it has in its possession, custody, or control.

Stated otherwise, we are obligated to accept Multi–Tech's representation, that it has searched for relevant documents, in its control or possession, and has produced those [*16] documents, as being truthful. Both parties know that the potential sanction for anything less than full disclosure is an instruction to the Jury on the "spoliation of evidence," unless a more draconian remedy is appropriate, under *Rule 37, Federal Rules of Civil Procedure*, or pursuant to the inherent power of the Court to preserve its processes. n8 Therefore, we deny Dialpad's Motion to Compel, in regard to responsive documents from certain inventors, which are not in the care, custody, or control of Multi–Tech.

n8 As we have previously expressed:

As a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, [ *Marvin] Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996)*. As we have stated elsewhere, "we have no

means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Id. It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of *Rule 26, Federal Rules of Civil Procedure*, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, Id., citing, *Sylla Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995)*, cert. denied, *U.S. , 116 S. Ct. 84, 133 L. Ed. 2d 42 (1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993); SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992); Scout v. City of Gordon, 849 F. Supp. 687, 690–91 (D. Neb. 1994); Capallupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989);* cf., *Baker v. General Motors Corp., 86 F.3d 811, 817 (8th Cir. 1996)*, cert. granted, *U.S. , 117 S. Ct. 1310 (65 USLW 3647* (U.S., March 24, 1997).

*Onwuka v. Federal Express Corp., 178 F.R.D. 508, 514 (D. Minn. 1997).*

The same cautionary applies here.

[*17]

NOW, THEREFORE, It is —

ORDERED:

1. That the Plaintiff's Motion to Amend the Complaint [Docket No. 40] is GRANTED.

2. That the Defendant's Motion Concerning Scope of Prior Art Disclosure [Docket No. 35] is GRANTED, in part, and DENIED, in part.

3. That the Defendant's Motion to Compel Production of Documents [Docket No. 37] is GRANTED, in part, and DENIED, in part.

4. That the Defendant's Motion to Amend its Answer [Docket No. 37] is DENIED, as moot.

BY THE COURT:

Raymond L. Erickson

UNITED STATES MAGISTRATE JUDGE

**UNREPORTED CASE 3**

LEXSEE 2000 U.S. DIST. LEXIS 10419

**SMITHKLINE BEECHAM CORPORATION and BEECHAM GROUP, p.l.c., Plaintiffs, vs. APOTEX CORP., APOTEX, INC., and TORPHARM, INC., Defendants.**

**98 C 3952**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2000 U.S. Dist. LEXIS 10419*

**July 13, 2000, Decided**
**July 17, 2000, Docketed**

**DISPOSITION:** [*1] Plaintiffs' motion (Doc 95-1) to amend their complaint granted.

**COUNSEL:** For SMITHKLINE BEECHAM CORPORATION, plaintiff: William F. Conlon, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, p.l.c., plaintiffs: John W. Treece, Richard J. O'Brien, Sidley & Austin, Chicago, IL.

For SMITHKLINE BEECHAM CORPORATION, BEECHAM GROUP, p.l.c., plaintiffs: Ford F. Farabow, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For APOTEX, CORP., TORPHRAM, INC., APOTEX, INC., defendants: Hugh L. Moore, Richard Philip Beem, Scott B. Feder, Keith D. Parr, Paul J. Molino, William Andrew Rakoczy, Deanne M. Mazzochi, Lord, Bissell & Brook, Chicago, IL.

**JUDGES:** Charles P. Kocoras, United States District Judge.

**OPINIONBY:** Charles P. Kocoras

**OPINION:**

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Before the Court is Plaintiffs' Motion to Amend their Complaint. For the reasons set forth below, Plaintiffs' Motion is granted.

**BACKGROUND**

Plaintiffs SmithKline Beecham Corporation and Beecham Group, p.l.c. (collectively "SmithKline") filed a one-count patent infringement complaint against Defendants Apotex Corp., Apotex, Inc. and TorPharm, Inc. [*2] (collectively "Defendants") on June 26, 1998. Through this motion, SmithKline seeks an order permitting it to amend this complaint.

We have fully set forth a full rendition of the facts underlying this dispute in several previous opinions, see *SmithKline Beecham Corp. v. Apotex Corp., 2000 U.S. Dist. LEXIS 667, 2000 WL 116082* (N.D. Ill. Jan. 24, 2000); *SmithKline Beecham Corp. v. Apotex Corp., 1999 U.S. Dist. LEXIS 7249, 1999 WL 311697* (N.D. Ill. May 13, 1999), thus we will set forth only those facts necessary to the issues raised by the parties.

