**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNET MEDIA CORPORATION,

Plaintiff,

v.

DELL, INC., OFFICE DEPOT, INC., J.C.
PENNEY COMPANY, INC., WILLIAMS-
SONOMA, INC., J. CREW GROUP, INC.

Defendants.

Civil Action No. 05-633 (KAJ)

## DEFENDANT OFFICE DEPOT, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant and Counterclaimant Office Depot, Inc. ("Office Depot") provides the following objections and responses to Plaintiff Internet Media Corporation's ("IMC") First Set of Interrogatories.

### GENERAL OBJECTIONS

1.    Office Depot objects to the definitions and instructions contained in IMC's First Set of Interrogatories to the extent that they seek to impose a duty on Office Depot beyond that which is required under the Federal Rules of Civil Procedure and/or the Local Rules of the District of Delaware.

2.    Office Depot objects to these interrogatories to the extent that they call for the production of documents and things that are immune from discovery under the

DEL-FS1\153652v01

attorney-client privilege, the work-product doctrine, or any other applicable privilege. Such information will not be provided in response to these interrogatories.

3.    Office Depot objects to these interrogatories to the extent that they require Office Depot to provide information that is not relevant to the claims or defenses of any party asserted in the litigation or not reasonably calculated to lead to the discovery of admissible evidence under Fed. R. Civ. P. 26.

4.    Office Depot objects to these interrogatories to the extent that they seek information that is equally available to IMC.

5.    Office Depot objects to these interrogatories to the extent that they require Office Depot to interview or otherwise contact an unreasonably large number of present and/or former employees. Office Depot will use reasonable diligence to obtain properly discoverable information in response to these interrogatories.

6.    Office Depot objects to these interrogatories to the extent that they call for information subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Office Depot is required to protect and/or maintain the confidentiality of a third party's information. Notwithstanding this objection, Office Depot will initiate any process of notification to such third parties as may be required by Court Order or said agreements as a predicate to disclosure of such information.

7.    Office Depot objects to the definition of the terms "Defendant," "Office Depot," "you," and "your" as overbroad and unduly burdensome. Through this definition, IMC seeks information that may not be within Office Depot's possession, custody or control.  Office Depot's responses herein will be consistent with the requirements of the

Federal Rules of Civil Procedure, and will be limited to documents and things that are presently in the possession, custody or control of Office Depot, Inc.

8.    Office Depot objects to these interrogatories to the extent that they demand identification of every fact or basis underlying Office Depot's invalidity and non-infringement defenses, since discovery is in its very early stages, IMC has not identified its asserted claims, and claim construction proceedings are many months away. In response to these interrogatories, Office Depot will provide a listing of prior art uncovered to date which Office Depot contends invalidates the claims of the patent-in-suit. Office Depot's search for relevant prior art is on-going, and it reserves the right to supplement its responses to these interrogatories as appropriate. Office Depot will also provide the elements of the claims of the patent-in-suit which are not found in Office Depot's accused method. Office Depot also reserves the right to supplement its non-infringement contentions as discovery proceeds in this case.

9.    Office Depot further objects to these interrogatories to the extent they call for detailed information about the operation of Office Depot's website in connection with online purchasing. As framed, IMC's interrogatories may well require interpretation of Office Depot's source code, and in any event, are more particularly suited to document discovery, and deposition discovery from a witness who may be able to respond to the subject matter of the interrogatories with the particularity requested.

10.    Office Depot objects to these interrogatories to the extent that they call for the disclosure of trade secret or other Office Depot confidential or proprietary information; disclosure of which would be harmful to Office Depot without the

protection of an appropriate Protective Order. Office Depot will respond to these interrogatories only under the terms of the Protective Order entered in this case.

11.    Discovery in this action and Office Depot's investigation of the subject matter of this litigation, including expert investigation, is in its earliest stages and is ongoing. Office Depot expressly reserves the right to supplement and/or amend its responses to these interrogatories to the extent appropriate.

