

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
Attorney at Law
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Fax

April 7, 2006

**BY E-FILE**

The Honorable Kent A. Jordan
United States District Judge
United States District Court
  for the District of Delaware
U.S. Courthouse
844 King Street
Wilmington, DE 19801

    Re:   Internet Media Corporation v. Dell, Inc., et al.,
              D. Del., C.A. No. 05-633-KAJ

Dear Judge Jordan:

     In lieu of submitting separate responses, this letter serves as Defendants' consolidated response to Internet Media's letter of April 4, 2006 regarding discovery.

A.    **Defendants should be allowed to make their source code available for inspection at the offices of their local counsel**

     Internet Media's request that Defendants be compelled to provide their source code to Internet Media's experts[1]: 1) ignores the Federal Rules of Civil Procedure; 2) creatively but erroneously interprets the Protective Order in this case; 3) misrepresents the communications between it and Defendants; and 4) recognizes that heightened security measures must be applied to source code production. For these reasons, Defendants request that their source code be made available for inspection at the offices of their local counsel[2] under the conditions communicated to Internet Media.[3]

     First, Fed. R. Civ. P. 34(a) states that a party may request another party to "to produce and permit the party making the request . . . to inspect and copy, any designated documents . . . ."

---

[1] Elysium is no ordinary escrow agent; many of its officers and employees have been retained as consultants by Internet Media.
[2] Office Depot has even offered to make its code available in Boston, next to Internet Media's experts.
[3] *See* 3/28/06 letter from Matt Hulse to Michael Collyard, attached as Exhibit 1.

The Honorable Kent A. Jordan
April 7, 2006
Page 2

Rule 34(b) states that "[a] party who produces the documents for inspection shall produce them as they are kept in the ordinary course of business. . . ." This language wholly supports Defendants' original position that they would make any source code available at the offices of their principal outside counsel (*e.g.*, Dell's source code would be made available at the offices of Vinson & Elkins). However, in an attempt to effect a compromise, Defendants are willing to allow the inspection of its source code at the offices of their local counsel in Wilmington, notably the same city where Internet Media filed suit. This compromise exceeds Defendants' obligations under the Rules. Internet Media has flatly refused this compromise arguing that it would be forced to divulge its mental impressions if it had to identify the code it wants copied. Such an argument is without merit; this designation and copying procedure is precisely what is contemplated by the Rules.

Second, Internet Media's creative interpretation of the Protective Order is incorrect. The Order details the scope of confidential information and the manner by which it is to be *held* by a receiving party, not to whom confidential information must be provided by the producing party. Internet Media's interpretation would require that *all* confidential information be provided by Defendants directly to Internet Media's experts. This irrational interpretation finds no support in the Protective Order and is contrary to what is required under the Federal Rules.

Third, Internet Media has misrepresented the communications of the parties. Office Depot repeatedly reiterated the confidentiality of its source code. J. Crew *never* represented that its source code was held by a third party. Dell, *twice*, wrote that its source code is extremely sensitive and proprietary information and thus warrants the heightened security measures. Additionally, Defendants (and only Defendants) *have* attempted compromise in this matter as discussed above. Finally, the production of source code was not a subject that was negotiated in conjunction with the Protective Order.

Finally, Defendants' source code is an extremely valuable, proprietary result of significant investment certainly worthy of the protection Defendants request. Indicative of the sensitivity of source code are the efforts Elysium proposes to undertake to protect this information. Tellingly, Elysium would not even divulge its "confidential" security measures for the protection of source code unless Defendants' *counsel* signed non-disclosure agreements. As such, Internet Media seems to agree that heightened security measures are warranted. However, it is Defendants that are in the best position to provide such measures, not Internet Media's experts. Defendants are not comfortable with the clear conflict Elysium would face serving as both an escrow agent for Defendants' source code and paid consultant for Internet Media. For these reasons, Defendants' compromise to make their source code available in Wilmington, Delaware at the offices of their local counsel is the appropriate compromise in this matter.

B. **Office Depot Should Not Be Required to Supplement Its Responses to Interrogatories 4-7**

Office Depot's Responses to Internet Media's Interrogatories 4-7 should be deemed appropriate as served. (Exhibit B to Internet Media's Letter).

Internet Media apparently will not be satisfied unless Office Depot prepares a technical treatise on the operation of its website. Office Depot has no obligation to do anything of the sort and the responses make clear that Internet Media will have the opportunity to obtain all the

information it seeks through document and deposition discovery. Under Rule 33(d) of the Fed. R. Civ. P. Office Depot is entitled to refer Internet Media to documents responsive to their Interrogatory, provided it establishes that the burden of determining the responsive information is equal for both parties.

The most relevant category of documents called for by Internet Media's Interrogatories 4-7 is Office Depot's source code, which will be produced based on the Court's resolution of the parties dispute regarding the production procedure for source code. Furthermore, and contrary to Internet Media's assertions that the responses provide no information relating to the operation of the Office Depot website, Office Depot's responses explain that the website dynamically generates product pages in response to the input of SKU's located in Office Depot's product catalogs. Additionally, in response to Internet Media's Interrogatory No. 9, Office Depot provided a comprehensive preliminary non-infringement chart.

Accordingly, considering the fact that discovery is still in its early stages, Internet Media has already been provided with plenty of detail regarding the operation of Office Depot's website with respect to the lookup by SKU or Item# feature. Furthermore, Office Depot, as stated in its responses, still does not know the level of detail that will satisfy Internet Media. Office Depot should not be required to supplement with even more detail, when Internet Media will get the discovery it seeks through other means that are both less burdensome to Office Depot and more comprehensive than any supplemental response could be.

