IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNET MEDIA CORPORATION,

        Plaintiff,

    v.

DELL, INC., OFFICE DEPOT, INC., J.C.
PENNEY COMPANY, INC., WILLIAMS-
SONOMA, INC., J. CREW GROUP, INC.

        Defendants.

Civil Action No. 05-633 (KAJ)

## DEFENDANT OFFICE DEPOT'S OPENING BRIEF ON THE PROPER CONSTRUCTION OF THE "PUBLISHED COMPILATION" ELEMENT

TITANIA R. MACK (#4120)
GREENBERG TRAURIG, LLP
The Nemours Bldg, 12th Floor
1007 North Orange Street
Wilmington, DE 19801
(302) 661-7000

and

MICHAEL A. NICODEMA (*PRO HAC VICE*)
GASTON KROUB (*PRO HAC VICE*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
TEL: (212) 801-2126

*Attorneys for Defendant Office Depot, Inc.*

Dated: July 5, 2006

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION.................................................................................. 1

II.     TECHNOLOGICAL BACKGROUND OF THE CLAIMED INVENTION.............. 1

III.    THE LAW OF CLAIM CONSTRUCTION................................................. 4

IV.     OFFICE DEPOT'S CONSTRUCTION IS CONSISTENT WITH THE
        PLAIN LANGUAGE OF THE CLAIMS AND THE INTRINSIC RECORD........... 7

V.      INTERNET MEDIA'S CONSTRUCTION IS INCORRECT................................ 12

VI.     CONCLUSION ................................................................................... 15

## TABLE OF AUTHORITIES

<u>PAGE</u>

**Cases**

*ACTV, Inc. v. Walt Disney Co.,*
 346 F.3d 1082 (Fed. Cir. 2003) ...................................................................... 5

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
 388 F.3d 858 (Fed. Cir. 2004) .............................................................. 6, 8, 11

*Ekchian v. The Home Depot, Inc.,*
 104 F.3d 1299 (Fed. Cir. 1997) .............................................................. 12, 14

*Honeywell, Int'l, Inc. v. ITT Industries, Inc.,*
 2006 WL 1703376 (Fed. Cir. June 22, 2006) ............................................... 8

*Markman v. Westview Instruments, Inc.,*
 52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)........................... 4, 6

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
 133 F.3d 1437 (Fed. Cir. 1998). ..................................................................... 5

*Phillips v. AWH Corp.,*
 415 F.3d 1303 (Fed. Cir. 2005)(en banc); ........................................... passim

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
 242 F.3d 1337 (Fed. Cir. 2001)) .................................................................... 8

*V-formation, Inc. v. Benetton Group SpA,*
 401 F.3d 1307 (Fed. Cir. 2005). ..................................................................... 5

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996) ....................... 4, 5

## I.    INTRODUCTION

As the Court is aware from the telephone status conference held on June 22, 2006, the Defendants in this case are in agreement as to the proper construction of two out of the three claim elements at issue in this early claim construction process.

Thus, Defendant Office Depot fully joins with the other Defendants in the arguments and evidence presented in "Defendants Dell, Inc.'s, J.C. Penney Co., Inc.'s, Williams-Sonoma, Inc's, and J. Crew Group, Inc.'s, ("Defendants") Opening Claim Construction Brief" concerning the "unique multi-digit jump code" and "predetermined published Internet location" elements of the asserted claims of Internet Media's '835 patent.[1]

Office Depot's counsel represented to the Court at the June 22, 2006 status conference that it would present its separate position on the "published compilation" element in a joint brief with the other co-defendants.  The co-defendants agreed.  However, upon further review, the other co-defendants insisted that Office Depot file a separate brief on this element. The briefing from all the Defendants combined does not exceed the 40-page limit.  Consequently, Office Depot's arguments and evidence in support of its construction of the "published compilation" element of the asserted claims are presented below.[2]

## II.    Technological Background Of The Claimed Invention

The '835 patent purports to address the problem of easily accessing the most useful websites available on the World Wide Web portion of the Internet.  According to the patent specification, there were two main difficulties in accessing the best of the 100,000 or more individual websites existing at the time the patent application was filed.

---

[1]    Although Office Depot does join in the other co-Defendants' construction of the "predetermined published Internet location" element, Office Depot does not join in the co-Defendants' underlying reasoning to the extent it depends upon their assertion that "preselected Internet locations" are synonymous with URL addresses.

