# EXHIBIT 1

US006049835A

# United States Patent [19]

## Gagnon

[11] Patent Number: 6,049,835

[45] Date of Patent: Apr. 11, 2000

[54] **SYSTEM FOR PROVIDING EASY ACCESS TO THE WORLD WIDE WEB UTILIZING A PUBLISHED LIST OF PRESELECTED INTERNET LOCATIONS TOGETHER WITH THEIR UNIQUE MULTI-DIGIT JUMP CODES**

[75] Inventor: **Eric F. Gagnon**, Brooklyn, N.Y.

[73] Assignee: **Internet Media Corporation**, Brooklyn, N.Y.

[21] Appl. No.: 08/705,967

[22] Filed: **Aug. 30, 1996**

[51] Int. Cl.[7] .................................................. G06F 15/16
[52] U.S. Cl. ...................................... 709/245; 709/227
[58] Field of Search ........................... 348/27, 8, 13;
386/83; 709/218, 229, 219, 245, 227; 345/335;
707/3; 235/375

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,706,121 | 11/1987 | Young | 348/27 |
| 5,526,127 | 6/1996 | Yonetani et al. | 386/83 |
| 5,572,643 | 11/1996 | Judson | 709/218 |
| 5,612,730 | 3/1997 | Lewis | 348/8 |
| 5,625,781 | 4/1997 | Cline et al. | 345/335 |
| 5,659,729 | 8/1997 | Nielsen | 707/3 |
| 5,694,163 | 12/1997 | Harrison | 348/13 |
| 5,708,780 | 1/1998 | Levergood et al. | 709/229 |
| 5,764,906 | 6/1998 | Edelstein et al. | 709/219 |
| 5,804,803 | 9/1998 | Cragun et al | 235/375 |

Primary Examiner—Albert De Cady
Assistant Examiner—David Ton
Attorney, Agent, or Firm—Blank Rome Comisky & McCauley LLP

[57] **ABSTRACT**

A system for quickly and easily accessing preselected desired addresses or URLs on the Internet is disclosed in which a published list of Internet or World Wide Web sites together with their unique jump codes is utilized in connection with a corresponding specialized Web site which is accessed by a user using either a personal computer or a TV Internet Terminal and remote control, after which access a jump code corresponding to the preselected desired URL is entered by the user and software contained in the specialized Web site immediately and automatically accesses the desired Web site.

**20 Claims, 1 Drawing Sheet**



U.S. Patent          Apr. 11, 2000          6,049,835



FIG. 1



FIG. 2

6,049,835

1

## SYSTEM FOR PROVIDING EASY ACCESS TO THE WORLD WIDE WEB UTILIZING A PUBLISHED LIST OF PRESELECTED INTERNET LOCATIONS TOGETHER WITH THEIR UNIQUE MULTI-DIGIT JUMP CODES

### BACKGROUND OF THE INVENTION

The present invention is directed to a system for providing users of the Internet with easy access to the World Wide Web. More particularly, the present invention is directed to providing a central location which World Wide Web users of the Internet can reach and can then instruct to provide them with ready access to a particular location on the World Wide Web portion of the Internet.

Use of the Internet, a worldwide network of more than 100,00 individual computer networks and over 50 million users, has been gaining in popularity in the last several years. At the present time, almost every large corporation, university, government, organization, and many businesses around the world are connected to and have access to the worldwide network known as the Internet. The Internet is a collection of individual computer networks which are connected to each other by means of high-speed telephone and satellite data links, and which are all connected by a public-domain communications software standard.

The Internet was developed in the late 1960s, when it was established by the United States Defense Department as a research project for use by defense contractors and universities. The purpose of the Internet at that time was to create a military computer network which could still function reliably if any parts of it were destroyed in a nuclear war. A series of standardized communications protocols for sending information around the computer network were developed in order to ensure against the inherent unreliability of telephone lines and exposed telephone switching stations.

For over 25 years, the Internet was used primarily as a research-oriented computer communications network for universities, defense contractors, governments, and organizations in science and academia. During those years, it grew slowly but steadily and its proven freely, available communications protocols were also adopted by the computer and telecommunications industries and by large corporations, who used the Internet for electronic mail communications between and among their companies. In 1992, the United States Government turned over operation of the Internet's high-speed data links to commercial communications networks. That transfer, as well as the concurrent explosion in the use of personal computers, local area networks, bulletin boards systems, and consumer-oriented online services, caused the Internet to grow tremendously. Because of the convergence of those events, a critical mass for acceptance of the Internet as a standard means for the worldwide connection of individual computer networks of all kinds and sizes was created.

One of the reasons for the explosive growth of the Internet, which is growing at an estimated rate of 15%–20% per month, is the widespread acceptance of the Internet as the standard for electronic mail. The Internet is also well known for its two other main features, its usenet newsgroups, which constitute thousands of on-line discussion groups covering a wide variety of business, personal, and technical subjects, and the latest Internet phenomenon, the World Wide Web.

The World Wide Web or Web, as it is more commonly known, is a standardized method of combining the display of graphics, text, video and audio clips, as well as other features, such as secure credit card transactions, into a standardized, graphical, friendly interface that is easy for anyone to use. That is in contrast to the use of the Internet for electronic mail, which primarily consists of rapid text-based communications among one or more individuals.

The Web was designed by a British scientist in 1991 as a way to let researchers easily swap images instead of just messages. The creation of the first point-and-click software for "browsing" the Web, known as Mosaic, by the University of Illinois, enabled ready access to the Web by non-technically skilled users. Then, commercial companies, such as Netscape Communications Corporation, developed more sophisticated Web browsers, such as Netscape's Navigator. Another Web browser is the recently introduced Explorer 3.0 from Microsoft Corporation. Web browsers are also provided by well-known major on-line computer services such as Compuserve, American On-line, Prodigy, MCI and Netcom. Recently, Microsoft's Windows 95 operating system was introduced, which also includes its own Web browser.

The standard protocols which define the Web work in combination with a Web browser which runs on personal computers and handles the chores of accessing and displaying graphics and texts, and playing back video and audio files found on the Web. In addition to providing Web access, Web browsers and the Web tie together all the Internet's other useful features that existed before the advent of the Web, such as the newsgroups, FTP text file access, access to the net's Gopher sites, and, of course, sending or receiving electronic mail.

The World Wide Web standards are essentially a text coding, or "mark-up" method, where selected elements in a text file, such as article headlines, subheads, images and important words highlighted in the body of a text file can, by the insertion of special, bracketed codes (called HTML or Hyper Text Mark-up Language codes), be turned into hot links that are easily and instantly accessible by using a Web browser.

The World Wide Web is considered by many to be the true information superhighway. It lays the foundation for the use of the Internet as an entirely new broadcast medium, one which provides individuals, groups, and companies with unprecedented new opportunities for broadcast communication. For example, it is now fairly easy to create one's own Web site or address on the Web such that all users on the Internet can reach it The Web thus provides an outlet for anyone who desires to self-publish articles, graphics, video clips, and audio files over the net. Since any individual Web site can be freely accessed by anyone else with Web access, anyone who creates a Web site has a form for broadcasting their information, news, announcements, or creative works to an audience of millions. In addition, communication by Internet electronic mail can be established by any member of this audience with the author of a Web site, thus providing a new level of two-way communication to this new broadcast medium.

Because the Web provides several key benefits for Internet users, those benefits are encouraging the explosive growth of the Web and, ultimately, the acceptance of the Internet as the world's de facto computer communications medium.

First, using the Web, is simplicity itself. Compared to the confusing Unix based commands which were required to use the Internet just a few years ago, using a Web browser provides the user with the same friendly, graphical point-and-click access to all the Internet's features that the users

6,049,835

3

have come to expect from any good stand-alone Windows commercial software product. Once a user has accessed the Web, any of the 100,000 or more Web sites and their linked articles, text articles, graphic images, video/audio clips, extensive software libraries, and communications features are easily accessible with a click of the user's mouse key. In addition, any good Web browser software also opens up the Web's multimedia potential by providing users with instant and automatic access to helper applications software that automatically plays video and sound clips. Such multimedia potential has become a big attraction on the Web.

Web browsers also have a bookmark or hot list feature, which allows the user to capture and save the location of any Web site that is visited, so that such sites can be readily reaccessed by clicking on it from the user's Web browser at any time.

Using the Web, users can get instant access to many types of information, entertainment, and inter-active resources which are now available on the Web. Because of the explosion of newly created Web sites, the user can get access to useful, practical information on an almost infinite variety of subjects. The Web also provides an instant connection to millions of other people on the Internet. The resources which may be found on the Web are almost limitless.

In order to understand the use and operation of the Web, it is believed that certain terms that will be used herein should be defined. A Web browser, as previously discussed, is a graphical, Windows-based software program which is used on a personal computer to access the Web. A Web site or Web page describes an individual's "place" on the Web containing a single Web-published feature. A Web site is basically a collection of files located under a directory somewhere on someone's computer connected to the Internet. A Web site may consist of one Web page or of many Web pages, and usually also includes onscreen graphics, pictures, texts and video and audio clips, or an archive of software that can be downloaded, stored and used freely on the visitor's own personal computer.

Frequently, Web pages utilize links or hot links, two terms which are used interchangeably, to describe words or groups of words which are highlighted on Web pages. When a visitor clicks on a link with his mouse, he is immediately linked to another Web site or location on the current Web site containing the information that is referred to by the link. Any single Web site may contain dozens, hundreds, or even thousands of hot links, both to other sections within the same site or to other Web sites located anywhere else in the world.

Some Web pages also include a links page or jump site which consists of lists of links to many other Web sites. These are often a Web site author's favorite sites or feature links to Web sites pertaining to a specific subject.

