IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNET MEDIA CORPORATION,

Plaintiff,

v.

DELL, INC., OFFICE DEPOT, INC., J.C.
PENNEY COMPANY, INC., WILLIAMS-
SONOMA, INC., J. CREW GROUP, INC.

Defendants.

Civil Action No. 05-633 (KAJ)

## DEFENDANT OFFICE DEPOT'S REPLY BRIEF ON THE PROPER CONSTRUCTION OF THE "PUBLISHED COMPILATION" ELEMENT

# TABLE OF CONTENTS

<u>Section</u>                                                                                          <u>Page Number</u>

I.   Internet Media Improperly Seeks to have the Claims Construed in Light of Defendants' Accused
Products.................................................................................................................................... 1

II.  Internet Media's Criticism of Office Depot's Proposed Construction of the "Published
Compilation" Element Improperly Ignores the Intrinsic Record............................................. 2

    A.   The Term "Internet Location" Is Not Just A "Figure Of Speech" ................................ 2

    B.   The "Published Compilation" Is A Publically Accessible List...................................... 3

    C.   The Internet Locations In The Compilation Must Be "Pre-Existing" ........................... 5

    D.   The Pre-Selected Internet Locations Must Have Unique URL Addresses ..................... 6

    E.   The Preselected Internet Locations In The Compilation Must Be Associated With Diverse
Individuals And Entities............................................................................................ 7

III. Conclusion.......................................................................................................................... 8

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

C. R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858 (Fed. Cir. 2004) .........................................4, 5, 8

Ekchian v. The Home Depot, Inc., 104 F.3d 1299 (Fed. Cir. 1997) ......................................................8

Honeywell, Int'l, Inc. v. ITT Industries, Inc., 2006 WL 1703376 (Fed. Cir. 2006) ............................4

Jurgens v. McKasy, 927 F.2d 1552 (Fed. Cir. 1991) ............................................................................1

Lava Trading, Inc. v. Sonic Trading Mgnt, LLC, 445 F.3d 1348 (Fed. Cir. 2006) ..............................1

Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898 (Fed. Cir. 2004) .................................................4

Pall Corp. v. Hemasure Inc., 181 F.3d 1305 (Fed. Cir. 1999) .............................................................1

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) ...................................................................6, 8

Seachange Int'l Inc. v. C-Cor Inc., 413 F.3d 1361 (Fed. Cir. 2005).....................................................8

SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107 (Fed. Cir. 1985) ......................................1

V-formation, Inc. v. Benetton Group SpA, 401 F.3d 1307 (Fed. Cir. 2005) ........................................2

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996)..................................................6

Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322 (Fed. Cir. 2006) ..............1, 2

Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc., 112 F.3d 1137 (Fed. Cir. 1997)............1, 6

I.    **INTERNET MEDIA IMPROPERLY SEEKS TO HAVE THE CLAIMS CONSTRUED IN LIGHT OF DEFENDANTS' ACCUSED PRODUCTS**

The law is clear that "claim scope is determined without regard to the accused device". *Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997); *accord Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("the construction of the claim is independent of the device charged with infringement"); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991) ("a claim is construed without regard to the accused device"); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (same).  Nevertheless, Internet Media urges the Court to violate this fundamental rule.

At pages 10-13 of its brief, *before* even addressing its proposed construction of the disputed claim elements, Internet Media launches into a four (4) page discussion of the Defendants' accused products, arguing how each Defendant's website and catalog satisfy one or more of the disputed elements.  For example, with reference to Office Depot, Internet Media argues that "Office Depot also provides customers with 'published compilation[s] of preselected Internet locations,' such as catalogs or other print advertisements"; and that Office Depot's advertisements "include one or more product listings and their corresponding 'multi-digit jump codes,' which Office Depot refers to as 'item numbers'." (IMC Br. at 11).  Internet Media makes similar arguments about the other Defendants' accused products. (*Id.* at 11-13).