On January 26, 1988, the United States Patent and Trademark Office granted Beecham Patent No. 4,721,723 ("the '723 Patent"), for an invention called "Anti-Depressant Crystalline Paroxetine Hydrochloride Hemihydrate." Beecham eventually assigned the patent to SmithKline, which markets the paroxetine as a pharmaceutical drug, Paxil. The initial complaint claims that Defendants violated *35 U.S.C. §§ 271*(b), 271(e) and 281-283 when SmithKline received a letter from TorPharm, informing and notifying SmithKline that through its United States agent, Apotex Corp., TorPharm had previously filed Abbreviated New Drug Application ("ANDA") No. 75-356 with [*3] the United States Food and Drug Administration ("FDA") for "Paroxetine HCl Tablets." The letter claimed to constitute a Notification of Certification of non-infringement under Section 505(j)(2)(B) of the Federal Food, Drug and Cosmetic Act, *21 U.S.C. § 355(j)(2)(B)(i)* and (ii), and advised SmithKline that unlike the '723 Patent which is in hemihydrate form, because TorPharm's product contained paroxetine hydrochloride solely in an anhydrous state, TorPharm Division believed that its "Paroxetine HCl

Tablets" did not infringe upon the '723 Patent. SmithKline disputes this claim, arguing that paroxetine hydrochloride in an anhydrate form will convert into a hemihydrate form. Accordingly, SmithKline claims that ANDA No. 75-356 for "Paroxetine HCl Tablets" infringes on the '723 Patent.

With fact discovery closed, Plaintiffs now wish to amend their complaint to add allegations that Defendants willfully infringed the '723 Patent, as embodied in proposed paragraphs 15 and 16:

> 15. Defendants Apotex, Inc, Apotex Corp., and TorPharm, Inc. have willfully infringed the '723 patent.
> 16. Defendant Apotex, Inc. has willfully directed and/or induced infringement of [*4] the '723 patent by defendants Apotex Corp. and Torpharm, Inc.

Plaintiffs also seek to amend their prayer for relief so that it reads as follows:

> WHEREFORE, Plaintiffs SB and Beecham demand judgment against Defendants and respectfully requests that this Court enter Orders:
>> (a) prohibiting any approval by the FDA of TorPharm's paroxetine HCl tablets on any effective date prior to the date of expiration of the '723 patent, or such later date as the Court may determine;
>> (b) enjoining Defendants from the commercial manufacture, use, or sale of its Paroxetine HCl tablets until the expiration of the '723 patent, or such later date as the Court may determine;
>> (c) awarding SB and Beecham reasonable attorney fees; and
>> (d) awarding SB and Beecham such further and additional relief as this Court deems just and proper;

The impetus of the proposed amendment is the April 18, 2000 deposition of Dr. Bernard Charles Sherman, Defendant Apotex, Inc.'s Chairman, who also exerts de facto control over all the Defendants. Sherman's deposition testimony was that he personally directed Defendants' attempts to circumvent SmithKline's patent to produce and market their paroxetine. [*5] Thus, Sherman was aware of the '723 patent and that SmithKline would file suit to enforce it.

Despite this knowledge, Sherman testified that he could not recall consulting with legal counsel on whether Defendants were infringing the '723 patent. Rather, he testified that he formulated his own conclusion that Defendants would not infringe the patent if they utilized the prior art material and produced the paroxetine in an anhydrous state. Sherman subsequently refused to answer whether Defendants obtained a written legal opinion on the '723 patent, but following the advice of counsel, asserted an attorney-client privilege. This motion followed.

## DISCUSSION

SmithKline moves to amend its complaint to allege that the Defendant willfully infringed the '723 patent by failing to obtain legal advice prior to filing the ANDA. Defendants argue that it would be futile to permit the amendment, that the amendment is in bad faith, and granting leave to amend would prejudice them.

### I. Futility

Federal Rule of Civil Procedure 15(a) provides that a party seeking to amend a pleading must obtain leave of court or written consent of the opposing party. See Garner v. Kinnear Mfg. Co., 37 F.3d 263, 269 (7th Cir. 1994) [*6] (citing Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992)). District courts may grant leave to amend pleadings under Rule 15(a) of the Federal Rules of Civil Procedure, which absent harm to the other party "shall be freely given when justice so requires." See Fed. R. Civ. Proc. 15(a). Leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment." Perrian, 958 F.2d at 194; see also General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997) (citing inter alia Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc., 125 F.3d 468, 480 (7th Cir. 1997) (citing Ferguson v. Roberts, 11 F.3d 696, 706 (7th Cir. 1993)). Once defendant has answered, it is within the discretion of the district court to allow plaintiff to amend its complaint. See Bower v. Jones, 978 F.2d 1004, 1008 (7th Cir. 1992). [*7]