12.    Office Depot objects to IMC's instructions concerning information covered by the attorney-client or work product privileges or that are otherwise immune from discovery. As framed, IMC's instructions seek to impose requirements upon Office Depot beyond those of Fed. R. Civ. P. 26(b)(5). Office Depot is willing to meet and confer with IMC for the purpose of determining a mutually agreeable protocol for the scheduling of information which is privileged or otherwise immune from discovery.

13.    Office Depot objects to each of these interrogatories as unduly burdensome and repetitive to the extent it is duplicative of or encompassed by other interrogatories.

14.    These general objections are incorporated into each individual response below as if fully set forth therein.

## INTERROGATORIES AND RESPONSES

### Interrogatory No. 1

If you contend that any claim of the patent-in-suit is invalid or unenforceable for any reason, for each such claim set forth the bases for your contention(s), including the relevant factual or legal support, and identify with specificity any documents or activities on which you base you contentions.

**Response to No. 1**

Office Depot hereby incorporates by reference all General Objections as if fully set forth herein. Office Depot specifically objects to the breadth of this interrogatory as encompassing information immune from discovery under the attorney-client privilege and work product immunity.

Office Depot further objects to this interrogatory as premature to the extent that it seeks each and every basis for Office Depot's contentions regarding invalidity under 35 U.S.C. § 101-103 and 112. IMC has not yet identified asserted claims, nor has it provided its purported constructions of the claims of the patent-in-suit, and the Court has not yet construed the asserted claims of the patent. Depending on how the Court construes the asserted claims, some contemplated claim validity issues may be eliminated and other claim invalidity issues may arise. Without knowing Internet Media's claim constructions, it is not possible for Office Depot to state all the claim invalidity issues that may arise. For example, whether a particular reference anticipates any of the asserted claims will depend on how the claims are construed and what the claimed subject matter is argued or determined to be. Furthermore, discovery on such matters is in its earliest stages, and the search for prior art references is ongoing.

Office Depot also specifically objects to this interrogatory as premature to the extent it seeks detailed information regarding Office Depot's contentions on invalidity under the on sale bar and inventorship requirements of 35 U.S.C. § 102 and on the failure to disclose the best mode of practicing the invention of the patent-in-suit under 35 U.S.C. § 112. Discovery and analysis of IMC's patent is continuing in this manner. Office Depot has not received or reviewed documents or interrogatory responses from Internet Media or taken the depositions of the inventor or other witnesses regarding the patent-in-suit.

Because discovery is in its earliest stages, it is not possible at this time for Office Depot to state all the invalidity issues (or factual bases for such issues) that may arise.

Without waiver of the foregoing objections, and in the interest of advancing discovery, Office Depot responds as follows: Depending on how the claims of the patent-in-suit are interpreted by the Court, the following references alone or in combination may render these claims invalid under 35 U.S.C. § 102(a), 102(b), and/or 103:

| Country | Number | Date | Patentee |
|---------|--------|------|----------|
| United States | 4,706,121 | 11/1987 | Young |
| United States | 5,526,127 | 6/1996 | Yonetani et al. |
| United States | 4,654,482 | 3/1987 | DeAngelis |
| United States | 4,734,858 | 3/29/1988 | Schlafly |
| United States | 4,873,662 | 10/1989 | Sargent |
| United States | 4,984,155 | 1/1991 | Geier |
| United States | 5,288,976 | 2/1994 | Citron |
| United States | 5,347,632 | 9/13/1994 | Filepp et al. |
| Europe | 0 697 793 A2 | 8/2/1995 | Wellner |
| PCT WP | 97/01137 | 6/19/1996 | Hudetz |
| PCT WP | 97/19564 | 11/7/1996 | Edelstein |