C. **Williams-Sonoma, J. Crew and J.C. Penney Document Production**

As indicated to Internet Media during the meet and confer process, after a reasonable and diligent search Williams-Sonoma, J. Crew and J.C. Penney have produced all responsive documents collected to date other than source code discussed above. Williams-Sonoma, J. Crew and J.C. Penney are not withholding any non-privileged responsive documents. To date they have produced 13,034, 3,721 and 145 pages respectively as well as DVDs. Additionally, J.C. Penney will produce the agreed upon responsive catalogs shortly. As discovery continues, these defendants will produce additional responsive documents if any are ever located.

D. **Proposed Early Claim Construction**

At the end of the technology tutorial on March 10, 2006, defendants stated there were "a couple key phrases" included in every claim of the '835 patent (Transcript, March 10, 2006, pg. 41, lines 22-24), and suggested early, potentially outcome-dispositive, construction by the Court of that claim language. Your Honor asked that the parties confer regarding what discovery would be needed to allow this Court to construe that claim language and how to stage discovery. (Trans., pg. 44, lines 4-12). The parties have met and conferred and defendants report the following to the Court.

Defendants identified to Plaintiff three "key phrases" from the '835 patent for immediate construction by the Court. That language, from claim 1, is: (1) "a published compilation of pre-selected Internet locations;" (2) "a pre-determined published Internet location having an address published in said published compilation;" and (3) "a unique pre-determined multi-digit jump code" and the corresponding language in claim 11. In response, Internet Media stated a willingness to agree to early construction of these terms, and a stay of all discovery until then, but only if defendants agree that these are the *only* claim terms in dispute and also admit their

The Honorable Kent A. Jordan
April 7, 2006
Page 4

systems meet all other elements of the claims, including the "means" provisions. Unsurprisingly, Defendants could not agree to these conditions. Indeed, many of the elements of the patent are written in "means plus function" language and defendants contend their systems are not covered by these elements. Additionally, pursuant to 35 U.S.C. section 112, ¶6, the Court must construe the means plus function claim elements to determine "the corresponding structure, material or acts described in the specification and equivalents thereof."[4]

    Still hoping to streamline this case, Defendants then proposed an early construction of <u>all</u> the disputed limitations, identifying the additional claim language in dispute as: (a) "means for capturing a desired multi-digit jump code;" (b) "means for receiving said desired multi-digit jump code;" (c) "means for converting said received multi-digit jump code to a URL address corresponding to the desired pre-selected Internet location;" and (d) "means for automatically accessing said desired pre-selected Internet location;" and the corresponding language in claim 11. Defendants maintain that no discovery is necessary to construe this claim language as the intrinsic evidence will dictate the outcome and "corresponding structure, material or acts" <u>must</u> be found in the specification of the '835 patent.

    Despite the fact the parties already have exchanged proposed claim construction, Plaintiff responded that it required an additional two weeks – until April 14, 2006 – to examine its own patent to verify whether or not defendants' suggested terms are the only claim limitations truly in dispute. But, counsel has stated Internet Media also desires prompt resolution of this issue so Defendants hope the April 14 response will help achieve this shared goal.

Respectfully,

*[signature]*

Philip A. Rovner
provner@potteranderson.com

PAR/mes/727146
Enc.
cc: Thomas P. Preston, Esq. – by e-file and e-mail
    Ronald J. Schutz, Esq. – by e-mail
    Defense Counsel – e-mail

---

[4] "Once a court establishes that a [means plus function] limitation is at issue, *it must construe that limitation*, thereby determining what the claimed function is and what structures disclosed in the written description correspond to the 'means' for performing that function." Harmon, *Patents and the Federal Circuit*, § 6.6(c), pg. 344 (7th ed. 2005) (emphasis added).

# EXHIBIT 1

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

San Francisco, California
Tel 415 576-0200

Walnut Creek, California
Tel 925 472-5000

San Diego, California
Tel 858-350-6100

Denver, Colorado
Tel 303 571-4000

Seattle, Washington
Tel 206 467-9600

Palo Alto

379 Lytton Avenue
Palo Alto
California 94301-1431
Tel  650 326-2400
Fax 650 326-2422

March 28, 2006

**VIA E-MAIL AND FIRST-CLASS U.S. MAIL**

Michael A. Collyard
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

    Re:   *Internet Media Corporation v. Dell, Inc., et al.*
           U.S.D.C., Delaware, No. 05-633 KAJ

Dear Michael:

      I am writing to follow-up on our telephone conversation yesterday about the production of source code. During our conversation, I offered to provide a detailed proposal for making source code available for inspection. Here is the proposal.

      We are willing to prepare a "clean room" in which Internet Media's outside counsel and approved expert witnesses can inspect the source code of J. Crew, Williams-Sonoma, and J.C. Penney. The clean room will be located at our local counsel's office in Wilmington, Delaware. The relevant source code will be loaded onto a computer within the clean room, which will be equipped with a printer and document shredder. No internet, telephone, or other outside connection will provided or authorized. Nor can any copying, burning, ripping, or other downloading of the source code take place. Internet Media's outside counsel and approved expert witnesses will have the right to designate portions of the source code they deem relevant by printing out those portions and handing them to the clean room attendant. Counsel for J. Crew, Williams-Sonoma, and J.C. Penney will then review and produce the printouts to Internet Media within ten business days. Any printouts of the source code made within the clean room must be either shredded or designated for production and turned over to the clean room attendant. We will, of course, be willing to discuss reasonable modifications to this procedure as discovery progresses.

      As noted above, we will be able to make J. Crew's source code available for inspection. We located the source code today.

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

Michael A. Collyard
March 28, 2006
Page 2

Please let me know if this proposal is acceptable.

Yours truly,

Matthew R. Hulse

60734968 v1