[2]    For the Court's convenience a chart giving Office Depot's construction of the first element of claims 1 and 11 along with the intrinsic support for that construction is attached as Exhibit 2.

First, there was the difficulty associated with typing "confusing" and "extremely difficult to work with" Uniform Resource Locators ("URLs") into the user's web browser to gain access to a website. (Exh. 1 at 3:53-65). Second, there was the frustration associated with finding useful websites, since many did not offer "any truly useful information or other benefits"; and many consisted merely of "lists of links to other Web sites, which often [did] nothing more than link the visitor to a Web site to other useless Web link pages." (Exh. 1 at 3:66-4:4).

In light of these difficulties, the patent asserts that there was "a need for a system which the Web user can use to access Web sites which contain a substantial amount of original information, graphics, or multi-media, provide useful advice, news or entertainment, and present the information in a well-thought out and professional manner." (Exh. 1 at 4:15-22). "Most importantly", asserts the specification, there was "a great need to provide Web users with a system for accessing such Web pages in an easy to use, automatic, and efficient manner." (Id.).

According to the specification, the claimed invention of the '835 patent satisfies these needs, and provides a method and apparatus for quickly and easily accessing the most desirable websites on the Internet. The patent's Abstract describes the invention as follows:

> A system for quickly and easily accessing preselected desired addresses or URLs on the Internet is disclosed in which a published list of Internet or World Wide Web sites together with their unique jump codes is utilized in connection with a corresponding specialized Web site which is accessed by a user using either a personal computer or a TV Internet Terminal and remote control, after which access a jump code corresponding to the preselected desired URL is entered by the user and software contained in the specialized Web site immediately and automatically accesses the desired Web site. (Exh. 1)(emphasis added).

The specification states that in addition to websites, other types of pre-existing Internet sites having unique URL addresses (i.e., newsgroups or Usenet groups) can be accessed using the jump code feature. (Exh. 1 at 6:1-7). The patent discloses the book *What's on the Web* as the most preferred example of a printed publication containing preselected websites, corresponding URLs, and associated jump codes. (Exh. 1 at 5:50-57). An example of a preselected website from the 1995-96 version of *What's on the Web* is reproduced below.



**52**  Chapter 3: **Business, Investment, & Self-Help**   What's on the Web



**Follow that Package!**
**FedEx Airbill Tracking Form** 7112
Feeling nervous about the big business presentation you sent, via Federal Express, to your business partners? Will they receive them in time? Well, wipe the sweat off your brow and log onto to FedEx's tracking page. There you can track where your package or envelope is, anywhere in the world, anytime of the day. It couldn't be simpler— just type in your tracking number in the field provided and the status of the package will be displayed. —(E.v.B.)
http://www.fedex.com/

As shown in this excerpt, *What's on the Web* includes a review of each preselected website (in this case, Federal Express), the URL address of Federal Express's homepage (http://www.fedex.com) to prove that this selected Internet site is, in fact, an existing website, and the jump code corresponding to Federal Express's URL (7112).

According to the patent, "[a] user desiring to access one of the preselected websites first gains access to the World Wide Web, using a Web browser, by accessing a special Web site which contains software for receiving any of the published four-digit jump codes and, based upon the stored relationship of the URLs corresponding to the input jump code, directly accesses the Web site corresponding to the jump code inputted by the user." (Exh. 1 at 4:57-65). The patent discloses http://www.jumpcity.com/ as the most preferred example of the special website for receiving jump codes. The schematic below illustrates how the JumpCity website operates in conjunction with *What's on the Web* to access Federal Express's homepage:

3



As shown above, *What's on the Web* is designated by the number 110, and JumpCity is designated by the number 108. JumpCity is accessed through a personal computer 100. The user enters Federal Express's jump code (7112) into the website, and a software program in JumpCity "searches through its database of URLs, and finds the URL which is linked to the input jump code. The software then links the user either directly to the desired Web site, or alternatively, first to a brief written review of the Web site." (Exh. 1 at 6:56-7:10).

## III.    THE LAW OF CLAIM CONSTRUCTION

Patent claims are construed as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 391 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(*en banc*); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)("we look to the words of the claims . . . to define the scope of the patented invention").