Every Web site has an exact address, or location on the Web. Such addresses are known as a Uniform Resource Locator or URL. URLs consist of a confusing string of subdirectories, files or executable commands, separated by slashes, which are extremely difficult to work with and which must be typed into the user's Web browser exactly as they appear, including the use of upper and lower-case letters, in order to go to a Web site. While clicking on hot links will get the user to a Web site without having to type in a URL or copying a URL from a text file (if it is located on the user's computer) and pasting it into the user's Web browser-screen can save the user from this arduous task, the use of URLs has become the bane of the use of the Web.

Another difficulty with accessing the 100,000 or more individual Web sites is that many of them do not offer any

4

truly useful information or other benefits. In addition, there are many Web sites which consist of nothing more than lists of links to other Web sites, which often do nothing more than link the visitor to a Web site or other useless Web link pages. Skimming along such pages can be a frustrating and information starving experience, and one which should hopefully be avoided. Thus, while in general, the Web makes everything on the Internet easy to find and access, there is a need for a directory of the well-thought out and useful sites, coupled with a way to easily and quickly access such sites in order for users to get the most from their Web experience as well as experiencing the best the Web has to offer. More particularly, given the 100,000 plus Web sites that exist at that the present time, with many more being added every day, there is a need for a system which the Web user can use to access Web sites which contain a substantial amount of original information, graphics, or multi-media, provide useful advice, news or entertainment, and present the information in a well-thought out and professional manner. Most importantly, there is a great need to provide Web users with a system for accessing such Web pages in an easy to use, automatic, and efficient manner.

## SUMMARY AND OBJECTS OF THE INVENTION

In light of the above-described drawbacks of accessing the World Wide Web, it is clear that there is still a need in the art for a system for quickly and easily accessing selected beneficial sites or addresses on the World Wide Web portion of the Internet.

Therefore, it is a primary object of the present invention to provide a system by which user's of the World Wide Web portion of the Internet can readily access preselected Web sites or Internet addresses, after they have gained access to the World Wide Web portion of the Internet. More particularly, it is an object of the present invention to provide a specialized Web site which can be used in conjunction with published jump codes to readily and automatically access other Web sites or Internet locations, without the user having to remember or input the URL of the desired Web site.

Even more particularly, it is an object of the present invention to provide a printed publication containing descriptions of selected Web sites or addresses together with jump codes therefor which can readily be used in conjunction with a specialized Web site which includes software which, upon recognizing the inputted jump code, quickly and automatically accesses the desired Web site.

It is a further object of the present invention to be able to use the system of the present invention with any one of personal computers connected to the Web, Television Internet Terminal devices, or any other electronic device which can be used for Internet access.

The system of the present invention utilizes a published list of preselected Web sites, which are selected according to predetermined criteria, such as content, usefulness, presentation, and authorship. Each of the selected Web sites is assigned a specific four-digit jump code. A user desiring to access one of the preselected Web sites first gains access to the World Wide Web, using a Web browser, by accessing a special Web site which contains software for receiving any of the published four-digit jump codes and, based upon the stored relationship of the URLs corresponding to the input jump code, directly accesses the Web site corresponding to the jump code inputted by the user.

In the case of so-called "set top" TV Internet Terminals, such as those soon to be available from Sony and Phillips,

6,049,835

5

the user accesses the specialized Web site using the TV Internet Terminal and then enters the desired jump codes using a remote control which is similar to a standard television channel selector. In that manner, users with the TV Internet Terminal will be able to access the desired Web sites using their television, the TV Internet Terminal, and the remote control push buttons.

With these and other objects, advantages and features of the invention that may become hereinafter apparent, the nature of the invention may be more clearly understood by reference to the following detailed description of the invention, the appended claims and to the several drawings attached herein.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows, in schematic block diagram form, the inventive system of the present invention for use in connection with personal computer access to the Internet; and

FIG. 2 shows the system of the present invention for use with television Internet terminal access to the Internet.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the figures, wherein like reference numerals designate like elements throughout, there is shown in FIG. 1 the system of the present invention for use in connecting to the Internet by means of a personal computer. A personal computer 100, having a Web browser, is connected by means of a modem 136 by means of a telephone line or other communications medium, to a server computer 106 which provides access for the personal computer 100 directly to the Internet. The personal computer 100 includes a video monitor 102, as well as a keyboard 104 and a pointing device, such as a mouse or track ball, 105. Once the user has connected to the Internet, he accesses the specialized Web site 108, by entering the URL for that Web site. The specialized Web site is preferably a Web site called JumpCity, which has a URL of http://www.jumpcity.com/, although, obviously a specialized Web site for use as part of the inventive system disclosed herein could have any URL (and indeed would, of necessity, have to have its own URL), the only requirement being that the URL be disseminated in conjunction with the dissemination of the jump codes to be used therewith.

The JumpCity Web site 108 contains software which is capable of accepting a four-digit jump code, looking up the corresponding URL for the Web site denoted by that jump code in a stored data base, and then for immediately and automatically accessing that URL or Web site.

In order to provide Web users with the jump codes, it is preferable that a printed publication which contains preselected Web sites based on certain criteria be disseminated so that the jump codes associated with each of the preselected Web sites can be easily determined by the users. Such a publication, entitled "What's on the Web" published by Internet Media Corporation is one such type of book which is fully integrated with the specialized Web site 108. Such a book 110 contains a plurality of reviews of Web sites 112, 114, 116, 118, 120, and 122, each of which has a corresponding four digit jump code 124, 126, 128, 130, 132, and 134, associated therewith. After the user is on-line with the specialized JumpCity Web site 108, entering the four digit jump code will instantly link the Web site corresponding thereto to the JumpCity Web site, thus providing immediate access to the desired Web site for the user. There is no need to determine, nor input, the URL or address of the Web site which is desired to be accessed.

6

As discussed above, in addition to Web sites, any other type of subject matter contained on the Internet which has a URL, can be accessed using the jump code provided therefor. An example of such an additional use is the accessing of newsgroups, or Usenet Internet discussion newsgroups, where on-line discussions on thousands of subjects can be attained. Such newsgroups can also be accessed by means of the specialized JumpCity Web site 108. A listing of such newsgroups together with their assigned jump codes can be accomplished in a manner similar to that for the Web sites.

In addition to publishing a preselected number of descriptions and/or reviews of various Web sites 112–122 with their assigned jump codes 124–134 in a printed publication or book 110, the specialized JumpCity Web site 108 can also contain such reviews and their accompanying jump codes. In that matter, instant Web access to each of the reviews in the book 110, plus the latest news and reviews of the latest and best Web sites, updated, for example, daily, can be provided for users who access the specialized JumpCity Web site 108. In addition, without having to enter the URLs for accessing the preselected Web sites, users, after having access to the JumpCity Web site 108 and visiting other Web sites, can provide comments on the Web sites visited, vote on their favorite Web sites, and also participate in on-line discussions concerning those Web sites.

The preselected Web sites (over 1800 of which are covered in the "What's on the Web" book 110), are selected based upon four criteria. The first criteria is the content of the Web site. The selected Web sites preferably contain a substantial amount of original information, graphics and multimedia. The information contained in the selected Web sites is preferably comparable in value and amount to information that is available from traditional, professionally created media, such as newspapers and magazines. Also, it is preferable that the information available on the selected Web sites be updated on a reasonably frequent basis.

The second criteria is the usefulness of the information on the preselected Web sites. For example, it is preferable that the information available at the selected Web sites provide advice, news, and entertainment value. In addition, it is desirable that the information be useful to the Web reader to solve a problem.

The third criteria for selecting Web sites which are assigned jump codes is whether the site has good design and production values, that is, whether the graphics used by the site are interesting, professional-looking, and appropriate from the standpoint of Web design.

The fourth criteria used to preselect Web sites which are then assigned jump codes for use with the integrated specialized JumpCity Web site 108 and the Internet access system of the present invention is the authorship of the Web site. Preferably, the authors of the Web site are known and are highly knowledgeable concerning the information they are disseminating.

In order to use the Internet access system of the present invention, as discussed above, the user first must access the JumpCity specialized Web site 108 which is maintained for exclusive use in connection with the publication 110 which contains the preselected and reviewed Web sites 112–122 and their corresponding jump codes 124–134. The only URL the user need ever input in order to access any of the preselected (and best available) Web sites in the publication 110 is the URL of the JumpCity Web site 108. After the JumpCity Web site 108 has been accessed, the user enters the four-digit jump code (obviously a larger number of digits could be utilized in order to enable the accessing of a larger

6,049,835

| 7 | 8 |

number of Web sites or newsgroups or other URL locations on the Internet) which corresponds to the selected Web site or newsgroup or other address the user desires to access. The code is entered in a standard on-screen HTML box or form which is then read by software resident on the JumpCity specialized Web site **108**. This software program searches through its database of URLs, and finds the URL which is linked to the input jump code. The software then links the user either directly to the desired Web site, or alternatively, first to a brief written review of the Web site. By entering a simple four-digit code, the user is much more easily and conveniently able to access the desired Web sites, as compared to the standard method of accessing those Web sites, which requires the error-prone, tedious and confusing entry of URLs. The use of the jump codes printed in the printed publication or book **110** combined with the integrated specialized Web site **108** provides Web users with the fastest possible way of reaching the reviewed (and best) Web sites available on the World Wide Web portion of the Internet.

Referring now to FIG. 2, there is shown the system of the present invention for use with an alternative Internet access hardware and software. Specifically, a set-top TV Internet Terminal **202**, such as that available from Sony or Philips, which uses software and hardware available from WebTV Networks, Inc., of Palo Alto, Calif., and known as a "Web TV Internet Terminal" is utilized, in connection with a standard broadcast television **200**. The TV Internet Terminal **202** is connected to the television **200** such that the television functions in the same manner as the video monitor **102**, that is, it displays the computer video generated by the TV Internet Terminal **202**. The TV Internet Terminal **202**, in addition to containing the necessary hardware and software for enabling the television **200** to display computer video, is connected by means of a modem **136** which may also preferably be a cable modem, through a telecommunications medium, such as a telephone line, cable system line **138** or other medium, such as by satellite, to the server **106** of the Internet access provider. From there the user is able to access the server on which the JumpCity Web site **108** resides, using the Internet.