Citing *Lava Trading, Inc. v. Sonic Trading Mgnt., LLC*, 445 F.3d 1348 (Fed. Cir. 2006) and *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006), Internet Media attempts to justify these improper arguments by asserting that it is simply providing the Court with a "proper context" for its claim construction. (*Id.* at 10).  Neither case supports Internet Media.  Comparing the Defendants' accused products to the disputed claim elements is a far cry from providing the Court with a proper context for claim construction.

The *Wilson Sporting Goods* Court recognized that "in reviewing claim construction in the *context of infringement*, the legal function of giving meaning to claim terms always takes place in the *context* of a specific accused infringing device or process." 442 F.3d at 1326 (emphasis added).  However, the Court went on to state that "a trial court should certainly not *prejudge* the

ultimate infringement analysis by construing *claims with an aim to include or exclude an accused product* or process." *Id.* (emphasis added). Thus, it is the intrinsic record that provides the "technological and temporal context" for claim construction, not the accused products. *V-formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).

Here, we are in the claim construction phase of the case--not the infringement phase. By agreement of the parties, all other proceedings have been stayed. Certainly, by attempting to read the disputed claim elements on the Defendants' accused products, Internet Media seeks to have this Court inappropriately prejudge the infringement analysis.

## II. INTERNET MEDIA'S CRITICISM OF OFFICE DEPOT'S PROPOSED CONSTRUCTION OF THE "PUBLISHED COMPILATION" ELEMENT IMPROPERLY IGNORES THE INTRINSIC RECORD

### A. The Term "Internet Location" Is Not Just A "Figure Of Speech"

Internet Media argues that Office Depot's construction is incorrect because an "Internet location" is not an actual "location" or "place" on the Internet; but rather, "identified material or subject matter provided to the Internet user upon request." (IMC Br. at 17). Says Internet Media, the specification's description of a "Web site" as a "place" on the Web should not be taken literally, because it is merely a "figure of speech". (*Id.* at note 3). This argument should be rejected since it ignores both the claim language and the written description of the invention.

Internet Media repeatedly disputes the Defendants' constructions by arguing that "[h]ad the patentee intended to limit his invention [in a particular manner] he would have [used specific words in the claim]." (IMC Br. at 23, 31). Applying the same standard, had the patentee intended to claim a compilation of "identified material or subject matter provided to the Internet user upon request", he would have used those words in the claims. The patentee did not. Rather, he specifically claimed a compilation of preselected "Internet *locations.*"

Throughout the specification, the Internet locations included in the published compilation are described as "Web sites" and "Internet addresses" (*see, e.g.*, Abstract, 4:34-35, 4:54-55, 5:51-52, 6:27-287:15-19). These are words of location, not words of subject matter. Consistent with the specification, the well-known on-line computer and Internet dictionary, *Webopedia*, defines a "web site" as "[a] site (location) on the World Wide Web". (Exh. 3 to Office Depot's Opening Brief

2

("ODP Br.")). Nowhere does the patent specification describe the published compilation as comprising "identified material or subject matter provided to the Internet user upon request."

To support its construction, Internet Media seizes upon the disclosure at column 6, lines 1-7 of the patent to the effect that the published compilation can include newsgroups and Usenet discussion groups in addition to websites. (IMC Br. at 17). The patent specification, however, makes clear that for such groups to be included in the published compilation, they must have URL addresses. (Exh. 1 to ODP Br. at 6:1-3). The specification expressly defines a URL as a website's "exact address, or *location* on the Web." (*Id.* at 3:53-54) (emphasis added).

Internet Media's contention that the word "location" is just a figure of speech when applied to a website is further belied by column 6, lines 31-36 of the patent (cited by Internet Media); as well as the requirement of claims 7 and 17 that the compilation of Internet locations be published on-line in the specialized website. At column 6, lines 31-36, the specification likens a website to a newspaper or a magazine. Surely, no one would dispute that in a newspaper or magazine, a specific article begins and ends at specific locations on a printed page. When a newspaper or magazine is published on-line, as required by claims 7 and 17, these locations do not cease to exist. Rather, they simply change their form from places on a printed page, to places on the Internet. Consistent with the patent specification, the location of places on the Internet can be described by the name of the website, the URL, or both.