Defendants do not claim that SmithKline unduly delayed seeking to assert its willful infringement claim, but initially claim that the amendment is futile. It is within the discretion of a district court to deny leave to amend when the proposed amendment is futile. See Garcia v. City of Chicago, Illinois, 24 F.3d 966, 970 (7th Cir. 1994). A proposed amendment is futile when: (1) it does not state a valid liability theory; (2) it is insufficient to withstand

2000 U.S. Dist. LEXIS 10419, *7

a motion to dismiss; (3) it simply uses different language to restate the previously plead facts; or (4) it reasserts a previously determined claim. See *Bowers, 978 F.2d at 1008; Garcia, 24 F.3d at 970.*

Defendants claim that the proposed amendment is insufficient to withstand a motion to dismiss because willful infringement requires an actual infringement and an ANDA is merely a technical infringement. However, this argument belies the underlying basis of SmithKline's proposed amendment and is contrary to a case directly on point.

The proposed amended complaint evidences that SmithKline does not seek to assert that Defendants' willfully infringed of its patent based on filing [*8] its ANDA. Rather, the proposed basis of the willfulness claim is Defendants' alleged failure to secure legal advice prior to filing the ANDA, which we believe is sufficient to survive a motion to dismiss.

Under *35 U.S.C. § 285,* a patentee may be awarded reasonable attorney fees in "exceptional cases." One such "exceptional case," is when a willful infringement has occurred. See *L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1128, 25 U.S.P.Q.2D (BNA) 1913 (Fed. Cir. 1993).* If an infringement is determined to have been willful, the patentee may be awarded attorneys fees, or an increased damages amount. See *Electro Medical Systems v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994).* Willfulness is a factual determination made in consideration of the totality of the circumstances, which requires a finding supported by clear and convincing evidence that the infringer acted without regard for the patent and without a reasonable basis for believing that it had a right to act in an infringing fashion. See *American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523, 1530 (Fed. Cir. 1993) [*9]* (citing *Stickle v. Heublein, Inc., 716 F.2d 1550, 1565, 219 U.S.P.Q. (BNA) 377, 378 (Fed. Cir. 1983);* Studiengesellschaft Kohle, m.b. *H. v. Dart Indus., Inc., 862 F.2d 1564, 1573, 9 U.S.P.Q.2D (BNA) 1273, 1282 (Fed. Cir. 1988)).*

Evidence that the infringer acted without regard for the patent and without a reasonable basis for believing that it had a right to act in an infringing fashion may be demonstrated by the infringer's failure to obtain adequate legal counsel regarding the patent. An affirmative duty is imposed under the law to refrain from infringing upon known patent rights, which normally requires requesting and obtaining capable legal counsel prior to undertaking activities that could result in infringing said patent rights. See *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056, 32 U.S.P.Q.2D (BNA) 1017 (Fed. Cir. 1994).* While there are no inflexible maxims for determining the occurrence of willfulness, see id.,

and the absence of an opinion by counsel is not outcome determinative, it nonetheless is a primary factor in making the willfulness determination. See *Kloster Speedsteel AB v. Crucible, Inc., 793 F.2d 1565, 1579–80, 230 U.S.P.Q. 81, 91 (Fed. Cir. 1986).* [*10]

Defendants point out that they have not manufactured, used, sold, or offered to sell its anhydrous form of paroxetine hydrochloride. Rather, Defendants have merely filed an ANDA, which is not an actual infringement, but only an artificial one. See *Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 675, 110 S. Ct. 2683, 110 L. Ed. 2d 605 (1990).* Defendants argue this is insufficient to support a willful infringement claim because such a claim requires an actual infringement. Accordingly, Defendants argue that SmithKline's proposed willful infringement count is futile.

SmithKline counters that Defendants have not cited any controlling, favorable case law, and in contrast, they tender a recent case from the Southern District of New York which supports its argument that a patentee may seek attorneys fees by asserting a willful infringement claim in an ANDA case. See *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc., 21 F. Supp. 2d 366, 48 U.S.P.Q.2D (BNA) 1741 (S.D.N.Y. 1998).* In Yamanouchi, the patentee asserted that the defendant willfully infringed its patent for an anti–ulcer compound by filing an ANDA. See *Yamanouchi, 21 F. Supp. 2d at 369.* [*11] Following a bench trial, the court rejected the infringer's argument that a willful infringement action was improper when the infringement at issue consisted of the mere filing of an ANDA. See *Yamanouchi, 21 F. Supp. 2d at 377, n. 18.* The court based its conclusion on *Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir. 1997),* stating that "the Federal Circuit has elaborated that the ANDA filing represents a substantive infringement if the generic drug that would ultimately be produced under the ANDA would infringe the targeted drug." *Yamanouchi, 21 F. Supp. 2d at 377, n. 18.* Thus, the court rejected the infringer's argument and permitted the patentee to seek a fee award based on its claim that the infringer willfully infringed the patent at issue by failing to obtain competent legal counsel prior to initiating any possibly infringing activity. See *id. at 377.*

Finding no error in the court's decision in Yamanouchi, and in the absence of Defendants asserting any contrary case law, there exists a legal basis for SmithKline's willful infringement count against Defendants sufficient to avert an adverse ruling [*12] on a motion to dismiss. Thus, we reject Defendant's argument, and hold that it would not be futile to permit SmithKline to assert a willful infringement count against Defendants where the alleged infringement consists of

filing an ANDA.