| Title | Date |
|-------|------|
| "Next Revolution in Retailing."  Editorial.  *Harvard Business Review* | May-June 1967 |
| Putz, Steve.  "Interactive information services using World-Wide Web hypertext."  *Computer Networks and ISDN Systems* | 1994 |
| Heylighen, Francis.  "World-Wide Web: a distributed hypermedia paradigm for global networking" | Spring 1994 |
| Gagnon, Eric.  "What's on the Web" | Fall/Winter 1995/1996 |
| Gagnon, Eric.  "What's on the Internet" | 1994 |
| *eShop Plaza* Brochure | January 1996 |
| *Yahoo Internet Life* | May/June 1996 |
| Lichty, Tom. "America Online's Internet: Easy Graphical Access – The AOL Way Windows Edition" | 1994 |
| Lichty, Tom. "America Online's Internet: Easy Graphical Access – The AOL Way Macintosh Edition" | 1994 |
| Lichty, Tom. "America Online's Internet for Windows: Easy Graphical Access – the AOL Way, Second Edition" | 1995 |

| | |
|---|---|
| Lichty, Tom. "America Online's Internet for Macintosh: Easy, Graphical Access – the AOL Way, Second Edition" | 1995 |
| Watson, Jennifer. "AOL Keywords - The Smart User's Guide to America Online" | 1996 |
| Glossbrenner, Alfred. "Alfred Glossbrenner's Master Guide to CompuServe" | 1987 |
| Arca, Julie Ann and Lindstrom, Richard T. "Inside CompuServe: The Easy Start Guide to Online Information and Communication" | 1990 |
| Schepp, Brad and Schepp, Debra "The Complete Guide to CompuServe" | 1990 |
| Bowen, Charles and Peyton, David. "How to Get the Most Out of CompuServe", 5th Edition | 1991 |
| "Que's Quick Guide to CompuServe" | 1992 |
| Campbell, Bob. "Up & Running with CompuServe" | 1992 |
| Tidrow, Rob,  Ness, Jim,  Retelle, Bob,  Robinson, Cheri. "New Riders' Official CompuServe Yellow Pages" | 1994 |
| Banks, Michael. "Welcome to…CompuServe for Windows" | 1994 |
| "Using CompuServe", by Que Corporation | 1994 |
| Reed, Philip. "10 Minute Guide to CompuServe" | 1995 |
| Bowen, Charles. "CompuServe from A to Z", Third Edition | 1995 |
| Wang, Wallace. "CompuServe for Dummies", 2nd Edition | 1995 |
| Shafran, Andrew. "The Complete Idiot's Guide to CompuServe" | 1995 |
| Wiggins, Robert and Tittel, Ed. "The Trail Guide to CompuServe" | 1995 |
| Wagner, Richard. "CompuServe Internet Tour Guide: Easy Graphical Access – the CompuServe Way" | 1995 |
| Pagan, Kevin and Fuller, Scott. "Learn CompuServe for Windows in a Day" | 1995 |
| Wagner, Richard. "Inside CompuServe", Third Edition | 1995 |

| | |
|---|---|
| Tatters, Wes. "Navigating the Internet with CompuServe" | 1995 |
| Stevenson, Nancy,  O'Mara, Michael,  Kirkner, Bill. "Special Edition Using CompuServe" | 1995 |
| Beatty, Grace,  Gardner, David,  Sauer, David. "Cruising CompuServe | 1996 |
| Miller, Michael. "Using CompuServe", Third Edition | 1996 |
| Davis, Steve. "CompuServe: Complete Handbook & Membership Kit", Second Edition | 1996 |
| "Using Prodigy", by Que Corporation | 1990 |
| Venditto, Gus. "Prodigy for Dummies" | 1995 |
| Johnson, Ned. "Navigating the Internet with Prodigy" | 1995 |
| Halliday, Caroline. "The Trail Guide to Prodigy: A Rapid-Reading Reference to Using and Cruising the Prodigy Online Service" | 1995 |
| Withers, John. "Web Browsing with Prodigy" | 1995 |
| Gibbs, Mark and Smith, Richard. "Navigating the Internet" | 1993 |
| "Mecklermedia's OPAC Directory 1994: An Annual Guide to Internet-Accessible Online Public Access Catalogs" | 1994 |
| Notess, Greg. "Internet Access Providers: An International Resource Directory" | 1994 |
| Maxwell, Christine and Grycz, Czeslaw Jan. "The New Riders' Official Internet Yellow Pages" | 1994 |
| Jamsa, Kris and Cope, Ken. "World Wide Web Directory" | 1995 |
| Lewis, Ted. "Cleint/Server Yellow Pages | 1995 |
| "New Riders' Official World Wide Web Yellow Pages, 1995 Edition" | 1995 |
| "Mecklermedia's Official Internet World Wide Web Yellow Pages, 1996 Edition" | 1996 |
| "CyberMedia Tech Support Yellow Pages" by CyberMedia | 1996 |
| "The Internet Yellow Pages, Third Edition" | 1996 |