The words of a claim "are generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. The Federal Circuit has made clear that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in

4

the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

"Thus the court starts the decision making process by reviewing the same resources as would [a person of ordinary skill], *viz.*, the patent specification and the prosecution history." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1437, 1477 (Fed. Cir. 1998). These resources "usually provide[] the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention." *V-formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. First, "the context in which a term is used in the asserted claim can be highly instructive." *Id. See also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314.

"The claims, of course, do not stand alone. . .[C]laims 'must be read in light of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*,

288 F.3d 1359, 1366 (Fed. Cir. 2002)).  "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor.  In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)).

The Court "should also consider the patent's prosecution history." *Markman*, 52 F.3d at 980.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citing *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)).  Also, "like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.*

The Court may also rely on extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.  In particular, "judges are free to consult dictionaries and technical treatises at any time in order to better understand the underlying technology and. . .when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents. *Phillips*, 415 F.3d at 1322-23.  However, extrinsic evidence is "less significant than the intrinsic record in determining the 'legally operative meaning of claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004).

"There is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324.  "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.*

**IV.    Office Depot's Construction Is Consistent With The Plain Language Of The Claims And The Intrinsic Record**

Office Depot's construction of the "published compilation" elements is similar to the other Defendants' construction in that both require "a publicly accessible preselected list," and that the URL addresses be associated with diverse individuals and entities (or, to use the other Defendants' words, associated with "more than one individual or entity"). (Exh. 3 to Defendants Opening Brief). Office Depot's construction differs from the other Defendants' construction as follows.

Office Depot construes the element "*a published compilation of preselected Internet locations*" appearing in claims 1-10 to mean: *a publicly accessible preselected list of pre-existing Websites and other pre-existing Internet sites having unique URL addresses, the URL addresses being associated with diverse individuals or entities.* (Exh. 2 at 1).

Similarly, Office Depot construes the element "*publishing a compilation of preselected Internet locations*" in claims 11-20 to mean: *publishing an accessible preselected list of pre-existing Websites and other pre-existing Internet sites having unique URL addresses, the URL addresses being associated with diverse individuals or entities.* (Exh. 2 at 8).

Thus, the only significant difference between Office Depot's construction and the other Defendants' construction is that Office Depot construes the phrase "*Internet locations*" to mean "pre-existing Websites and other pre-existing Internet sites having unique URL addresses," and the other Defendants construe "*Internet locations*" to mean "URL addresses."

Office Depot's construction of "*Internet locations*" is consistent with the ordinary meaning of the word "location" in the context of the patented technology. The well-known on-line computer and Internet dictionary, *Webopedia*, defines a "web site" as "[a] site (location) on the World Wide Web." (Exh. 3). Consistent with this definition, the patent describes a website as an individual's "*place*" on the World Wide Web. (Exh. 1 at 3:29-31). Office Depot's construction is also consistent with the patent's disclosure that the compilation may include other

Internet sites such as newsgroups and Usenet discussion groups. (Exh. 1 at 4:36-40; 6:1-5).

Accordingly, in the context of the "published compilation" elements of claims 1-20, the term

"Internet location" should be construed to mean an actual site or place on the Internet.

Office Depot's construction is also consistent with the patent's discussion of the impetus

for the invention--i.e., the technological difficulties in 1996 associated with negotiating the World

Wide Web. Thus, because the technological context for development of the invention was the

prior art's alleged inability to quickly and easily access the most desirable *"Web sites"*,

newsgroups, etc., on the Internet, the term "Internet locations" should be limited to that context--

*i.e., websites and other Internet sites having unique URL addresses. SciMed Life Sys., Inc. v.*

*Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341-45 (Fed. Cir. 2001).

Office Depot's construction is also supported by the patent's "Abstract" and "Summary

And Objects Of The Invention". The Summary And Objects Of The Invention discloses that "it

is an object of the present invention to provide a printed publication containing descriptions of

selected Web sites or addresses"; and that "the system of the present invention utilizes a

published list of preselected Web sites, which are selected according to predetermined criteria,

such as content, usefulness, presentation, and authorship." (Exh. 1 at 4:42-44). Similarly, the

Abstract states that the patented system utilizes "a published list of Internet or World Wide Web

sites." (Exh. 1). The Federal Circuit has held that statements in the Abstract and Summary of the

Invention, which, as here, describe the invention as a whole rather than describing particular

embodiments, "are more likely to support a limiting definition of a claim term." *C.R. Bard*, 388

F.3d at 867; *accord Honeywell, Int'l, Inc. v. ITT Industries, Inc.*, 2006 WL 1703376, at *5 (Fed.