The users of the TV Internet Terminal accessing hardware are likewise provided with a book **110** which contains the same information discussed above in connection with FIG. 1.

In order to access the selected Web sites contained and reviewed in the book **110**, the users of the TV Internet Terminal are provided with a remote control device **204**, which has an outward appearance similar to a standard television channel changer but which is designed to work in connection with the TV Internet Terminal **202**. For that purpose, a plurality of specialized push buttons **206–216** are provided so that the TV Internet Terminal **202** can be commanded to access the Internet. In particular, in order to access the JumpCity Web site **108**, one of the specialized buttons **206–216** may be a specialized function button which causes the TV Internet Terminal **202** to transmit the URL of the JumpCity Web site **108**. Alternatively, the remote control **204** can contain enough push buttons to enable the user to enter the URL using the push buttons **206–216**. After the user has accessed the JumpCity Web site **108**, a jump code is entered followed by the depression of a specialized function key, similar to the enter key of the keyboard **104**. In all other respects, accessing the desired Web site as published in the book or printed publication **110** or as published as an on-line list within the JumpCity Web site **108**, is the same as described above in connection with FIG. 1. Obviously, the design of such a remote control **204** with

specialized push buttons and function buttons as well as the TV Internet Terminal **202**, will be known to those of ordinary skill in the art.

Although only a preferred embodiment is specifically illustrated and described herein, it will be appreciated that many modifications and variations of the present invention are possible in light of the above teachings and within the purview of the appended claims without departing from the spirit and intended scope of the invention.

What is claimed is:

1. A system for providing automatic access to preselected locations on the Internet, comprising:

   a published compilation of preselected Internet locations, said published compilation including a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein;

   a predetermined published Internet location having an address published in said published compilation, said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location;

   means for accessing said predetermined published Internet location;

   means for receiving said desired multi-digit jump code from said means for capturing and means for converting said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and

   means for automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location, whereby said user need only enter said desired multi-digit jump code to access a desired preselected Internet location without having to enter said corresponding URL address.

2. The system of claim 1, wherein said means for accessing said preselected published Internet location comprises a personal computer.

3. The system of claim 1, wherein said means for accessing said preselected published Internet location comprises a television Internet device.

4. The system of claim 3, wherein said television Internet device comprises a remote control device having a plurality of push buttons for controlling said television Internet device.

5. The system of claim 1, wherein said preselected locations on the Internet are in the World Wide Web.

6. The system of claim 1, wherein said published compilation of preselected Internet locations is published as printed matter.

7. The system of claim 1, wherein said published compilation of preselected Internet locations is published on-line in said predetermined published Internet location on the Internet.

8. The system of claim 1, wherein said means for capturing a desired multi-digit jump code entered by a user after accessing said predetermined Internet location comprises an on-screen HTML form.

9. The system of claim 1, wherein said multi-digit jump code is a four digit number.

10. The system of claim 1, wherein said published compilation comprises a review of each of said preselected Internet locations.

6,049,835

9

11. A method for providing automatic access to preselected locations on the Internet, comprising the steps of:

publishing a compilation of preselected Internet locations, said published compilation including a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein;

providing a predetermined Internet location having an address published in said published compilation, said predetermined Internet location comprising means for capturing a desired multi-digit jump code assigned to said preselected Internet location, said desired multi-digit jump code being entered by a user after said predetermined Internet location has been accessed;

accessing said predetermined Internet location and entering said desired multi-digit jump code into said predetermined Internet location;

receiving said multi-digit jump code entered into said predetermined Internet location after said multi-digit jump code has been captured at said predetermined Internet location;

converting the received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and

automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location corresponding to said received multi-digit jump code.

10

12. The method of claim 11, wherein said step of accessing said predetermined Internet location comprises using a personal computer to enter said multi-digit jump code.

13. The method of claim 11, wherein said step of accessing said predetermined Internet location comprises using a television Internet device.

14. The system of claim 13, wherein said television Internet device comprises a remote control device having a plurality of push buttons for controlling said television Internet device.

15. The method of claim 11 wherein said preselected locations on the Internet are on the World Wide Web.

16. The method of claim 11, wherein said step of publishing a compilation of preselected Internet locations comprises publishing said compilation as printed matter.

17. The method of claim 11, wherein said step of publishing a compilation of preselected Internet locations comprises publishing said compilation on-line in said predetermined Internet location.

18. The method of claim 11, wherein said means for capturing a desired multi-digit jump code entered by a user after accessing said predetermined Internet location comprises an on-screen HTML form.

19. The method of claim 11, wherein said multi-digit jump code is a four digit number.

20. The method of claim 11, wherein said published compilation comprises a review of each of said preselected Internet locations.

* * * * *

# EXHIBIT 2

## WHAT IS CLAIMED IS:

1.    A system for providing automatic access to selected locations on the Internet, comprising:

a published compilation of preselected locations on the Internet, each having a unique predetermined jump code published therewith;

means for accessing a preselected published location on the Internet; and

said predetermined published location on the Internet including means for receiving a jump code contained in said published compilation of preselected locations, means for using said jump code to determine a corresponding Internet location and means for automatically accessing said corresponding Internet location.

2.    The system of claim 1, wherein said means for accessing said preselected published location comprises a personal computer.

3.    The system of claim 1, herein said means for accessing said preselected published location comprises a television Internet device.

4.    The system of claim 3, wherein said television Internet device comprises a remote control device having a plurality of push buttons for controlling said television Internet device.

5.    The system of claim 1, wherein said selected locations on the Internet are in the World Wide Web.

14

IMC_PLTF 061501

6.    The system of claim 1, wherein said published compilation of preselected locations is published as printed matter.

7.    The system of claim 1, wherein said published compilation of preselected locations is published on-line in said predetermined published location on the Internet.

8.    A method for providing automatic access to selected locations on the Internet, comprising the steps of:

publishing a compilation of preselected Internet locations, each having a unique predetermined jump code associated therewith;

providing a predetermined Internet location comprising means for receiving a jump code contained in the published compilation of preselected Internet locations;

accessing said predetermined Internet location;

receiving said jump code entered after accessing said predetermined Internet location;

determining an Internet location corresponding to said received jump code; and

automatically accessing said Internet location corresponding to said received jump code.

9.    The method of claim 8, wherein said step of accessing said predetermined Internet location comprises using personal computer to enter said jump code.

10.    The method of claim 8, wherein said step of accessing said predetermined Internet location comprises using a television Internet device.

15

IMC_PLTF 061502

14.
11. The system of claim 10, wherein said television Internet device comprises a remote control device having a plurality of push buttons for controlling said television Internet device.

15.
12. The method of claim 9, wherein said selected locations on the Internet are on the World Wide Web.

16.
13. The method of claim 8, wherein said step of publishing a compilation of preselected Internet locations comprises publishing said compilation as printed matter.

17.
14. The method of claim 8, wherein said step of publishing a compilation of preselected Internet locations comprises publishing said compilation on-line in said predetermined Internet location.

 ADD CLY

16

17

IMC_PLTF 061503

Serial Number: 08/705,967
Art Unit: 2782

3

Levergood teaches the user may obtain the unique predetermined jump code of locations on the Internet (telephone number or company name or product name, col. 9 lines 33-40) through advertising (col. 10 lines 17-23); however, the Levergood does not explicitly teach a published compilation of predetermine locations. It would have been obvious by one of ordinary skill in the Data Processing art at the time of the invention to published compilation of predetermine Internet locations because it would enhance the commercial advertisement for user of Levergood's Internet server (Levergood, col. 5 lines 30-32).

6.    As to claim 2, Levergood teaches means for accessing comprises a personal computer (12, Fig. 1).

7.    As to claim 5, Levergood teaches the selected locations on the Internet are in the Word Wide Web (col. 3 lines 6-20).

8.    As to claim 6, Levergood teaches the published compilation is published as printed matter (conventional telephone numbers, col. 9 lines 7-20).

9.    As to claim 7, Levergood teaches the published compilation is on-line (col. 10 lines 17-23).

10.    Claims 3-4 and 10-11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Levergood et al. (Levergood) patent no. 5,708,780, in view of Lewis patent no. 5,612,730.

IMC_PLTF 061690

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#6

| | | |
|---|---|---|
| In re Patent Application of: | ) | Examiner: D. Ton |
| | ) | |
| INTERNET MEDIA CORPORATION | ) | Group Art Unit: 2782 |
| | ) | |
| Serial No.: 08/705,967 | ) | Atty. Dkt.: 0351.001 |
| | ) | |
| Filed: August 30, 1996 | ) | MCG/prm |
| | ) | |
| For: SYSTEM FOR PROVIDING | ) | |
| EASY ACCESS TO THE WORLD | ) | |
| WIDE WEB | ) | August 7, 1998 |

## RESPONSE

**ATTN: Box Fee Amendment**
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

The following remarks are respectfully submitted in response to the outstanding Official

Action mailed April 9, 1998.

## REMARKS

The rejection of claims 1-2 and 12-14 as obvious under 35 U.S.C. §103 is hereby

traversed and reconsideration is respectfully requested. The Examiner has rejected those claims

as obvious over the single prior art patent to Levergood et al., U.S. Patent No. 5,708,780.

Applicant strenuously disagrees with the Examiner's contention that claims 1-2, 5-9 and 12-14

are obvious over that single prior art patent.