**B.      The "Published Compilation" Is A Publicly Accessible List**

Internet Media argues that Office Depot's construction is incorrect for the further reason that the published compilation need only be "disseminated" not "accessible"; and that the compilation is a "collection" not a "list". (IMC Br. at 19-23, 26). Here again, Internet Media ignores both the purpose of the invention and the intrinsic record.

As stated in the background portion of the patent, the invention satisfies "a need for a system *which the Web user can use* to access Web sites which contain a substantial amount of original information, graphics, or multi-media. . . in a well thought out and professional manner." (Exh. 1 to ODP Br. at 4:15-20) (emphasis added). Internet Media's own dictionary defines the word "public" to mean "to produce or release for distribution." (IMC Br. at 19). Consistent with this

3

definition and the specification, the published compilation must be "accessible" to the public in order for Web users to *use it*. If the compilation were simply disseminated and hidden somewhere so no one could find it (which is what Internet Media suggests by arguing against the word "accessible"), the alleged need for the invention, and the provision of a published compilation to satisfy that need, would be defeated.

Internet Media argues that Office Depot's construction of the term "compilation" to mean a "list" has no support in the intrinsic record. (IMC Br. at 22-23, 26). The intrinsic record speaks otherwise. For example, the patent's title is "System For Providing Easy Access To The World Wide Web Utilizing A Published *List* Of Preselected Internet Locations Together With Their Unique Multi-Digit Jump Codes" (emphasis added). So too, the Abstract states that the invention includes "a published *list* of Internet or World Wide Web sites" (emphasis added). The Summary and Objects of the Invention as well states that "[t]he system of the present invention utilizes a published *list* of preselected Web sites." (Exh. 1 at 4:54-56) (emphasis added). Statements in the specification such as these, which describe the invention as a whole, rather than only preferred embodiments, support limiting the "published compilation" element to a published *list*. *See, e.g., Honeywell, Int'l, Inc. v. ITT Indus., Inc.,* 2006 WL 1703376, at *5 (Fed. Cir. 2006); *C. R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 867 (Fed. Cir. 2004).

Internet Media's reliance upon *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898 (Fed. Cir. 2004) to broaden the scope of the term "compilation" beyond a "list" is misplaced. (IMC Br. at 23). There, the Federal Circuit held that absent an express disclaimer, a claim term should not be limited to the one embodiment disclosed in the specification simply because only one embodiment is disclosed. *Id.* at 905-06. The *Liebel-Flarsheim* Court was not faced with the question here--Whether a claim is limited by those portions of the specification which describe the invention as a whole? The *Bard* and *Honeywell* Courts have answered in the affirmative.

Finally, Internet Media suggests that Office Depot's construction is unclear, because Internet Media does not know if the construction is drawn to a "preselected list" or a list containing preselected Internet locations. (IMC Br. at 26). Semantics aside, Office Depot's construction is clearly drawn to a list of preselected Internet locations, just as the patent discloses.

**C.    The Internet Locations In The Compilation Must Be "Pre-Existing"**

Internet Media contends that contrary to Office Depot's construction, the preselected Internet locations in the published compilation can be either pre-existing or "dynamically generated", because the Background of the Invention refers to URLs with "executable commands". (IMC Br. at 27).  Internet Media is incorrect for several reasons.