## II. Bad Faith & Prejudice

Defendants next argue n1 that permitting SmithKline to pursue a willfulness claim would prejudice them by forcing them to either waive attorney client and work product privileges, or not be able to properly defend their case. They further argue, without citing any supporting authority, that to permit SmithKline to plead and proceed with discovery on the willfulness issue would be tantamount to reversible error. This argument, however, goes against the weight of the law in this District, which condones coinciding discovery on issues of both willfulness and liability. See *Dentsply Int'l, Inc. v. Kaydex, 1994 U.S. Dist. LEXIS 9838,* 93 C20099, 1994 WL 376276 at *1 (N.D. Ill. July 11, 1994); *Remcor Prods. Co. v. Servend Int'l, Inc., 1994 U.S. Dist. LEXIS 15473,* 93 C1823, 1994 WL 594723 (N.D. Ill. Oct. 28, 1994); *Caterpillar v. Deere Co., 1997 U.S. Dist. LEXIS 550,* 96 C5355, 1997 WL 17798 (N.D. Ill. Jan. 14, 1997) (denying motion to stay willfulness discovery). [*13] Further, Defendants' bald proposition that the Seventh Circuit would summarily reverse an order permitting SmithKline to assert a willfulness claim is specious and the case law repudiates it. See *Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991)* (Failure to order separate trial in attorney-client/willful infringement situations does not mandate reversal).

> n1 Defendants also make a cursory argument that permitting SmithKline to pursue a willfulness claim would be premature because the case is not about past conduct, but future rights. This is essentially the same argument they proffered in support of their unsuccessful claim of futility, which we reject without further comment.

Moreover, Defendants' argument is premature. Permitting SmithKline to amend its complaint to assert a willfulness claim does not force Defendants to choose between asserting their attorney-client privilege and defending this count. Defendants remain free to assert this claim at an appropriate time. Any prejudice [*14] to Defendants, if there truly is any, may be avoided by moving for bifurcation of the issues for trial under *Federal Rule of Civil Procedure 42,* or by moving for an in-camera inspection. This is especially true given the wide latitude afforded courts in managing patent litigation. See

*Dentsply Int'l, Inc. v. Kaydex, 1994 U.S. Dist. LEXIS 9838,* 93 C20099, 1994 WL 376276 at *1 (N.D. Ill. July 11, 1994). However, bifurcation is not a foregone conclusion for willfulness/attorney-client privilege cases, even at a later stage of the litigation, see *Keyes Fibre Co. v. Packaging Corp. of America, 763 F. Supp. 374, 375, 19 U.S.P.Q.2D (BNA) 1472 (N.D. Ill. 1991),* but warrants consideration when the specific communications at issue demonstrate that a party is confronted with the choice argued by Defendants. Despite these clear pronouncements, Defendants have not provided us with the elements of an attorney-client assertion, much less any communications demonstrating the choice argued by Defendants. Even if we were privy to such communications, however, the argument remains premature and does not provide a basis for preventing SmithKline from being given leave to amend its complaint.

## III. [*15]  Canadian Litigation

Finally, Defendants argue that Canadian courts has already litigated whether the anhydrous paroxetine will convert to hemihydrate form, and entered judgment for Defendants. The court entered judgment on April 20, 1999. Defendants notified SmithKline of the ANDA in May of 1998, well before the decision of the Canadian Court. Had Defendants obtained this judgment prior to making their determination of whether to file the ANDA, it could have impacted the willfulness determination. See *Underwater Devices, Inc. v. Morrison–Knudsen Co., 717 F.2d 1380, 1389–90 (Fed. Cir. 1983)* (determination of whether infringement will occur must happen before undertaking any potentially infringing acts). However, the law does not provide for 20/20 hindsight retroactively wiping the slate clean and removing the basis for a willfulness claim. See *Johns Hopkins University v. Cellpro, Inc., 152 F.3d 1342, 1362–63 (Fed. Cir. 1998).* Rather, the relevant arena of analysis will be the reasonableness of the inquiry conducted by Defendants prior to the ANDA letter. Accordingly, the Canadian litigation does not preclude the amendment of SmithKline's complaint. [*16]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend their complaint is granted.

Charles P. Kocoras

United States District Judge

Dated: July 13, 2000