| Alexander, David and Preisler, Jerome. "The Internet Site Finder" | 1996 |
| "Internet World's on Internet 94" by Mecklermedia | 1994 |
| Heslop, Brent and Holzgang. "HTML Publishing on the Internet for Macintosh: Create Great-Looking Documents Online: Home Pages, Newsletters, Catalogs, Ads & Forms" | 1995 |
| Heslop, Brent and Holzgang. "HTML Publishing on the Internet for Windows: Create Great-Looking Documents Online: Home Pages, Newsletters, Catalogs, Ads & Forms" | 1995 |

Office Depot will supplement this response as appropriate within a reasonable time after receiving responses to Office Depot's Interrogatories concerning IMC's claim construction and infringement contentions on the claims that IMC is asserting in this case. Office Depot also expressly reserves the right to supplement this response as discovery into the prior art continues in this case.

**Interrogatory No. 2**

> For each and every affirmative defense or counter claim you assert in response to Plaintiff's Complaint, state with particularity the facts upon which you base each defense or counterclaim.

**Response to No. 2**

Office Depot hereby incorporates by reference all General Objections as if fully set forth herein. Office Depot further objects to this interrogatory as premature to the extent that it seeks every fact upon which Office Depot bases its affirmative defenses and counterclaims. IMC has not yet identified asserted claims, nor has it provided its purported constructions of the claims of the patent-in-suit, and the Court has not yet construed the asserted claims of the patent. Depending on how the Court construes the asserted claims, some contemplated claim validity and non-infringement issues may be eliminated and other issues relating to Office Depot's non-infringement and invalidity

affirmative defenses and counterclaims may arise. Without knowing Internet Media's claim constructions, it is not possible for Office Depot to state all the facts supporting Office Depot's affirmative defenses and counterclaims. Furthermore, discovery on such matters is in its earliest stages, and Office Depot has not yet deposed the inventor, or received IMC's contentions regarding the issue of infringement.

Without waiver of the foregoing objections, and in the interest of advancing discovery, Office Depot further responds to this interrogatory as follows:

**Affirmative Defense and Counterclaim of Non-Infringement**

As presently advised, Office Depot's accused catalogs, print advertisements and website do not infringe the patent-in-suit, because they do not contain at least the following elements of claims 1 through 20. Office Depot reserves the right to supplement this response as discovery in this case progresses.

| CLAIMS 1-10 |
|---|
| "published compilation of preselected Internet locations" |
| "a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations" |
| "a predetermined published Internet location having an address published in said published compilation" |
| "means for converting said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location" |
| "means for automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location" |

| CLAIMS 11-20 |
|---|
| "publishing a compilation of preselected Internet locations" |
| "a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations" |
| "providing a predetermined Internet location having an address published in said published compilation" |
| "converting the received multi-digit jump code to a URL address corresponding to the desired preselected Internet location" |
| "automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location corresponding to said received multi-digit jump code" |

**Affirmative Defense and Counterclaim of Invalidity**

*See* Response to Interrogatory No. 1

**Affirmative Defenses of Laches and Estoppel**

The following facts support Office Depot's affirmative defenses of laches and estoppel: (1) Mr. Gagnon's 5-year 4½ month delay in filing suit against Office Depot was unreasonable and inexcusable; (2) due to Gagnon's delay in filing suit, and the fact that the application leading to the patent-in-suit was filed on August 30, 1996, almost 10 years ago, Office Depot has suffered evidentiary prejudice in the form of difficulty and/or inability to locate important prior art witnesses and prior art documents; (3) as evidenced by paragraph 29 of IMC's complaint, Office Depot has also suffered economic prejudice during the period of Gagnon's delay as a result of its development and expansion of its online catalog ordering business that Gagnon now accuses of infringement.