Cir. June 22, 2006) (term "fuel injection system component" limited to a "fuel filter" where the

specification referred to the fuel filter as the "invention" or the "present invention").

Office Depot's construction is further supported by the patent specification's detailed

description of the invention. First, the Fall/Winter 1995-1996 edition of the preferred

embodiment of the "published compilation" disclosed in the patent, *What's on the Web,* confirms

8

that the compilation is a collection of *Web sites*: "You can reach *all of the Web sites covered in this book* through our own Web site, JumpCity, simply by entering the four digit Jump Codes we've assigned to every *Web site* reviewed here." (Exh. 4 at 3) (emphasis added). Actually, as the following chart of excerpts from the specification reveals, the '835 patent never departs from its central intent to claim a collection of preselected websites and other pre-existing Internet sites having unique URL addresses. (Exh. 1 at 4:12-19; 4:27-30; 4:31-34; 4:35-40; 4:41-45; 4:54-56; 5:50-52; 5:54-56; 6:1-5; 6:27-30; 6:61-64; 7:15-19; 7:45-47; 7:63-67).

| Excerpt From Specification | Column No.: Line No.: |
|---|---|
| ". . . a published list of Internet or World Wide *Web sites*" | Abstract |
| ". . . there is a need for a system which the Web user can use to access *Web sites* which contain a substantial amount of original information, graphics, or multi-media, provide useful advice, news or entertainment, and present the information in a well-thought out and professional manner." | 4:12-19 |
| ". . . it is clear that there is still a need in the art for a system for quickly and easily accessing *selected beneficial sites or addresses on the World Wide Web portion of the Internet*." | 4:27-30 |
| ". . . it is a primary object of the present invention to provide a system by which user's of the World Wide Web portion of the Internet can readily access preselected *Web sites or Internet addresses* . . ." | 4:31-34 |
| ". . . it is an object of the present invention to provide a specialized Web site which can be used in conjunction with published jump codes to readily and automatically access other *Web sites or Internet locations*, without the user having to remember or input the URL of the *desired Web site*." | 4:35-40 |
| "Even more particularly, it is an object of the present invention to provide a *printed publication containing descriptions of selected Web sites or addresses* together with jump codes therefor . . ." | 4:41-45 |
| "The system of the present invention utilizes a published list of *preselected Web sites*, which are selected according to predetermined criteria . . ." | 4:54-56 |
| ". . . it is preferable that a printed publication which contains *preselected Web sites* based on certain criteria be disseminated . . ." | 5:50-52 |
| "Such a publication, entitled '*What's on the Web*' published by Internet Media Corporation is one such type of book . . ." | 5:54-56 |
| ". . . in addition to *Web sites*, any other type of subject matter contained on the Internet *which has a URL*, can be accessed using the jump code provided therefor. An example of such an additional use is the accessing of newsgroups, or Usenet Internet discussion newsgroups . . ." | 6:1-5 |
| "The *preselected Web sites* (over 1800 of which are covered in the 'What's on the Web' book 110), are selected based upon four criteria." | 6:27-30 |
| "The only URL the user need ever input in order to access any of | 6:61-64 |

| Excerpt From Specification | Column No.: Line No.: |
|---|---|
| the preselected (and best available) *Web sites in the publication* 110 is the URL of the JumpCity Web site 108." | |
| "The use of the jump codes printed in the printed publication or book 110 combined with the integrated specialized Web site 108 provides Web users with the fastest possible way of reaching the *reviewed (and best) Web sites* available on the World Wide Web portion of the Internet." | 7:15-19 |
| "In order to access the selected *Web sites contained and reviewed in the book 110,* the users of the TV Internet Terminal are provided with a remote control device 204 . . ." | 7:45-47 |
| "In all other respects, accessing the *desired Web site as published in the book or printed publication 110* or as published as an on-line list within the JumpCity Web site 108, is the same as described above in connection with FIG. 1." | 7:63-67 |

Office Depot's construction of "*Internet locations*" to mean websites and other Internet sites *having* unique URL addresses, rather than the URLs themselves, is supported by the plain language of other elements in the independent and dependent claims. *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."). For example, the "converting" and "automatically accessing" elements of independent claims 1 and 11 include the language "URL *corresponding to* said desired preselected Internet location." Clearly, since these elements recite that each preselected Internet location has a corresponding URL, a preselected Internet location has to mean something more than the URL itself.