The Levergood et al. patent is directed to methods for controlling and monitoring access

to network servers. In particular, the system described in that patent is directed to forwarding a

IMC_PLTF 061789

service request from the client to a server in which a session identification is appended to the request and to subsequent service requests from the client to the server within a session of requests. The system described in the Levergood et al. patent is a single merchant server in which access is controlled by a number of features which are designed to add security to the user's selection of various on-screen options within the single merchant server. Thus, the Levergood et al. patent is directed to a system which provides both Internet users and Internet website operators or merchants with a means for conducting secure transactions over the Internet, using a single merchant server (see column 10, lines 24-37) in which each merchant's server, as well as the single merchant server, contains software which forms part of the system disclosed in the Levergood et al. patent.

The Examiner contends that the Levergood et al. patent discloses all of the elements recited in claim 1 with the exception of the "published compilation of preselected locations on the Internet, each having a unique predetermined jump code published therewith." It is respectfully asserted that the Examiner has erroneously interpreted several portions of columns 9 and 10 of the Levergood et al. patent as disclosing the other recited elements of Applicant's invention. For the following reasons, it is respectfully asserted that Applicant's invention, as recited in claims 1 and 8, is not obvious over the disclosure of the Levergood et al. patent.

In rejecting claim 1, the Examiner first points to the language in the Levergood et al. patent at column 9, lines 6-40, in support of the assertion that the element of the "predetermined published location on the Internet including means for receiving a jump code is disclosed therein." However, three different embodiments or aspects of the "inventions" disclosed in the Levergood et al. patent are discussed in that section of the specification. Beginning at line 6,

2

IMC_PLTF 061790

there is first discussed the provision of facilities which allow users to utilize conventional telephone numbers or other identifiers to access merchant services. However, as discussed beginning at line 11, the Levergood et al. patent merely proposes utilizing a "web browser client 601" which "provides a 'dial' command to accept a telephone number from the user as by clicking on a 'dial' icon and inputting the telephone number through the keyboard. The browser then constructs a URL in the form of ...."

Contrary to Applicant's invention, the system suggested by that portion of the Levergood et al. patent is directed to a web browser which includes a specialized "dial" command which seeks the input from the user of a telephone number and then uses that telephone number to construct a special URL. That special URL is sent by the browser to a directory server. The directory server uses a database to translate the NUMBER to a target URL that describes the "merchant server and document that implements the service corresponding to NUMBERS" (see column 9, lines 29-30).

As is made clear for example at column 10, lines 10-12 and 24-26, the system described in the Levergood et al. patent is directed to utilizing conventional telephone numbers or other identifiers which are in reality merely sub-links within a merchant's own website which is operated on the "single merchant server." Indeed, as set forth specifically in lines 24-26 of column 10, the system disclosed in the Levergood et al. patent is directed to allowing a single merchant server to provide "multiple services that corresponds to different external 'telephone numbers' or other identifiers." As further described at lines 26-36, the example of a "priority gold number" given is utilized within the merchant's own Internet server.

It is the Examiner's further contention that lines 26-32 of column 9 of the Levergood et

3

IMC_PLTF 061791

al. patent disclose the recited "means for using said jump code to determine a corresponding Internet location." However, contrary to the teachings of the Levergood et al. patent, Applicant's jump code is an uniquely predetermined published number which is published together with the published compilation of preselection locations on the Internet. In the Levergood et al. patent, the disclosed telephone numbers are not uniquely predetermined nor are they published together with the published compilation of the preselected locations on the Internet. Rather, as discussed at column 9, lines 26-32, the system of the Levergood et al. patent utilizes a form page provided by the directory server for use with a conventional browser that prompts the user for the merchant's telephone number or other identifier in place of the custom "dial" commands of the previous example described at lines 6-20 of column 9 of that patent.

Not only are the telephone numbers utilized by the Levergood et al. patent not uniquely predetermined by their system, but, as set forth, for example, at lines 33-36, such numbers could even be unpublished. Obviously, such a teaching is contrary to Applicant's claimed invention. Thus, the Levergood et al. patent contains no support whatsoever for the Examiner's assertion that the telephone numbers the system of the Levergood et al. patent seeks to use to create the URL address be contained in a published compilation.

Next, the Examiner contends that lines 17-37 of column 10 of the Levergood et al. patent disclose Applicant's recited "means for automatically accessing said Internet location." As discussed above, whereas Applicant's invention is directed to providing jump codes which can be inputted by users at a specific website provided by Applicant (recited as "preselected published locations on the Internet"), Applicant's invention provides Internet users with the ability to reach any and all Internet locations on any of the servers connected to the Internet, as

4

IMC_PLTF 061792

opposed to the single merchant server utilized by the Levergood et al. system. In addition, inasmuch as "merchants do not need to alter their print or television advertising to provide an Internet specific form of contact information" (column 10, lines 20-22) the Levergood et al. patent teaches against the use of Applicant's "published compilation of preselected locations on the Internet, each having a unique predetermined jump code published therewith."

There is no suggestion whatsoever contained in the Levergood et al. patent that such a compilation of preselected locations on the Internet, each having a unique predetermined jump code published therewith, be published. In fact, as previously discussed, the Levergood et al. patent contemplates using unpublished numbers and further contemplates, as discussed immediately above, that merchants will not need to alter their print or television advertising. Thus, issue is respectfully taken with the Examiner's contention that "it would have been obvious by one of ordinary skill in the Data Processing art at the time of the invention to publishe[d] (sic) compilation of predetermine[d] (sic) Internet locations because it would enhance the commercial advertisement for user of Levergood's Internet server" [citing column 5, lines 30-32 of the Levergood et al. patent].

In fact, the text at column 5, lines 30-32 has nothing whatsoever to do with the publishing of a commercial advertisement for use by the system disclosed at columns 9 and 10 of the Levergood et al. patent. Therefore, it is respectfully asserted that not only is there no suggestion in the Levergood et al. patent that the merchant's telephone numbers be published as a compilation, as recited by Applicant, but there is in fact an affirmative teaching against the use of such a compilation, as discussed above in connection with column 10, lines 20-23 and 33-36 of the Levergood et al. patent.

5

IMC_PLTF 061793

Claim 8, as correctly stated by the Examiner, corresponds to method claim 1. It is thus believed to be patentable for the same reasons expressed above in connection with claim 1.

Therefore, reconsideration and withdrawal of the rejection of claims 1 and 8 are earnestly solicited and an indication of the allowability of those claims is respectfully requested.

With respect to claims 2, 5, 6, 9, 12 and 13, such claims are respectfully asserted to be in condition for allowance since they depend from independent claims 1 or 8 which, as discussed above are believed to contain patentable subject matter.

With respect to claims 7 and 14, issue is respectfully taken with the Examiner's contention that the Levergood et al. patent teaches that the published compilation of preselected Internet locations is "on-line in said predetermined Internet location." Nowhere in the Levergood et al. patent and particularly at the cited column 10, lines 17-23, is there any contemplation of a website which contains a compilation of preselected locations on the Internet, each having a unique predetermined jump code published therewith. At most, the Levergood et al. patent discloses the use of a directory server 602 which uses a database 604 to translate the telephone number input to that server to a target URL.

Therefore, reconsideration and withdrawal of the rejection of claims 7 and 14 and an indication of the allowability thereof is respectfully requested.

In the event that there are any questions relating to this amendment or to the application in general, it would be appreciated if the examiner would telephone the undersigned attorney concerning such questions so that the prosecution of this application may be expedited.

Please charge any shortage or credit any overpayment of fees to BLANK ROME COMISKY & McCAULEY LLP (WIGMAN, COHEN, LEITNER & MYERS IP GROUP),

6

IMC_PLTF 061794

Deposit Account No. 23-2185 (0351.001/P). In the event that a petition for an extension of time is required to be submitted herewith and in the event that a separate petition does not accompany this response, Applicant hereby petitions under 37 C.F.R. §1.136(a) for an extension of time for as many months as are required to render this submission timely. Any fee due is authorized above.

Respectfully submitted,

INTERNET MEDIA CORPORATION

By: _____
          Michael C. Greenbaum
          Reg. No. 28,419

Customer No.: 002779
BLANK ROME COMISKY & McCAULEY LLP
*(WIGMAN, COHEN, LEITNER & MYERS IP GROUP)*
The Farragut Building
900 - 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202)463-7700
Facsimile: (202)463-6915

7

IMC_PLTF 061795

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Patent Application of: | ) | Examiner: D. Ton |
| Eric F. GAGNON | ) | Group Art Unit: 2782 |
| Serial No.: 08/705,967 | ) | Atty. Dkt.: 0351.001 |
| Filed: August 30, 1996 | ) | MCG/fcs |
| For: SYSTEM FOR PROVIDING | ) | |
| EASY ACCESS TO THE WORLD | ) | |
| WIDE WEB | ) | February 5, 1999 |

RECEIVED

FEB - 9 1999

Group 2700

#10/BC(NO)
Tich
02-26-99

### AMENDMENT

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

The following amendments and remarks are respectfully requested to be entered in response to the Final Office Action mailed October 26, 1998.

IN THE CLAIMS:

Please amend claims 1-3, 5-9 and 12 as follows:

1. (Amended) A system for providing automatic access to preselected locations on the Internet, comprising:

a published compilation of preselected Internet locations [on the Internet], said published compilation including [having] a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein [therewith];

[means for accessing] a [preselected] predetermined published Internet location having an address published in said published compilation [on the Internet], said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each

preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location; [and]

    means for accessing said predetermined published Internet location;

    means for receiving said desired multi-digit jump code from said means for capturing and means for converting said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and

    [said predetermined published location on the Internet including means for receiving a jump code contained in said published compilation of preselected locations, means for using said jump code to determine a corresponding Internet location and] means for automatically accessing said desired preselected [corresponding] Internet location using said URL address corresponding to said desired preselected Internet location, whereby said user need only enter said desired multi-digit jump code to access a desired preselected Internet location without having to enter said corresponding URL address.