First, Office Depot's construction is supported by the specification and the ordinary meaning of the word "preselected" used in the claims.  The specification discloses, in considerable detail, that the websites included in the "published compilation" are selected in advance based on 4 criteria: originality of the website's information, usefulness of the information, good design and production values, and authorship of the website. (Exh. 1 to ODP Br. at 6:26-55).  Consistent with the specification, Internet Media itself defines the word "select" to mean "chosen from a number or group by fitness or preference". (IMC Br. at 27).  Logically, to "preselect" certain members of a group based on a set of criteria, all the members must pre-exist.

On the other hand, Internet Media's construction is inconsistent with the Summary and Objects of the Invention, which discloses that the "system of the present invention" includes "accessing a special Web site which contains software for receiving any of the published four-digit jump codes and, based upon the **_stored relationship_** of the URLs corresponding to the input jump code, directly accesses the Web site corresponding to the jump code inputted by the user." (Exh. 1 to ODP Br. at 4:57-65) (emphasis added).  Clearly, for there to be a "stored relationship" between jump codes and URLs corresponding to the preselected Internet locations, the Internet locations must be pre-existing, not dynamically generated by the specialized website.  The above disclosure from the summary of the invention, which describes the invention as a whole, supports limiting the compilation to pre-existing Internet locations.  _C.R. Bard_, 388 F.3d at 867.

Internet Media's reliance upon the phrase "executable command" in column 3 of the patent is further misplaced, because the phrase only appears in the background section of the patent.  The portion of the patent describing the alleged invention contains no disclosure that the preselected Internet locations can be dynamically generated.  Further, the presence of an executable command is immaterial, since even a URL including such a command must be pre-existing for the

5

corresponding Internet location to be included in the compilation, and for the URL to have a stored relationship with the corresponding jump code in the specialized website.

Internet Media's argument that the word "pre-existing" does not appear in the written description is also without merit. (IMC Br. at 27). No case cited by Internet Media mandates or suggests that a District Court's claim construction must be limited to the exact words appearing in the patent. Claim constructions of District Courts rarely are so limited, since the very purpose of a claim construction is to *interpret* the *meaning* of *disputed* claim language.

Finally, Internet Media's construction is contrary to the prosecution history. There, the patentee distinguished the claimed invention from the Levergood patent as follows: "Contrary to the Applicant's invention, the system suggested by that portion of the Levergood et al. patent is directed to a web browser which includes a special 'dial' command which seeks the input from the user of a telephone number and then uses that number to construct a special URL." (Exh 2 to ODP Br.: IMC__PLTF 061791). Thus, having distinguished Levergood on the ground that Levergood's URLs are specially constructed after the telephone numbers are inputted (that is, dynamically generated), the patentee is estopped from asserting that his preselected Internet locations (which must have corresponding URLs) can be dynamically generated. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (the prosecution history "is often of critical significance in determining the meaning of the meaning of the claims").

**D.    The Pre-Selected Internet Locations Must Have Unique URL Addresses**

Internet Media's only argument is that the preselected Internet locations need not have unique URLs because screen shots of Office Depot's current website demonstrate that "it is well known in the art" that the same web page can have different URLs. (IMC Br. at 28). Here again, Internet Media's position should be rejected because it is asking this Court to construe the claims in light of the accused product. *Young Dental Mfg.,* 112 F.3d at 1141.

Further, it is black letter law that claims must be construed from the standpoint of a person of ordinary skill in the art as of the effective filing date of the patent application--here, August 30, 1996. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). For this additional

reason, the operation of Office Depot's website in 2006 is irrelevant to the proper construction of the disputed claim elements from the standpoint of one skilled in the art in 1996.

Internet Media's construction is also inconsistent with the disclosure that the "system of the present invention" includes a "specialized Web site" containing a stored database of jump codes and corresponding URLs. (Exh. 1 to ODP Br. at 4:57-65). That is, each jump code is specifically linked to only one pre-existing URL in the specialized website's database, and each URL is linked to only one preselected Internet location in the published compilation. (Exh. 1 to ODP Br. at 6:65-7:10). This 1-to-1 stored relationship between jump codes and URLs is antithetical to Internet Media's position that the preselected Internet locations can have multiple URLs.