Office Depot has not engaged in any egregious conduct that could defeat a laches or estoppel defense. Indeed, IMC does not charge Office Depot with willful infringement

of the patent-in-suit. Moreover, to the extent IMC charges Office Depot with knowledge of the patent-in-suit, and/or a duty to investigate the scope of the patent prior to commencement of this action, IMC's patent infringement claim is also barred by the doctrine of equitable estoppel. Office Depot's investigation into the facts is ongoing, and it reserves the right to supplement its response to this interrogatory as appropriate.

## Affirmative Defense of Prosecution History Estoppel

IMC is estopped under the doctrine of prosecution history estoppel from asserting a claim construction that would cause any valid and/or enforceable claim of the patent in suit from being infringed by Office Depot based on at least the following statements made to the Patent Office by the inventor during prosecution. Office Depot reserves the right to supplement this response as discovery in this case progresses.

- "Levergood . . . is directed to utilizing conventional telephone numbers or other identifiers which are in reality merely sub-links within a merchant's own Web site which is operated on a 'single merchant server.'" (8/13/98 Response, page 3).

- "Levergood is directed to allowing a single merchant server to provide 'multiple services that correspond to different external telephone numbers or other identifiers.'" (8/13/98 Response, page 3).

- "Applicant's invention provides Internet users with the ability to reach any and all Internet locations on any of the servers connected to the Internet, as opposed to the single merchant server utilized by . . . Levergood." (8/13/98 Response, pages 4-5).

- "While Edelstein et al  proposes that information providers advertise the electronic addresses of their resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources." (9/13/99 Amendment, page 4).

- "Instead, the advertisement taught by Edelstein et al would take the form of an advertisement for a single company with the electronic address of that company's resources, just as companies today advertise their own (not their competitors') resources by their URL's." (9/13/99 Amendment, page 4).

**Interrogatory No. 3**

> If you contend that pursuant to Section 102 of Title 35 of the U.S. Code a
> prior art reference anticipates any of the Internet Media's patent-in-suit,
> please identify each prior art reference, including country, number, date,
> and name of the patentee of any patent and/or the title, date and page
> number of any publication, and state how the reference anticipates the
> patent.

**Response to No. 3**

> *See* Response to Interrogatory No. 1.

**Interrogatory No. 4**

> Describe in detail the conception, design and implementation of
> Defendant's Coupon Codes and the feature on Defendant's WWW site(s)
> that permits a WWW user to enter an Item # or Coupon Code in one or
> more entry boxes on Defendant's WWW site(s).

**Response to No. 4**

Office Depot hereby incorporates by reference all General Objections as if fully
set forth herein. Office Depot objects to this interrogatory as vague with respect to the
term "Coupon Codes". The term "Coupon Code" is not defined in IMC's interrogatories.
Moreover, since IMC's complaint only accuses one Office Depot online purchasing
method of infringement (i.e., incorporating product SKU numbers into the "search for"
box), Office Depot objects to the breadth of this interrogatory as encompassing
information irrelevant to the subject matter of this litigation, and not reasonably
calculated to lead to the discovery of admissible evidence.

In Office Depot's accused online ordering method, product SKU numbers can be
entered into the "search for" box in order to access a dynamically generated page

showing the product of interest. IMC was apparently able to "implement" the accused method as evidenced by Exhibits 7-8 to its complaint.