Moreover, dependent claims 10 and 20 (which depend directly from claims 1 and 11, respectively) both recite that "said published compilation comprises a *review* of each of said preselected Internet locations" (emphasis added). As the patent discloses, the *content* of the "*Web sites*" in the compilation is what is being reviewed. (Exh. 1 at 5:57-61; 6:11-17; 7:6-10). It is illogical to suggest that the URL addresses of these websites are being reviewed.

Further, like the other Defendants' construction, the requirement of Office Depot's construction that the published compilation take the form of a "*list*" is fully supported by the intrinsic record. For example, the patent's title is "System For Providing Easy Access To The

10

World Wide Web Utilizing A Published *List* Of Preselected Internet Locations Together With Their Unique Multi-Digit Jump Codes" (emphasis added). So too, the Abstract states that the invention includes "a published *list* of Internet or World Wide Web sites" (emphasis added). The Summary and Objects of the Invention as well states that "[t]he system of the present invention utilizes a published *list* of preselected Web sites." (Exh. 1 at 4:54-56). Statements such as these, which describe the invention as a whole, support limiting the construction of the "published compilation" elements to a published *list*. *C.R. Bard,* 388 F.3d at 867.

The requirement of Office Depot's construction that the websites and other Internet sites in the compilation be "*pre-existing,*" rather than, for example, dynamically constructed by computer software, is supported by the patent specification and the ordinary meaning of the word "preselected" used in the claim language. Indeed, at column 6, lines 26-55 of the specification, the patent discloses, in considerable detail, that the websites included in the "published compilation" are selected in advance based on 4 criteria: originality of the website's information, usefulness of the information, good design and production values, and authorship of the website. (Exh. 1). Consistent with the specification, the ordinary dictionary definition of the word "select" is: "chosen from a number or group by fitness or preference." (Exh. 5: *Merriam-Webster Online Dictionary*). Logically, in order to choose or "preselect" certain members of a group based on a set of defined criteria, all the members of the group must pre-exist.

Finally, as with the other Defendants' construction, the intrinsic record supports the requirements of Office Depot's construction that all the websites and other Internet sites in the compilation have unique URL addresses, and that the URL addresses be associated with diverse individuals or entities. First, the specification discloses that "[e]very web site has an *exact address*, or location on the Web. Such addresses are known as a [sic] Uniform Resource Locator or *URL*." (Exh. 1 at 3:53-55) (emphasis added). The specification further discloses that the invention "provides users with the fastest possible way of reaching *the reviewed (and best) Web sites*" (*Id.* at 7:15-19) (emphasis added); and that *What's on the Web* includes "over 1,800"

11

websites preselected based on the 4 criteria discussed above. (*Id.* at 6:26-55). This pre-selection process, and *What's on the Web* itself, demonstrate that the "published compilation" consists of websites and other Internet sites associated with diverse individuals or entities.

The prosecution history confirms that the websites and other Internet sites in the compilation must be associated with diverse individuals or entities. For example, the patentee distinguished the claimed invention from the Levergood prior art on the ground that Levergood's system merely provided the user with *"sub-links within a merchant's own website which is operated on a single merchant server."* (Exh 6: IMC__PLTF 061791). Similarly, the patentee distinguished the claimed invention from the Edelstein patent on the ground that Edelstein's compilation took the form *"of an advertisement for a single company with the electronic address of that company's resources,"* and was not a compilation that included *"the electronic addresses of their competitors' resources."* (Exh 6: IMC__PLTF 061834).

Thus, because the patentee distinguished the claimed invention from the "single merchant server" of Levergood, and the single company advertisement of Edelstein (which did not publish the electronic addresses of competitors), the '835 patent claims must be limited to "published compilations" of websites or other Internet sites associated with diverse individuals or entities. The claims cannot be construed so broadly as to cover publications consisting of a single company's own products or resources. *See, e.g., Ekchian v. The Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[B]y distinguishing between the invention and the prior art, an applicant is indicating what the claims do not cover").