    2.    (Amended)    The system of claim 1, wherein said means for accessing said preselected published Internet location comprises a personal computer.

    3.    (Amended)    The system of claim 1, wherein said means for accessing said preselected published Internet location comprises a television Internet device.

    5.    (Amended)    The system of claim 1, wherein said preselected locations on the Internet are in the World Wide Web.

    6.    (Amended)    The system of claim 1, wherein said published compilation of preselected Internet locations is published as printed matter.

    7.    (Amended)    The system of claim 1, wherein said published compilation of

2

preselected Internet locations is published on-line in said predetermined published Internet location on the Internet.

4. (Amended)    A method for providing automatic access to preselected locations on the Internet, comprising the steps of:

publishing a compilation of preselected Internet locations, said published compilation including [each having] a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein [associated therewith];

providing a predetermined Internet location having an address published in said published compilation, said predetermined Internet location comprising means for [receiving] capturing a desired multi-digit jump code assigned to said preselected Internet location, said desired multi-digit jump code being entered by a user after said predetermined Internet location has been accessed [contained in the published compilation of preselected Internet locations];

accessing said predetermined Internet location and entering said desired multi-digit jump code into said predetermined Internet location;

receiving said multi-digit jump code entered into said predetermined Internet location after said multi-digit jump code has been captured at said [accessing said] predetermined Internet location;

[determining] converting the received multi-digit jump code to a URL address corresponding to the desired preselected [an] Internet location [corresponding to said received jump code]; and

automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location corresponding to said received multi-

3

digit jump code.

9.    (Amended)    The method of claim 8, wherein said step of accessing said

predetermined Internet location comprises using a personal computer to enter said multi-digit

jump code.

12.    (Amended)    The method of claim 8, wherein said preselected locations on the

Internet are on the World Wide Web.

Please add the following claims 15-16

--15.    The system of claim 1, wherein said means for capturing a desired multi-digit

jump code entered by a user after accessing said predetermined Internet location comprises an

on-screen HTML form.

16.    The method of claim 8, wherein said means for capturing a desired multi-digit

jump code entered by a user after accessing said predetermined Internet location comprises an

on-screen HTML form.

17.    The system of claim 1, wherein said multi-digit jump code is a four digit number.

18.    The method of claim 8, wherein said multi-digit jump code is a four digit

number.--

## REMARKS

The Examiner is thanked for his courteous conduct of an interview with the undersigned

on January 25, 1999, during which the 35 U.S.C.§ 103 rejection was discussed and certain

suggestions regarding amendment of the claims were made.  Subsequent thereto, proposed

amended claims were submitted to the Examiner for informal review.

By the instant Amendment, independent claims 1 and 8 and dependent claims 2-3, 5-7, 9,

4

IMC_PLTF 061807

and 12 have been amended; dependent claims 4, 10-11, and 13-14 have left unamended and four new dependent claims 15-18 have been submitted. Thus, 18 claims, including two independent claims 1 and 8, are submitted for reconsideration by the Examiner.

In the Final Office Action mailed October 26, 1998, the Examiner continued his rejection of all of the claims 1-14 then pending in the application as being obvious under 35 U.S.C. § 103 over either the Levergood, et al. patent as applied against claims 1-2, 5-9, and 12-14 in the prior Office Action or over the combination of the Levergood, et al and Lewis patent, as applied against claims 3-4, and 10-11 in the prior Office Action. Applicant respectfully traverses the rejection of all claims 1-14 as continued by the Examiner in the Final Office Action.

Solely for the purpose of permitting allowable subject matter to pass to issuance, Applicant has amended independent claims 1 and 8 to now recite that Applicant's "published compilation of preselected Internet locations" includes "a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein" and that Applicant's "predetermined published Internet location" has "an address published in said published compilation". In addition, the independent claims recite the further limitation that "said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location." Furthermore, additional elements, such as means for accessing, means for receiving, means for capturing and means for converting have been added to the independent claims.

For purposes of example only, the cited portions discussed above are from independent claim 1. Claim 8 contains either the same or similar language. As will be discussed hereinafter,

5

IMC_PLTF 061808

none of those features are disclosed or suggested, by any of the references of record and, particularly, by either the Levergood, et al. or Lewis patents, taken either singly or in combination.

Applicant expressly reserves the right to file one or more continuation applications which contain claims directed to the disclosed subject matter which include fewer limitations than those recited in amended claims 1 and 8 and to obtain allowance of such claims.

The Levergood, et al. patent, USP 5,708,780, is directed to methods for controlling and monitoring access to network servers. In particular, the system described in that patent is directed to forwarding a service request from the client to a server in which a session identification is appended to the request and to subsequent service requests from the client to the server within a session of requests. The system described in the Levergood, et al. patent is a single merchant server in which access is controlled by a number of features which are designed to add security to the user's selection of various on-screen options within the single merchant server. Thus, the Levergood, et al. patent is directed to a system which provides both Internet users and Internet website operators or merchants with a means for conducting secure transactions over the Internet, using a single merchant server (see column 10, lines 24-37) in which each merchant's server, as well as the single merchant server, contains software which forms part of the system disclosed in the Levergood, et al. patent.

Applicant's invention, as recited in the now-amended independent claims 1 and 8, is directed to a system for providing automatic access to preselected locations on the Internet and is formed from a combination of "a published compilation of preselected Internet locations, said published compilation including a unique predetermined multi-digit jump code assigned to each

6

IMC_PLTF 061809

of said preselected Internet locations published therein," together with a "predetermined, published Internet location having an address published in said published compilation, said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location."

Applicant respectfully submits that none of the references of record, and specifically the Levergood, et al. patent, either discloses, or suggests, Applicant's recited published compilation, or predetermined published Internet location having an address published in said published compilation. Moreover, none of the references of record, disclose, or suggest, Applicant's multi-digit jump code nor the recited means for capturing that jump code at the preselected Internet location. Furthermore, none of the art of record discloses, nor suggests, the recited means for receiving, means for capturing, or means for converting "said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location."

In light of the foregoing, reconsideration and withdrawal of the rejection of claims 1-2, 5-9, and 12-14 over the cited Levergood, et al. patent is earnestly solicited and an indication of the allowability of both those claims, as amended, is respectfully requested. Applicant has amended dependent claims 2, 5-7, 9, and 12 to conform them to the amended independent claims 1 and 8.

Nor does the Lewis patent supply any of the shortcomings of the Levergood, et al. patent discussed above. Thus, reconsideration and withdrawal of claims 3-4 and 10-11 under 35 U.S.C. § 103 over the combination of the Levergood, et al. and Lewis patents is earnestly solicited. Dependent claim 3 has been amended to conform it to the amended claim language of claim 1. Inasmuch as independent claims 1 and 8 are respectfully asserted to be in condition for

7

IMC_PLTF 061810

allowance, it is likewise respectfully asserted that claims 3-4 and 10-11 are likewise in condition for allowance. Accordingly, an indication of the allowability of claims 3-4 and 10-11 is earnestly solicited.

By the instant Amendment, four new dependent claims 15-18 are presented. Inasmuch as such claims are dependent from either independent claim 1 or independent claim 8, both of which are believed to be in condition for allowance, such dependent claims 15-18 are likewise believed to be in condition for allowance.

In view of the foregoing amendments and remarks, reconsideration and withdrawal of the rejection of claims 1-14 is earnestly solicited and the entrance and an indication of the allowability of claims 1-18 is respectfully requested.

In the event that there are any questions relating to this Amendment or to the application in general, it would be appreciated if the Examiner would telephone the undersigned attorney concerning such questions so that the prosecution of this application may be expedited.

Inasmuch as this Amendment is being submitted within the fourth month after the mailing of the Final Office Action, a Petition for a One Month Extension of Time is presented herewith. Please charge the $55.00 petition fee to the deposit account of Blank Rome Comisky & McCauley LLP, deposit account number 23-2185 (0351.001/P). In the event that a Petition for an Extension of Time does not accompany this response, Applicant hereby petitions under 37

8

IMC_PLTF 061811

C.F.R. § 1.36(a) for an Extension of Time for as many months as are required to render this

submission timely. Any fee due is authorized above.

Respectfully submitted,

Eric F. GAGNON

By:

Michael C. Greenbaum
Reg. No. 28,419

Customer No.: 002779
BLANK ROME COMISKY & McCAULEY LLP
The Farragut Building
900 - 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202)463-7700
Facsimile: (202)463-6915

9

IMC_PLTF 061812

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Patent Application of: | ) | Examiner: D. Ton |
| | ) | |
| Eric F. GAGNON | ) | Group Art Unit: 2784 |
| | ) | |
| Serial No.: 08/705,967 | ) | Atty. Dkt.: 000351.00001 |
| | ) | |
| Filed: August 30, 1996 | ) | MCG:DJE:dfs |
| | ) | |
| For:  SYSTEM FOR PROVIDING | ) | |
| EASY ACCESS TO THE WORLD | ) | |
| WIDE WEB | ) | September 13, 1999 |

**AMENDMENT**

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

The following amendments and remarks are respectfully requested to be entered in

response to the non-final Office Action mailed June 11, 1999.

**IN THE CLAIMS:**

Please add the following new claims:

19. The system of claim 1, wherein said published compilation comprises a review of

each of said preselected Internet locations.

20. The method of claim 8, wherein said published compilation comprises a review of

each of said preselected Internet locations.--

**REMARKS**

The Office Action dated June 11, 1999, has been carefully considered. In response, the

Applicant respectfully submits that this application is in condition for allowance. Accordingly,

reconsideration of the application and allowance of claims 1-20 are respectfully solicited.

The Examiner is thanked for the courtesy extended to the Applicant's representative

during the personal interview conducted August 17, 1999. The following is a summary of the

IMC_PLTF 061831

interview.