**E.    The Preselected Internet Locations In The Compilation Must Be Associated With Diverse Individuals And Entities**

Internet Media argues that this portion of Office Depot's construction is incorrect because claim 5 recites "wherein said preselected locations on the Internet are in the World Wide Web." (IMC Br. at 25). Internet Media is wrong. What claim 5 merely says is that the preselected Internet locations can either be in the World Wide Web or in some other portion of the Internet (*see* column 1, lines 56-64 of the patent, recognizing that the Web is a segment of the Internet). Thus, claim 5 speaks only to where the preselected locations can be found on the Internet; not whether they have to be associated with diverse individuals or entities.

Internet Media further contends that the claims should not be restricted to Internet locations associated with diverse individuals or entities because the Background of the Invention discloses that some web sites may include "links" to other sections within the same website. (IMC Br. at 25). This argument is also without merit because this section of the patent deals with the state of the art, not the invention. Nowhere does the description of the invention disclose that the published compilation can consist of a single entity's Internet locations or sublinks within a single entity's website. Further, Internet Media's argument is contrary to a fundamental purpose of the invention--i.e., to overcome the frustration associated with finding useful websites, since many consist of "lists of links to other Web sites, which often do nothing more than link the visitor to a Web site to other useless Web link pages." (Exh. 1 to ODP Br. at 3:66-4:4).

7

The specification discloses that the invention satisfies "need for a directory of *the well-thought out and useful sites*" (Exh. 1 to ODP Br. at 4:8-20); and "provides users with the fastest possible way of reaching *the reviewed (and best) Web sites.*" (*Id.* at 7:15-19) (emphasis added). The specification further discloses that the patentee's book *What's on the Web* includes *"over 1,800"* websites selected in advance based on the 4 criteria discussed above. (*Id.* at 6:26-55). The patent spends 4 paragraphs discussing the details of this selection criteria. (*Id.*). These disclosures are antithetical to the notion that the claims cover a compilation of Internet locations associated with only a single person or entity. Rather, it is clear from the specification that the provision of a published compilation comprising a multiplicity of websites associated with diverse individuals or entities, carefully chosen in advance based on specific criteria, is fundamental to the invention itself. Accordingly, the claims should be so limited. *C. R. Bard,* 388 F.3d at 867.

Moreover, as discussed in our opening brief, because the patentee distinguished his invention from the Levergood patent (which merely provided users with "sub-links within a merchant's own website" through a "single merchant server"), and the single company advertisement of Edelstein (which did not publish the electronic addresses of competitors), the "published compilation" must be limited to Internet locations associated with diverse individuals or entities. The patentee's statements to the Examiner were clear and unambiguous, and were made to distinguish the claimed invention from the disclosures of Levergood and Edelstein.

Consequently, these statements constitute disclaimers of claim scope, whether or not the Examiner relied on them in issuing the patent. *Seachange Int'l Inc. v. C-Cor Inc.,* 413 F.3d 1361, 1374 (Fed. Cir. 2005). As a result, the "published compilation" element cannot be construed so broadly as to cover compilations consisting of a single company's own products or resources. *See, e.g., Ekchian v. The Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed. Cir. 1997).

## III.    CONCLUSION

For the above reasons, we respectfully request that Office Depot's construction of the "published compilation" element be adopted as the construction of this Court.

8

Dated:    July 17, 2006
          Wilmington, Delaware

Respectfully submitted,

By: _____

TITANIA R. MACK (#4120)
GREENBERG TRAURIG, LLP
The Nemours Bldg, 12th Floor
1007 North Orange Street
Wilmington, DE  19801
(302) 661-7000

and

MICHAEL A. NICODEMA (*PRO HAC VICE*)
GASTON KROUB (*PRO HAC VICE*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
TEL:  (212) 801-2126

*Attorneys for Defendant Office Depot, Inc.*