Office Depot does not know the level of "detail" of the "conception, design and implementation" requested by this interrogatory. As such, the response expected by IMC may require analysis of source code and other documentary information. It is Office Depot's position that discovery of the details of the conception, design and implementation of the accused method will be best served through document and deposition discovery. Accordingly, pursuant to Fed. R. Civ. P. 33(d), since the burden of ascertaining the answer to this interrogatory is substantially the same for IMC as for Office Depot, and assuming the parties can agree on the scope of discovery and a procedure for the production of source code, Office Depot will produce business records from which the answer may be derived or ascertained.

**Interrogatory No. 5**

> From April 2000 until the present, describe in detail, the computer processing performed by Defendant's computer(s) when a WWW user enters an Item # or Coupon Code in one or more entry boxes on Defendant's WWW site(s), including but not limited to the "search for" entry box or the "order by item #" entry box. In this description, please indicate computer location, hardware type and software type.

**Response to No. 5**

Office Depot hereby incorporates by reference all General Objections as if fully set forth herein. Office Depot objects to this interrogatory as vague with respect to the term "Coupon Codes". The term "Coupon Code" is not defined in IMC's interrogatories. Moreover, since IMC's complaint only accuses one Office Depot online purchasing method of infringement (i.e., incorporating product SKU numbers into the "search for"

box), Office Depot objects to the breadth of this interrogatory as encompassing information irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

In Office Depot's accused online ordering method, product SKU numbers can be entered into the "search for" box in order to access a dynamically generated page showing the product of interest. IMC was apparently able to implement the accused method as evidenced by Exhibits 7-8 to its complaint.

Office Depot does not know the level of detail requested by this interrogatory. As such, the response expected by IMC may require analysis of source code and other documentary information. It is Office Depot's position that discovery of the details of the "computer processing" performed by the accused method will best be best served through document and deposition discovery. Accordingly, pursuant to Fed. R. Civ. P. 33(d), since the burden of ascertaining the answer to this interrogatory is substantially the same for IMC as for Office Depot, and assuming the parties can agree on the scope of discovery and a procedure for the production of source code, Office Depot will produce business records from which the answer may be derived or ascertained.

**Interrogatory No. 6**

> Describe in detail the computer processing performed by Defendant's computers for Order No. "301597713-001" placed on August 4, 2005.

**Response to No. 6**

Office Depot hereby incorporates by reference all General Objections as if fully set forth herein.  Office Depot objects to this interrogatory as vague with respect to the term "Coupon Codes".  The term "Coupon Code" is not defined in IMC's interrogatories.

Moreover, since IMC's complaint only accuses one Office Depot online purchasing method of infringement (i.e., incorporating product SKU numbers into the "search for" box), Office Depot objects to the breadth of this interrogatory as encompassing information irrelevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

In Office Depot's accused online ordering method, product SKU numbers can be entered into the "search for" box in order to access a dynamically generated page showing the product of interest. IMC was apparently able to implement the accused method as evidenced by Exhibits 7-8 to its complaint.

Office Depot does not know the level of detail concerning the August 4, 2005 order requested by this interrogatory. As such, the response expected by IMC may require analysis of source code and other documentary information. It is Office Depot's position that detailed discovery with respect to this interrogatory will be best served through document and deposition discovery. Accordingly, pursuant to Fed. R. Civ. P. 33(d), since the burden of ascertaining the answer to this interrogatory is substantially the same for IMC as for Office Depot, and assuming the parties can agree on the scope of discovery and a procedure for the production of source code, Office Depot will produce business records from which the answer may be derived or ascertained.

**Interrogatory No. 7**

Describe in detail how Defendant's computers generate the following URLs:

1) "http://www.officedepot.comJtextSearch.do?uniquesearchflag=true &Ntt=910-925-49", which results from entering the item # "910-925-491" in the "search" box on Defendant's WWW site;

2) "http://www.officedepot.comltextSearch.do?uniqueSearchFlag=
true&Ntt=925-491", which results from entering the item # "925-491" in
the "search" box on Defendant's WWW site; and

3) "http://www.officedepot.comlshop/items/add.do", which results from
entering item # "910-925-491" in the "order by item #" box on
Defendant's WWW site.