## V.     Internet Media's Construction Is Incorrect

Internet Media's construction of the "published compilation" claim elements should be rejected, since it: (1) is contrary to the plain language of the claims; (2) is contrary to the use of the term "Internet locations" in other claims; (3) is contrary to the very portions of the patent specification upon which the construction relies; and (4) completely ignores the patentee's prosecution history admissions which narrow the scope of the claims.

First, Internet Media's construction of "Internet location" to mean *identified material or subject matter that is provided via the Internet by one or more computers* is inconsistent with the ordinary meaning of the word "location." As the patent discloses, and consistent with ordinary meaning, an Internet *location* is an actual site or place on the Internet, not "material or subject matter that is provided via the internet." Thus, as the patent discloses, websites and other pre-existing sites on the Internet having unique URLs are *locations* on the Internet. "Material or subject matter" provided via the Internet are not locations.

Second, the claims are directed to a "*compilation of preselected Internet locations*"; not a compilation of "information, such as descriptions, text or graphics, *at least some of which correspond* to preselected Internet locations," as urged by Internet Media. Simply put, the plain language of the claims states that the "Internet locations" themselves are being compiled; not subject matter or information *corresponding to* Internet locations. Moreover, Internet Media reads out the affirmative requirement of the claims that the compilation consist of "Internet locations." In Internet Media's construction, only "*some*" of the "information" has to correspond to preselected Internet locations; meaning that some of the information may correspond to something else. Whatever that undisclosed something else may be, it certainly is not supported by the claim language or the intrinsic record.

Internet Media's attempt to re-draft the claims is equally apparent when its separate construction of "Internet location" is inserted into its construction of the rest of the "published compilation" element. Specifically, the entire construction would read as follows: *a publicly disseminated collection of information, such as descriptions, text or graphics, at least some of which correspond to identified material or subject matter that is provided via the Internet by one or more computers.* Thus, when read in context, Internet Media's construction boils down to some "information" in a collection corresponding to "information" on the Internet. In this sense as well, Internet Media's amorphous construction reads out the requirement of the claims that the published compilation consist of Internet *locations*.

Further, Internet Media's construction is divorced from the technological context of the patent. Indeed, the specification discloses that the impetus for the invention was the prior art's alleged inability in 1996 to quickly and easily access the most desirable and useful "*Web sites*". The patent attempts to address this problem by utilizing a published compilation of websites and other preselected Internet sites having unique URL addresses. The patent never describes this compilation as a collection of subject matter or information *corresponding to* Internet locations. Rather, as claimed, the compilation consists of the locations themselves.

In addition, under Internet Media's construction of the term "Internet location," dependent claim 17 would make no sense. Claim 17 recites that the compilation of preselected Internet locations is published "on-line in said predetermined Internet location." According to the specification, the "predetermined Internet location" is the specialized website into which the jump codes are inputted. (Exh. 1 at 4:37-44). Internet Media construes "Internet location" the same way whether the term is used in the "published compilation" element, or in the "predetermined Internet location" element. Thus, if Internet Media's construction of "Internet location" were correct, claim 17 would require that a preselected compilation of "*identified material or subject matter that is provided via the Internet*" be published on-line in predetermined "*identified material or subject matter that is provided via the Internet*." Logically, it makes no sense to say that "material or subject matter" can be published in "material or subject matter." Rather, subject matter can only be published in a "place."

Finally, Internet Media's construction of the "published compilation" elements is so broad, it might encompass compilations of Internet locations associated with a single person or company. However, as discussed above, since the patentee distinguished the claimed invention from the "single merchant server" of Levergood, and the single company advertisement of Edelstein, claims 1-20 must be limited to compilations of Internet locations associated with diverse individuals or entities. *Ekchian,* 104 F.3d at 1304.

14

## VI.    CONCLUSION

For the above reasons, we respectfully request that Office Depot's construction of the "published compilation" element be adopted as the construction of this Court.

Dated:    July 5, 2006
Wilmington, Delaware

Respectfully submitted,

By: _____
TIFANIA R. MACK (#4120)
GREENBERG TRAURIG, LLP
The Nemours Bldg, 12th Floor
1007 North Orange Street
Wilmington, DE  19801
(302) 661-7000

MICHAEL A. NICODEMA (*PRO HAC VICE*)
GASTON KROUB (*PRO HAC VICE*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
TEL: (212) 801-2126

*Attorneys for Defendant Office Depot, Inc.*

15