During the interview, the Applicant's representative noted that *Edelstein et al* fails to teach or suggest a published compilation. In response, the Examiner argued that *Edelstein et al* uses a database linking the mnemonic aliases with the URL's and that the database could be printed out for use as a published compilation.

The Examiner also noted another reference which he had found in a search, namely, U.S. Patent No. 5,804,803 to *Cragun et al*. *Cragun et al* is concerned with providing consumers with information on prospective purchases. To that end, *Cragun et al* teaches a system including a client computer into which a consumer scans the UPC bar code of an item to be purchased and a server computer storing a database linking each UPC with a URL for a Web page describing the product. The Examiner further noted the existence of Internet directories which list companies and their full URL's.

The Examiner took the position that the database of either *Edelstein et al* or *Cragun et al* could be printed out and used as a published compilation, that *Cragun et al* teaches listing numerical codes (UPC's) with URL's, and that the known Internet directories provide motivation to print out the databases.

The Applicant's representative responded as follows. First, it would not have been possible, much less obvious, for a user to gain access to the database of *Edelstein et al* or *Cragun et al* to print it out. Second, *Cragun et al* is specifically intended for use in a store, where a consumer can take a can of chicken soup to the bar-code scanner of the client computer and scan in the UPC bar code to access the Web site of the manufacturer of the soup. By contrast, the published compilation of the present invention is usable from any computer with Internet access, e.g., a home computer, and is not limited to use with products bearing UPC bar codes. Third, it would not have been obvious to combine either *Edelstein et al* or *Cragun et al* with a published

2

Internet directory. *Edelstein et al* teaches away from the use of published compilations, depending on mnemonic codes instead. *Cragun et al* relies on the UPC bar codes on the packaging of actual products, with the result that a published compilation would have been superfluous.

The Examiner acknowledged that the use of the published compilation provides a distinction over the prior art, but maintained that the distinction is too minor for patentability.

Claims 1-2, 5-9 and 12-18 stand rejected under 35 U.S.C. §103(a) over *Edelstein et al*. Claims 3-4 and 10-11 stand rejected under 35 U.S.C. §103(a) over *Edelstein et al* in view of *Lewis*. For the reasons set forth below, the Applicant respectfully traverses both grounds of rejection and submits that the present claimed invention would not have been obvious over *Edelstein et al*, with or without the further teachings of *Lewis*.

The present claimed invention uses a published compilation of preselected Internet locations. The published compilation has a unique predetermined multi-digit jump code assigned to each of the preselected Internet locations published therein.

By contrast, *Edelstein et al* teaches simplifying the addressing of Internet resources (typically, but not exclusively, Web sites) through easily remembered source aliases and resource aliases. Each source alias identifies a provider of an Internet resource (e.g., the U.S. Senate), while each resource alias identifies a specific Internet resource (e.g., a Web page giving a biography of Senator Dole). The source aliases and resource aliases are stored on a central registry server 102 and root servers 103 in a central services region 101. If a user enters an invalid resource alias, the user receives a list of proximate resource aliases, as described in column 11, lines 59-65.

Thus, *Edelstein et al* relies largely on the user's memory, rather than on a published compilation of preselected Internet locations in combination with a predetermined published

3

IMC_PLTF 061833

Internet location having an address published in the published compilation. In fact, the Examiner acknowledges that *Edelstein et al* does not explicitly teach publishing the compilation.

However, the Examiner argues that *Edelstein et al* teaches published compilations such as Yellow Pages, White Pages or Web crawlers. The Examiner reasons that it would have been obvious to publish the list of resource aliases of *Edelstein et al* "because it would provide more advertisement of the URL address by using other media . . . ."

The Applicant respectfully disagrees with the Examiner's reasoning for the following reasons. First, column 2 of *Edelstein et al* discusses the disadvantages of the known Yellow Pages, White Pages and Web crawlers, and it is one of the goals of *Edelstein et al* to overcome those disadvantages. Therefore, *Edelstein et al,* far from rendering obvious the use of Yellow Pages, White Pages and Web crawlers, teaches away from their use.

As a consequence, the present claimed invention, by using a published compilation, proceeds contrary to the accepted wisdom of the prior art as evidenced by *Edelstein et al.* That fact is strong evidence of nonobviousness. *W. L. Gore & Associates, Inc. v. Garlock, Inc.,* 220 U.S.P.Q. 303, 312 (Fed. Cir. 1983), *cert. denied,* 469 U.S. 851 (1984).

Second, while *Edelstein et al* proposes that information providers advertise the electronic addresses of *their* resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources. Instead, the advertisement taught by *Edelstein et al* would take the form of an advertisement for a single company with the electronic address of that company's resource, just as companies today advertise their own (not their competitors') resources by their URL's. Therefore, the Applicant respectfully submits that *Edelstein et al* teaches away from the present claimed invention for that reason as well.

Moreover, even if the published compilation were for some reason deemed to be obvious

4

IMC_PLTF 061834

over *Edelstein et al,* such a published compilation would still not include a multi-digit jump code assigned to each of the preselected Internet locations. *Edelstein et al* teaches assigning a serial number to each resource alias, but that serial number is used for internal network purposes only. The user does not see the serial numbers. Instead, as explained in the paragraph spanning columns 11 and 12, the user enters a character sequence of a purported resource alias. Providing a published compilation of the serial numbers would defeat a key purpose of *Edelstein et al* taught in column 3, line 40, namely, providing mnemonic aliases. Therefore, the use of multi-digit jump codes as recited in the present claims provides a further distinction over *Edelstein et al.*

Further, with regard to the printed matter of claims 6 and 13, the Examiner argues that the teaching of Yellow Pages in *Edelstein et al* covers such printed matter. The Applicant respectfully disagrees with that reading of *Edelstein et al.* The second full paragraph of column 2 of *Edelstein et al* characterizes the Yellow Pages described therein as "software tools . . . for use on the Internet" and as "similar [i.e., not identical] to the telephone 'yellow pages' . . . ." In other words, the Yellow Pages described in *Edelstein et al* are electronic Yellow Pages, not printed matter.

During the interview, the Examiner argued that the database of *Edelstein et al* could be printed out and used as a published compilation. However, a user would not necessarily have the access to the database required to print it out. Moreover, even if a user could print out the database, the mere fact that the prior art could have been modified in a certain manner would not have made the modification obvious unless the prior art suggested the desirability of the modification. *In re Laskowski,* 10 U.S.P.Q.2d 1397, 1398 (Fed. Cir. 1989). In the present case, the prior art does not provide motivation to print out the database; in fact, *Edelstein et al's* reliance on mnemonic aliases teaches away from doing so.

5

IMC_PLTF 061835

Nor does mere knowledge in the prior art of published compilations of Internet resources provide such motivation. Such known published compilations, or at least the ones presented by the Examiner during the interview, print the URL for each resource in full. As a consequence, the mnemonic aliases of *Edelstein et al* would have been pointless and therefore unobvious. Also, since the Examiner did not explain how such known published compilations overcome the problems of the Internet Yellow Pages which *Edelstein et al* have the explicit goal of overcoming, *Edelstein et al* teaches away from combining the teachings of that patent with those of the known published compilations.

With regard to *Cragun et al,* since that reference has yet to be applied in a rejection or even formally made of record, the traversal of any rejection which may possibly be made over that reference, beyond what is required to summarize the interview, is premature. If the Examiner deems the invention to be unpatentable over *Cragun et al* or over a combination of references including *Cragun et al,* the Applicant respectfully requests a new Office Action to that effect. Of course, such an Office Action must be made non-final.

The teaching of an Internet gateway in *Lewis* does not overcome the above-noted deficiencies of *Edelstein et al.* Therefore, the combination of the two references would not have resulted in the subject matter of any of the present claims.

Finally, the Applicant respectfully submits that the subject matter of new claims 19 and 20 departs further from the teachings of the applied references. That subject matter finds support in the originally filed specification, e.g., on page 10, lines 8-11.

In view of the foregoing amendments and remarks, reconsideration and withdrawal of the rejection of claims 1-18 is earnestly solicited and the entrance and an indication of the allowability of claims 1-20 is respectfully requested.

In the event that there are any questions relating to this Amendment or to the application

6

IMC_PLTF 061836

in general, it would be appreciated if the Examiner would telephone the undersigned attorney concerning such questions so that the prosecution of this application may be expedited.

Please charge any deficiency in fees, or credit any overpayment thereof, to the deposit account of Blank Rome Comisky & McCauley LLP, deposit account number 23-2185 (000351.00001/P). In the event that a Petition for an Extension of Time is required to render this submission timely, the Applicant hereby petitions under 37 C.F.R. § 1.36(a) for an Extension of Time for as many months as are required to render this submission timely. Any fee due is authorized above.

Respectfully submitted,

Eric F. GAGNON

By: _____
Michael C. Greenbaum
Reg. No. 28,419

Customer No.: 002779
BLANK ROME COMISKY & McCAULEY LLP
The Farragut Building
900 - 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202)530-7436 (direct dial) or 530-7400 (switchboard)
Facsimile: (202)463-6915

7

IMC_PLTF 061837

# EXHIBIT 3

## EXHIBIT 3-DEFENDANTS'[1] CLAIM CONSTRUCTION CHART

| Claim 1 | Defendants' Construction |
|---|---|
| 1. A system for providing automatic access to preselected locations on the Internet, comprising: | |
| **a published compilation of preselected Internet locations,** | a publicly accessible list of different URLs associated with more than one person or entity, each URL corresponding to a different preselected place on the Internet |
| said published compilation including **a unique predetermined multi-digit jump code** assigned to each of said preselected Internet locations published therein; | a different predetermined number consisting of more than one digit |
| **a predetermined published Internet location having an address published in said published compilation,** | a publicly accessible predetermined place on the Internet having a URL published in said published compilation and providing access to other places on the Internet associated with other persons or entities |
| said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location; | |
| means for accessing said predetermined published Internet location; | |
| means for receiving said desired multi-digit jump code from said means for | |

---

[1] Ex. 3 represents the claim constructions for the Non-Office Depot Defendants, While Office Depot joins the Defendants in most of their constructions, it is proffering its own construction for the "preselcted compilation of Internet locations" element.