## Response to No. 7

Office Depot hereby incorporates by reference all General Objections as if fully
set forth herein. Office Depot objects to this interrogatory as vague with respect to the
term "Coupon Codes". The term "Coupon Code" is not defined in IMC's interrogatories.
Moreover, since IMC's complaint only accuses one Office Depot online purchasing
method of infringement (i.e., incorporating product SKU numbers into the "search for"
box), Office Depot objects to the breadth of this interrogatory as encompassing
information irrelevant to the subject matter of this litigation, and not reasonably
calculated to lead to the discovery of admissible evidence.

In Office Depot's accused online ordering method, product SKU numbers can be
entered into the "search for" box in order to access a dynamically generated page
showing the product of interest. IMC was apparently able to implement the accused
method as evidenced by Exhibits 7-8 to its complaint.

Office Depot does not know the level of detail of the requested by this
interrogatory. As such, the response expected by IMC may require analysis of source
code and other documentary information. It is Office Depot's position that discovery of
the details of the generation of the URL's requested by this interrogatory will be best
served through document and deposition discovery. Accordingly, pursuant to Fed. R. Civ.
P. 33(d), since the burden of ascertaining the answer to this interrogatory is substantially
the same for IMC as for Office Depot, and assuming the parties can agree on the scope of

discovery and a procedure for the production of source code, Office Depot will produce

business records from which the answer may be derived or ascertained.

**Interrogatory No. 8**

> For each of the following, identify the person or persons presently or
> formerly employed by you who are most knowledgeable about:

(a)     the conception, design, generation and implementation of Defendant's
        Coupon Codes, Item #'s and the feature on Defendant's WWW site(s) that
        permits a WWW user to enter a Item # or Coupon Code in one or more
        entry boxes on Defendant's WWW site(s);

(b)     profits, revenues, and costs, associated with online sales generally and
        online sales involving the entry of an Item # or Coupon Code by a WWW
        user in one or more entry boxes on Defendant's WWW site(s);

(c)     the design, development, testing, implementation, and operation of your
        WWW site;

(d)     the design, cost, and production of Defendant's print advertising that
        includes Item #'s and/or Coupon Codes; and

(e)     Defendant's document retention policies and authentication, origin,
        custody and control of Defendant's documents.

**Response to No. 8**

Office Depot hereby incorporates by reference all General Objections as if fully

set forth herein. Moreover, since IMC's complaint only accuses one Office Depot online

purchasing method of infringement (i.e., incorporating product SKU numbers into the

"search for" box), Office Depot objects to the breadth of this interrogatory as

encompassing information irrelevant to the subject matter of this litigation, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objection, Office Depot further responds as

follows: As presently advised, Ray Racine, Timothy Toews, Michael Kirshner, Monica

Leuchtefeld, and Kristin Micalizio are persons with knowledge of one or more of the

issues set out above and one or more of them would likely be designated to give testimony of Office Depot in connection with any Rule 30 (b)(6) deposition notice issued about such matters, Office Depot reserving the right to make such designation until such formal notice is issued, if ever.

GREENBERG TRAURIG LLP

Dated: January 25, 2006          By: _____

Cathy L. Reese (#2838)
The Nemours Building
1007 N. Orange Street, Suite 1200
Wilmington DE 19801
Tel.: (302) 661-7000
Fax: (302) 661-7360

Michael A. Nicodema (*admitted pro hac vice*)
200 Campus Drive
Florham Park, NJ 07932-0677
Tel.: (973) 360-7932
Fax: (973) 301-8410

*Attorneys for Defendant Office Depot, Inc.*

## VERIFICATION

Stephen Calkins is Senior Managing Counsel for, and verifies the foregoing interrogatory answers on behalf of, Office Depot, Inc. The matters stated in the answers are not within my personal knowledge. The facts stated have been assembled by authorized personnel, including counsel. The facts stated are true to the best of my current knowledge and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed:    January 25,    2006,    in    Delray Beach, Florida    .

_____
Stephen Calkins