1

| | |
|---|---|
| capturing and | |
| means for converting said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and | |
| means for automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location, whereby said user need only enter said desired multi-digit jump code to access a desired preselected Internet location without having to enter said corresponding URL address. | |
| Claim 11 | |
| 11. A method for providing automatic access to preselected locations on the Internet, comprising the steps of: | |
| **publishing a compilation of preselected Internet locations,** | making publicly accessible a list of different URLs associated with more than one person or entity, each URL corresponding to a different preselected place on the Internet |
| said published compilation including **a unique predetermined multi-digit jump code** assigned to each of said preselected Internet locations published therein; | a different predetermined number consisting of more than one digit |
| **providing a predetermined Internet location having an address published in said published compilation,** | providing a publicly accessible predetermined place on the Internet having a URL published in said published compilation and providing access to other places on the Internet associated with other persons or entities |
| said predetermined Internet location comprising means for capturing a desired multi-digit jump code assigned | |

2

| | |
|---|---|
| to said preselected Internet location, said desired multi-digit jump code being entered by a user after said predetermined Internet location has been accessed; | |
| accessing said predetermined Internet location and entering said desired multi-digit jump code into said predetermined Internet location; | |
| receiving said multi-digit jump code entered into said predetermined Internet location after said multi-digit jump code has been captured at said predetermined Internet location; | |
| converting the received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and | |
| automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location corresponding to said received multi-digit jump code. | |

# EXHIBIT 4

EXHIBIT 4 - `835 SPECIFICATION REFERENCES TO

"LOCATIONS" ON THE INTERNET

System for providing easy access to the World Wide Web utilizing a published list of preselected Internet **locations** [URLs] together with their unique multi-digit jump codes (Ex. 1, Title.)

The present invention is directed to a system for providing users of the Internet with easy access to the World Wide Web. More particularly, the present invention is directed to providing a central **location** [PLACE] which World Wide Web users of the Internet can reach and can then instruct to provide them with ready access to a particular **location** [PLACE] on the World Wide Web portion of the Internet. (*Id.* 1, 1:8-14.)

Web browsers also have a bookmark or hot list feature, which allows the user to capture and save the **location [URL]** of any Web site that is visited, so that such sites can be readily reaccessed by clicking on it from the user's Web browser at any time. (*Id.*, 3:12-16.)

In order to understand the use and operation of the Web, it is believed that certain terms that will be used herein should be defined. A Web browser, as previously discussed, is a graphical, Windows-based software program which is used on a personal computer to access the Web. A Web site or Web page describes an individual's "place" on the Web containing a single Web-published feature. A Web site is basically a collection of files **located** [PLACE] under a directory somewhere on someone's computer connected to the Internet. A Web site may consist of one Web page or of many Web pages, and usually also includes onscreen graphics, pictures, texts and video and audio clips, or an archive of software that can be downloaded, stored and used freely on the visitor's own personal computer. (*Id.*, 3:25-39.)

Frequently, Web pages utilize links or hot links, two terms which are used interchangeably, to describe words or groups of words which are highlighted on Web pages. When a visitor clicks on a link with his mouse, he is immediately linked to another Web site or **location** [PLACE] on the current Web site containing the information that is referred to by the link. Any single Web site may contain dozens, hundreds, or even thousands of hot links, both to other sections within the same site or to other Web sites **located** [PLACE] anywhere else in the world. (*Id.*, 3:40-48.)

Every Web site has an exact address, or **location [URL]** on the Web. Such addresses are known as a Uniform Resource Locator or URL. URLs consist of a confusing string of subdirectories, files or executable commands, separated by slashes, which are extremely difficult to work with

and which must be typed into the user's Web browser exactly as they appear, including the use of upper and lower-case letters, in order to go to a Web site. While clicking on hot links will get the user to a Web site without having to type in a URL or copying a URL from a text file (if it is **located** [PLACE] on the user's computer) and pasting it into the user's Web browser-screen can save the user from this arduous task, the use of URLs has become the bane of the use of the Web. (*Id.*, 53-65.)

Therefore, it is a primary object of the present invention to provide a system by which user's of the World Wide Web portion of the Internet can readily access preselected Web sites or Internet addresses, after they have gained access to the World Wide Web portion of the Internet. More particularly, it is an object of the present invention to provide a specialized Web site which can be used in conjunction with published jump codes to readily and automatically access other Web sites or Internet **locations** [PLACE], without the user having to remember or input the URL of the desired Web site. (*Id.*, 4:31-40.)

In order to use the Internet access system of the present invention, as discussed above, the user first must access the JumpCity specialized Web site 108 which is maintained for exclusive use in connection with the publication 110 which contains the preselected and reviewed Web sites 112-122 and their corresponding jump codes 124-134. The only URL the user need ever input in order to access any of the preselected (and best available) Web sites in the publication 110 is the URL of the JumpCity Web site 108. After the JumpCity Web site 108 has been accessed, the user enters the four-digit jump code (obviously a larger number of digits could be utilized in order to enable the accessing of a larger number of Web sites or newsgroups or other URL **locations [URL]** on the Internet) which corresponds to the selected Web site or newsgroup or other address the user desires to access. The code is entered in a standard on-screen HTML box or form which is then read by software resident on the JumpCity specialized Web site 108. This software program searches through its database of URLs, and finds the URL which is linked to the input jump code. The software then links the user either directly to the desired Web site, or alternatively, first to a brief written review of the Web site. By entering a simple four-digit code, the user is much more easily and conveniently able to access the desired Web sites, as compared to the standard method of accessing those Web sites, which requires the error-prone, tedious and confusing entry of URLs. The use of the jump codes printed in the printed publication or book 110 combined with the integrated specialized Web site 108 provides Web users with the fastest possible way of reaching the reviewed (and best) Web sites available on the World Wide Web portion of the Internet. (*Id.*, 6:56-7:19.)

2

# EXHIBIT 5



**BONUS WEB SITE ACCESS!**
GET TO THE WEB SITES FEATURED HERE FROM OUR OWN WEB SITE, **JumpCity**™

**FALL/WINTER 1995/1996**

# WHAT'S ON THE WEB™

BUSINESS, PROFESSIONAL, PERSONAL, TECHNICAL & SOCIAL PLACES

**WORLD WIDE WEB**

Internet Media

**HOW TO TAP THE BEST OF THE INTERNET'S WORLD WIDE WEB, INSTANTLY, AND GET THE MOST FROM THE WEB'S 50,000 WEB SITES FOR**



**STAY ON TOP OF THE HOTTEST NEW TRENDS**
— access thousands of Web sites for instant information, talk, and news you won't see anywhere else —
Fox Television
http://www.foxnetwork.com ...

**CONNECT WITH THOUSANDS WHO SHARE YOUR SPECIAL INTERESTS**
— through tens of thousands of Web sites covering virtually any entertainment, music, hobby, special interest, social, or sports-related subject ... Images, Icons, and Flags
2047 ...

**GET A NEW JOB, START A NEW BUSINESS, OR EXPAND YOUR OWN BUSINESS**—by tapping thousands of Web sites for insider's business advice and career info
(scan via Images, Icons, and Flags at 2047)...

Edited by **ERIC GAGNON** with **Lee Philip Stral**, Senior Reviewer
**Edwinna von Baeyer** and **Christine Paustian**, Lead Reviewers

## *What's on the Web*
## *Fall/Winter 1995/1996*

© 1995 by Internet Media Corporation
Published by Internet Media Corp.

Internet Media Corp.
3052 Railroad Vine
Fairfax, VA 22031
Phone: (703) 255-6569
FAX: (703) 255-7237
WEB: http://www.jumpcity.com/

Editor: Eric Gagnon, INTERNET: gagnon@interramp.com
Designer: Chris Gagnon
Production/Layout: Chris Gagnon, Bram J. Meehan
Proofreaders: Celia Beattie, Kathryn Beck, Carol Clauden

*What's on the Web*, *What's on the Internet*, and **Jump City** are registered trademarks of Internet Media Corporation.

**Notice of Rights**
All rights reserved. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or by any information storage or retrieval system, without the prior written permission of the publisher. For information, contact Internet Media Corp. Photographs and illustrations used in this book have been downloaded from Web sites and publicly accessible file archives and are used in this book for news reportage purposes only to demonstrate the variety of graphics resources available via electronic access. The caption with each photograph or illustration identifies its source. Text and images available over the Internet may be subject to copyright and other rights owned by third parties. Online availability of text and images does not imply that they may be reused without the permission of rights holders, although the Copyright Act does permit certain unauthorized reuse as fair use under 17 U.S.C. §107. Care should be taken to ensure that all necessary rights are cleared prior to reusing material distributed over the Internet. Information about reuse rights is available from the institutions who make their materials available over the Internet.

**Notice of Liability**
The information in this book is distributed on an "As Is" basis, without warranty. While every precaution has been taken in the preparation of this book, neither the author nor Internet Media Corp. shall have any liability to any person or entity with respect to any liability, loss, or damage caused or alleged to be caused directly or indirectly by the instructions contained in this book or by the computer software or hardware products described herein.

**Distribution**
Internet Media books are distributed to the U.S. book trade by Publishers Group West, 4065 Hollis St., Emeryville, CA 94609, phone (800) 788-3123 or (510) 658-1834. Resellers outside the book trade can contact Internet Media directly at (703) 255-6569.

**Trademarks**
Throughout this book, trademarked names are used. Rather than put a trademark symbol in every occurrence of a trademarked name, we are using the names only in an editorial fashion and to the benefit of the trademark owner, with no intention of infringement of the trademark.

ISBN 1-884640-18-4
0 9 8 7 6 5 4 3 2 1
Printed and bound in the United States of America

*quality*, and *context*. With over 50,000 Web sites in existence already, and hundreds more added each week, the mystery of accessing all this information (now solved by the Web) has given way to a nearly overwhelming sense of confusion concerning all the choices available. What's out there? Is it any good? Where can I find a Web site that meets my particular need? When I get there, what will I find?

That's where **What's on the Web** comes in: our reviewers spend countless hours searching the Web—finding, comparing, selecting, and reviewing only those sites which stand out among the all the rest as your first, best, and most useful stops along the Web. Throughout the pages of this book, and its extensive Subject Index, you'll find many useful starting points for your Web journeys.

But **What's on the Web** is not just a book; it's also a Web site. You can reach all of the Web sites covered in this book through our own Web site, **Jump City**, simply by entering the four-digit (Jump) code we've assigned to every Web site reviewed here. While you're at **Jump City**, you'll also get free access to our reviews of the Web's hottest new sites, plus other special new enhancements we're adding to make **What's on the Web** and **Jump City** one of your first, best starting points for whatever you need to find on the Internet's World Wide Web.

I hope that this book will open many new and exciting opportunities and connections for you as it has for us. If you have any comments or suggestions for ways we can improve future editions of **What's on the Web** and **Jump City**, let us know by sending e-mail to me at **gagnon@interramp.com**.

Special thanks to Chris, my wife and partner of 15 years, for working with me, side by side, on the design, layout, and production of this book, and for creating the book's informational graphics. Thanks also to our senior review editor, Lee Stral, a true self-starter, for his diligent and productive writing effort, and to all our reviewers: Edwinna von Baeyer, Christine Paustian, Hilary Lane, Sara Brown, Jon van Oast, Ric Bohannon, and Tim Windsor. This book would not have been possible without their efforts. Thanks also to Bram Meehan of Innovative Projects, who helped us on the layout of this book under deadline pressure, and to Web site authors David Siegel and Tim Windsor, for allowing us to use their Web sites as examples for our book's informational graphics.

See you on the Net!

Eric Gagnon (**gagnon@interramp.com**)
Fairfax, VA



## Inventors on the Web
**invent.html** 〔Jump〕 **5106** 

Whether you're a workshop tinkerer or moonlight engineer, Inventus is a Web forum where you can present your inventions, ideas, speculations, and more. There are news and announcements for the inventor, including a list of new inventions, tips and guides, a look at the legal aspects of patent protection, and relevant news from around the world. For a list of inventions and products, check the "Shelves" section of this site. There are also other links to business, patent, and science information. A great Web resource! —(S.B.)

〔URL〕► http://www.sgn.com/invent.html



## Follow that Package!
**FedEx Airbill Tracking Form** 〔Jump〕 **7112** 

Feeling nervous about the big business presentation you sent, via Federal Express, to your business partners? Will they receive them in time? Well, wipe the sweat off your brow and log onto to FedEx's tracking page. There you can track where your package or envelope is, anywhere in the world, anytime of the day. It couldn't be simpler—just type in your tracking number in the field provided and the status of the package will be displayed. —(E.v.B.)

〔URL〕► http://www.fedex.com/cgi-bin/track_it

**INTERNATIONAL TRADE LAW PROJECT**

## World Trade Documents
**WTA/WTO & GATT 1994** 〔Jump〕 **7154** 

Need to know the regulations on shipping living plants across national boundaries? Visit here and download the Agreement on Sanitary and Phytosanitary Measures. The World Trade Agreement (WTA), World Trade Organization (WTO), the General Agreement on Tariffs and Trade (GATT) and more, all gathered under one electronic umbrella. Searching through these documents is a snap, thanks to the Law Faculty at the University of Tromso, Norway, which has established the online International Trade Law Project—an impressive collection of the full texts of these acts and agreements. —(E.v.B.)

〔URL〕► http://ananse.irv.uit.no/trade_law/gatt/nav/toc.html

## Form a Corporation Online
**The Company Corporation** 〔Jump〕 **2029** 

The Company Corporation, developers of this site, can help you incorporate your business in the United States or internationally, online, by phone, or by FAX, for as little as $119. Even if you don't want to take advantage of their services, there's good information here, enough to give you more than the basic whys and wherefores about incorporating. Online, there's information about the costs of incorporating in various states, an incorporation FAQ, plus a review of the different forms of corporations. You also can request a free guide to incorporating here, too. —(L.S.)

〔KEY〕〔NEWSGROUP〕 alt.business.misc  〔URL〕► http://www.service.com/tcc/home.html

## Web Advertising for Small Business
**The Internet Emporium** 〔Jump〕 **2096** 

There are any number of companies that will let you use their Web server to advertise your company's products and services, but most can be very expensive for a small business owner or entrepreneur. The Internet Emporium offers an alternative, with free, small ads and very reasonable prices for home pages with graphics, including page creation. If you want a Web presence, but didn't think you could afford it, this is a site to check. —(L.S.)

〔KEY〕〔NEWSGROUP〕 misc.entrepreneurs.moderated  〔URL〕► http://www.mountain.net/hp/marcom/emporium.htm

# EXHIBIT 6

## EXHIBIT 6 – `835 SPECIFICATION REFERENCES TO "JUMP CODE"

System for providing easy access to the World Wide Web utilizing a published list of preselected Internet locations together with their **unique multi-digit jump codes** (Ex. 1, Title.)

A system for quickly and easily accessing preselected desired addresses or URLs on the Internet is disclosed in which a published list of Internet or World Wide Web sites together with their unique **jump codes** is utilized in connection with a corresponding specialized Web site which is accessed by a user using either a personal computer or a TV Internet Terminal and remote control, after which access a **jump code** corresponding to the preselected desired URL is entered by the user and software contained in the specialized Web site immediately and automatically accesses the desired Web site. (*Id.*, Abstract.)

More particularly, it is an object of the present invention to provide a specialized Web site which can be used in conjunction with published **jump codes** to readily and automatically access other Web sites or Internet locations, without the user having to remember or input the URL of the desired Web site. (*Id.*, 4:35-41.)

Even more particularly, it is an object of the present invention to provide a printed publication containing descriptions of selected Web sites or addresses together with **jump codes** therefor which can readily be used in conjunction with a specialized Web site which includes software which, upon recognizing the inputted **jump code**, quickly and automatically accesses the desired Web site. (*Id.*, 4:42-48.)

A user desiring to access one of the preselected Web sites first gains access to the World Wide Web, using a Web browser, by accessing a special Web site which contains software for receiving any of the published **four-digit jump codes** and, based upon the stored relationship of the URLs corresponding to the input **jump code**, directly accesses the Web site corresponding to the **jump code** inputted by the user. (*Id.*, 58-65.)

In the case of so-called "set top" TV Internet Terminals, such as those soon to be available from Sony and Phillips, the user accesses the specialized Web site using the TV Internet Terminal and then enters the desired **jump codes** using a remote control which is similar to a standard television channel selector. In that manner, users with the TV Internet Terminal will be able to access the desired Web sites using their television, the TV Internet Terminal, and the remote control push buttons. (*Id.*, 4:66-5:7.)

1

The specialized Web site is preferably a Web site called JumpCity, which has a URL of http://www.jumpcity.com/, although, obviously a specialized Web site for use as part of the inventive system disclosed herein could have any URL (and indeed would, of necessity, have to have its own URL), the only requirement being that the URL be disseminated in conjunction with the dissemination of the **jump codes** to be used therewith. (*Id.*, 5:37-44.)

The JumpCity Web site 108 contains software which is capable of accepting a **four-digit jump code**, looking up the corresponding URL for the Web site denoted by that **jump code** in a stored data base, and then for immediately and automatically accessing that URL or Web site. (*Id.*, 5:45-49.)

In order to provide Web users with the **jump codes**, it is preferable that a printed publication which contains preselected Web sites based on certain criteria be disseminated so that the **jump codes** associated with each of the preselected Web sites can be easily determined by the users. Such a publication, entitled "What's on the Web" published by Internet Media Corporation is one such type of book which is fully integrated with the specialized Web site 108. Such a book 110 contains a plurality of reviews of Web sites 112, 114, 116, 118, 120, and 122, each of which has a corresponding **four digit jump code** 124, 126, 128, 130, 132, and 134, associated therewith. After the user is on-line with the specialized JumpCity Web site 108, entering the **four digit jump code** will instantly link the Web site corresponding thereto to the JumpCity Web site, thus providing immediate access to the desired Web site for the user. There is no need to determine, nor input, the URL or address of the Web site which is desired to be accessed. (*Id.*, 5:50-67.)

After the JumpCity Web site 108 has been accessed, the user enters the **four-digit jump code** (obviously a larger number of digits could be utilized in order to enable the accessing of a larger number of Web sites or newsgroups or other URL locations on the Internet) which corresponds to the selected Web site or newsgroup or other address the user desires to access. The **code** is entered in a standard on-screen HTML box or form which is then read by software resident on the JumpCity specialized Web site 108. This software program searches through its database of URLs, and finds the URL which is linked to the input **jump code**. The software then links the user either directly to the desired Web site, or alternatively, first to a brief written review of the Web site. By entering a simple **four-digit code**, the user is much more easily and conveniently able to access the desired Web sites, as compared to the standard method of accessing those Web sites, which requires the error-prone, tedious and confusing entry of URLs. The use of the **jump codes** printed in the printed publication or book 110 combined with the integrated specialized

2

Web site 108 provides Web users with the fastest possible way of reaching the reviewed (and best) Web sites available on the World Wide Web portion of the Internet. (*Id.*, 6:64-7:18.)

After the user has accessed the JumpCity Web site 108, a **jump code** is entered followed by the depression of a specialized function key, similar to the enter key of the keyboard 104. (*Id.*, 7:59-62.)