IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNET MEDIA CORPORATION,      )
                                    )
                  Plaintiff,     )
                                    )
v.                                     )   Civil Action No. 05-633-KAJ
                                    )
DELL, INC.,                       )
OFFICE DEPOT, INC.,         )
J.C. PENNEY COMPANY, INC.,  )
WILLIAMS-SONOMA, INC.,    )
J. CREW GROUP, INC.        )
                                    )
                Defendants.

## PLAINTIFF INTERNET MEDIA CORPORATION'S
## REPLY CLAIM CONSTRUCTION BRIEF

Thomas P. Preston, Esquire
I.D. No. 2548
**BLANK ROME LLP**
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: 302-425-6400

*Attorneys for Plaintiff*
*Internet Media Corporation*

OF COUNSEL:
Ronald J. Schutz
Diane L. Simerson
Michael A. Collyard
Andrea L. Gothing
Busola A. Akinwale
**ROBINS KAPLAN MILLER & CIRESI LLP**
2800 LaSalle Plaza
Minneapolis, MN 55402
Phone: 612-349-8500

Dated: July 17, 2006

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   SUMMARY OF THE ARGUMENT ....................................................................... 1

III.  ARGUMENT ............................................................................................................. 1

      A.    Internet Location ........................................................................................... 1

            1.    "Internet Locations" are Not "URLs" ............................................... 2

            2.    "Internet Locations" are Not Limited to "Preexisting Web Sites or Pre-
                  existing Internet Sites Having Unique URL Addresses" ........................... 5

      B.    A Published Compilation of Preselected Internet Locations ................................. 7

            1.    "A Published Compilation of Preselected Internet Locations" is Not
                  Limited to a "Publicly Accessible List" ........................................... 7

            2.    Applicant Did Not Disclaim a "Single Merchant Server" ...................... 9

                  a.    Levergood ................................................................................. 10

                  b.    Edelstein ................................................................................. 13

      C.    "A Multi-Digit Jump Code" is Not Limited to a "Number" ................................ 15

      D.    A Predetermined Published Internet Location ....................................................... 18

IV.   CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

*ACTV, Inc. v. Walt Disney Co.,*
   346 F.3d 1082(Fed. Cir. 2003) ................................................................. 20

*CollegeNet, Inc. v. ApplyYourself, Inc.,*
   418 F.3d 1225 (Fed. Cir. 2005) ................................................................. 7

*Gemstar-TV Guide Int'l, Inc. v. ITC,*
   383 F.3d 1352 (Fed. Cir. 2004) ........................................................... 12, 13

*Honeywell Int'l., Inc. v. ITT Indust., Inc.,*
   No. 05-1407, 2006 WL 1703376 (Fed. Cir. June 22, 2006) ............................ 8

*N. Telecom Ltd. v. Samsung Elec. Co.,*
   215 F.3d 1281 (Fed. Cir. 2000) ................................................... 5, 9, 10, 12

*Nystrom v. Trex Co., Inc.,*
   374 F.3d 1105 (Fed. Cir. 2003) ............................................................. 4, 15

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2004) ............................................................... 16

*Rambus Inc. v. Infineon Techs. AG,*
   318 F.3d 1081 (Fed. Cir. 2003) ............................................................... 18

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
   810 F.2d 1113 (Fed. Cir. 1987) ................................................................. 3

*York Prods., Inc. v. Cent. Tractory Farm & Family Ctr.,*
   99 F.3d 1568 (Fed. Cir. 1996) ................................................................. 10

000351.00601/40163500v.1

## I.    INTRODUCTION

Internet Media Corporation ("Internet Media") submits this brief in reply to defendants' Claim Construction Briefs. Despite representing that they would file one consolidated brief, defendants submitted two, with the Dell, Inc, J.C. Penney, Co., J. Crew Group, Inc. and William-Sonoma, Inc. ("the Dell defendants") submitting one brief and Office Depot, Inc. submitting another. Rather than submitting two responses, Internet Media has consolidated its remarks into this Reply Brief. Internet Media does not intend to re-argue every issue set forth in its Opening Brief, nor does it intend to point out every inaccuracy in defendants' briefs. Yet on a number of points, defendants' positions are so contrary to the evidence and the law that Internet Media is required to address them here.

## II.    SUMMARY OF THE ARGUMENT

As set forth in plaintiff's Opening Brief, there are five disputed phrases from the '835 patent under review. D.I. 144 at 1-3. Defendants' proffered constructions of these phrases are based on a flawed reading of the specification and the prosecution history. In fact, when not simply proffering selective quotations from the specification or file wrapper, defendants ignore evidence clearly belying their positions or confuse such evidence for a clear disavowal of claim scope. Internet Media's constructions, in contrast, are derived from the plain language of the claims, informed as needed by the written description and a reasoned analysis of the prosecution history. Accordingly, Internet Media's constructions should be adopted.

## III.    ARGUMENT

### A.    Internet Location

The defendants offer competing definitions for the term "Internet location," with the Dell defendants arguing that an "Internet location" is a "URL" (D.I. 147 at 8) and Office Depot arguing that an "Internet location" is a "pre-existing Web site or pre-existing Internet site having unique URL addresses" (D.I. 146 at 7). Both constructions are improper. As discussed in plaintiff's Opening Brief, the proper construction of **"Internet location"** is **"identified material or subject**

matter (content) that is provided via the Internet by one or more computers." D.I. 144 at 17.

### 1.    "Internet Locations" are Not "URLs"

The Dell defendants' argument that the "Internet location" is a "URL" breaks down as follows. According to Dell, as used in the specification, the term "location" either means "the actual physical location" of an electronic file or alternatively, the "URL" address of the "physical location, *i.e.*, place, where the electronic file resides." D.I. 147 at 9. The Dell defendants further reason that because one cannot compile a physical location into a book, the compilation must necessarily be a compilation of "URLs." *Id.* While the defendants correctly note that the term "location" is used broadly in the written description, defendants' construction is infected by two fundamental errors. First, they misunderstand the operation of the Internet and the Web. Second, they ignore and/or misconstrue the intrinsic record.

Defendants' first fundamental error is their characterization of an "Internet location" as a physical place. As discussed in detail in Internet Media's Opening Brief, the "Internet" and the "Web" are not physical "places." D.I. 144 at 4-6, 17. When one speaks of "visiting" an Internet location or accessing a Web site, the Internet user is not traveling to "a physical location, *i.e.*, place, where an electronic file resides," as defendants argue. D.I. 147 at 9. Rather, the person is receiving information—such as text, multimedia, scripts or the like—from one or more files or programs located on one or more server computers. In other words, an "Internet location" or "Web site" is the subject matter or material provided via the Internet to an Internet user's computer by one or more computers. And while defendants find this definition "unintelligible" (D.I. 147 at 12), it is a commonly held understanding by those of skill in the art. Indeed, the inventor of the Web himself defines "World Wide Web" as the "set of all *information* accessible using computers and networking." Ex. A,[1] Tim Berners-Lee, *Weaving the Web* 239 (2000) (emphasis added); *see also* D.I. 144, Ex. 2 (Microsoft's Computer Dictionary defining "Web site" as a "group or related

---

[1] All Exhibits cited in Internet Media's Reply Claim Construction Brief are attached to the Declaration of Thomas P. Preston filed herewith.

*HTML documents and associated files, scripts, and databases* that is *served* by an HTTP server on

the World Wide Web'). This understanding is consistent with the usage of the claim term "Internet

location" and "Web site" in the present invention. *See* D.I. 144 at 17-18.

Yet even properly informed as to the meaning of "Internet location," the Dell defendants

undoubtedly would still argue that an "Internet location" is limited to a "URL." This is due to the

defendants' second fundamental error; that is, defendants improperly read the intrinsic record.

Specifically, defendants' construction of "Internet location" rests on the mistaken belief that a

"compilation of preselected Internet locations," as recited in the claims, means a compilation of

actual Internet locations, rather than information corresponding to Internet locations. According to

defendants, because you cannot compile an actual "Internet location," "Internet location" must

necessarily be a "URL." Yet in proffering this construction, defendants turn a blind eye to the

ordinary meaning of "compilation" as well as its broad description in the specification. *See*

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (explaining that

"claims are not interpreted in a vacuum, but are part of and are read in light of the specification").

First and foremost, the Court need look no further than the claims to determine that

"Internet location" is not limited to "URL." Specifically, the "converting" and "automatically

accessing" elements of claims 1 and 11 include the language "URL address" corresponding to the

desired preselected Internet location. Indeed, even defendant Office Depot recognizes that "since

these elements recite that each preselected Internet location has a corresponding URL, a

preselected Internet location has to mean something more than URL itself." D.I. 146 at 10.

Moreover, as discussed in Internet Media's Opening Brief, a "compilation" is something,

such as information or material, that is compiled or collected. D.I. 144 at 19. In the context of the

specification, the claimed "published compilation" is described broadly as a "list," "directory,"

"printed publication," or "book." *Id.*, Ex. 1, Abstract; col. 4, ll. 7-12; col. 5, ll. 51-58. It is

axiomatic that a "book," "directory," "compilation" or "printed publication" of Internet locations

or Web sites is not comprised of actual "Internet locations" any more than say, a compilation or

directory of restaurants is comprised of actual restaurants. Rather, it is clear that from the specification that the "compilation of preselected Internet locations" is a "list," "book," "directory," "printed publication" or other type of collection that includes information, such as descriptions or reviews, corresponding to preselected Internet locations. *See id.* at 20. In view of the foregoing, the Dell defendants' position that the published compilation must be of "URLs," rather than information corresponding to "Internet locations," finds no support in the specification.

Nor does the prosecution history support defendants' position. Rather, insofar as defendants' analysis of the prosecution history can be understood, it is replete with distortions and/or unsupported assumptions. Citing a passage where the applicant was characterizing U.S. Pat. No. 5,764,906 to Edelstein *et al.* ("Edelstein") (Ex. D), defendants erroneously argue that applicant was characterizing its own invention. D.I. 147 at 10 ("IMC thus confirmed that what is being listed in the 'compilation' is electronic addresses, i.e. URLs."). Yet no where in the cited passage can such a statement be found. D.I. 147 at 10; *see also* Ex. L at 061834. Rather, the true focus of the passage was to dispute the examiner's position that there was anything in Edelstein that would provide a motivation to combine Edelstein with prior art indexes. *See Nystrom v. Trex Co., Inc.*, 374 F.3d 1105, 1113 (Fed. Cir. 2003) (finding that patentee's statement characterizing prior art to dispute examiner's obviousness rejection was not a disclaimer of claim scope). Thus, contrary to defendants' position, the applicant was not distinguishing Edelstein, nor defining "Internet location" as a "URL."

Defendants also rely on an interview summary regarding U.S. Pat. No. 5,804,803 to Cragun ("Cragun") (Ex. E). D.I. 147 at 11. Cragun discloses a system for scanning bar codes on products and converting those codes to URL addresses. During the interview, the examiner stated that because Cragun disclosed associating numerical codes (UPC's) with corresponding URLs, in view of prior art Internet directories, it would have been obvious to print out Cragun's database to generate a published compilation of URLs and their corresponding UPC codes. Ex. L at 061832. Reading this passage, defendants jump to the conclusion that because the applicant never objected

to the examiner's characterization of Cragun as including URLs and corresponding codes, the applicant "confirmed" that the published compilation was a list of URLs. D.I. 147 at 11-12. This conclusion is unfounded. As the Federal Circuit has made clear, simply characterizing the prior art is not grounds for a finding of disclaimer. *See N. Telecom Ltd. v. Samsung Elec. Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000)(noting that "descriptions of the asserted references" in the prosecution history were not a disclaimer of claim scope). Moreover, defendants fail to recognize that the applicant could not distinguish a printed compilation of codes and corresponding URLs because such a compilation falls within the *broad* scope of the claim. *See* D.I. 144 at 19 ("[A] published compilation of preselected Internet locations" is a "disseminated collection of *information*, such as *descriptions*, *text* or graphics, at least some of *which correspond to preselected Internet locations*.")(emphasis added). This is why, as defendants note, the applicant distinguished his invention over the examiner's combination on numerous other grounds. D.I. 147 at 11-12.

### 2. "Internet Locations" are Not Limited to "Preexisting Web Sites or Pre-existing Internet Sites Having Unique URL Addresses"

While Office Depot recognizes that the claimed "Internet location" is not limited to a "URL," Office Depot nonetheless imports unstated and unsupported limitations into the claim by defining "Internet locations" as "a pre-existing [i.e., not dynamically constructed] Web sites or pre-existing Internet sites having unique URL addresses." D.I. 146 at 7. First and foremost, Office Depot's construction of "Internet location" is based upon an overly simplified view of the Internet and the Web. Second, the claims do not require that the "Internet location" be "pre-existing" or that it have a "unique URL addresses." Nor do the terms "pre-existing" and "unique" appear in the written description. With the specification against it, Office Depot is forced to redefine "preselected" as "pre-existing" and "unique" as "exact." This is not proper.

Relying on the on-line dictionary *Webopedia*, Office Depot defines a "Web site" as a "site (location) on the World Wide Web." D.I. 146 at 7. This definition is circular; that is, it defines a

"site" as a "location," and accordingly is not instructive. Moreover, as discussed above and in detail in plaintiff's Opening Brief, the Internet and the Web are not physical "places." Thus, when one speaks of "sites" and "locations" on the Web, they are actually speaking of information or content that is served to a client computer via one or more server computers. This commonly held understanding in the art is consistent with the written description, which provides, among other things, that the invention can be used to access any type of "*subject matter*" that has a URL. D.I. 144, Ex. 1, col. 6, ll. 1-4 (emphasis added).

In addition, Office Depot rewrites the claim to define "preselected" as "pre-existing." Office Depot does this in an effort to exclude "dynamically constructed" Internet locations from the scope of the claim. Yet Office Depot's construction is flawed in two respects. First and foremost, the ordinary meaning of "preselected" does not mean "pre-existing." *Compare* D.I. 144, Ex. 33 at 918 (defining "preexist" as "to exist earlier or before") *with, id.* at 1058 (defining "select" as "chosen from a number or group by fitness or preference"). Second, a "preselected" Internet location does not exclude a "dynamically constructed" location. Illustrating this point perfectly is defendant J.C. Penney's Online Shopping page, which is regularly "preselected" to be listed in print advertisements. *See, e.g.* Ex. B ("Online Shopping visit us at JCPenney.com"). When a Web user enters "jcpenney.com" into a browser, the user is presented with dynamically constructed page having the address jcpenney.com/jcp/default.aspx. *See* Ex. O; *see also* Ex. C, Hart *et al.*, ASP.NET 2.0 74 (2006)(stating that dyanmic ASP.NET 2.0 pages have the file extension ".aspx"). This clearly belies Office Depot's claim that a "preselected" Web site cannot be dynamically generated. What is more, these types of Internet locations are not new. At the time of the invention, they were all "the rage." D.I. 144, Ex. 12 at 9.

Office Depot also argues that each "Internet location" must have a "unique URL address" because the specification provides that "[e]very Web site has an exact address." D.I. 146 at 11. Thus, Office Depot defines "exact" as "unique." This is not the proper definition of "exact." *Compare* D.I. 144, Ex. 33 at 403 (defining "exact" as "exhibiting or marked by strict, particular

and complete accordance with fact or a standard") *with*, *id.* at 1292 (defining "unique" as "being the only one"). As used in the written description, "exact" simply means that the address must be typed into a browser in a particular manner in order to access a desired location. D.I. 144, Ex. 1, col. 3, ll. 55-60. It does not follow that the claimed "Internet location" must have only one address. Indeed, it is well known in the art that multiple addresses can map to the same Internet location. *Compare, e.g.*, "www.ibm.com," *with*, "ibm.com."

**B.      A Published Compilation of Preselected Internet Locations**

Despite their competing constructions of "Internet location," all of the defendants argue that the claimed "published compilation of preselected Internet locations" is limited to a "publicly accessible list" of Internet locations.   However, such a construction is not only contrary to the language of the claims, it ignores the written description and controlling case law. As discussed in plaintiff's Opening Brief, the proper construction of a "**published compilation preselected Internet locations**" is "**a disseminated collection of information, such as descriptions, text or graphics, at least some of which correspond to preselected Internet locations**."

**1.      "A Published Compilation of Preselected Internet Locations" is Not Limited to a "Publicly Accessible List"**

Defendants first attempt to rewrite the claim language by limiting the "published compilation" to a "list" of Internet locations and nothing more. This construction is flawed in many respects. First, defendants selectively cite statements in the written description to limit the claimed compilation to "list." D.I. 147 at 8, n. 6. As discussed above, however, the present invention not only describes the "published compilation" as a "list," but also as a "directory," "printed publication," or "book." D.I. 144, Ex. 1, col. 4, ll. 7-12; col. 5, ll. 51-58; *see also CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) (noting that a patentee may use a term in more expansive manner to expand the scope of the term in the context of the patent claims). In short, there is nothing the claims or the specification that limits the

"published compilation" to a "list."[2]

Second, because defendants read compilation so narrowly, they fail to recognize that it is "information"—such as titles, text, reviews, descriptions—that corresponds to the preselected Internet locations that is being listed, collected, or compiled in the compilation. For example, Office Depot states that "the plain language of the claims states that the 'Internet locations' themselves are being compiled; not subject matter or information corresponding to Internet locations." D.I. 146 at 13. Yet as discussed above, it is axiomatic that a "compilation," "list," "book," or "directory" of Internet locations is not comprised of actual "Internet locations" any more than say, a compilation or directory of restaurants is comprised of actual restaurants. In the present case, it is clear the specification the disclosed embodiments that the "compilation of preselected Internet locations" is a "list," "book," "directory," "printed publication," or other type of collection that includes information, such as descriptions or reviews, corresponding to preselected Internet location. D.I. 144 at 19-20.

Third, defendants erroneously read the language of the claims to support their position that the "list" is limited to "preselected Internet locations" and nothing more. For example, Office Depot claims that there is an "affirmative requirement of the claims that the compilation *consist of* 'Internet locations.'" D.I. 146 at 13 (emphasis added). But the claim does not use the closed-ended language "consist of" or "consisting of." It simply recites a "compilation of." More importantly, defendants ignore dependant claim 10, which provides that the "published compilation *comprises* a review of each of said preselected Internet." D.I. 144, Ex. 1, col. 8, ll. 65-67. This open-ended language clearly demonstrates that the claimed "published compilation" does not simply consist of "preselected Internet location."

---

[2] Nor does defendants' reliance on *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, No. 05-1407, 2006 WL 1703376 (Fed. Cir. June 22, 2006) support their position. In that case, the court limited "fuel injection system component" to a "fuel filter" based, in part, on the conclusion that the fuel filter was the only component that the written description disclosed. D.I. 147, Ex. 9 at *17. Such is not the case here.

This point is further underscored by the commercial embodiment *What's on the Web*, which is referred to the written description. D.I. 144, Ex. 1, col. 5, ll. 55-57. In addition to reviews of numerous Web sites, *What's on the Web* includes an entire chapter discussing the origin, operation and benefits of the Web. *Id.*, Ex. 39 at "Contents." In view of the foregoing, the "compilation of preselected Internet locations" is "a collection of information, such as descriptions, text or graphics, at least some of which correspond to preselected Internet locations."

In addition to replacing the claimed "compilation" with the term "list," defendants also rewrite the claim to limit the "published compilation" to a "publicly accessible compilation." D.I. 147 at 7. But, as discussed in detail in plaintiff's Opening Brief, "published" does not mean "publicly accessible," but rather "disseminated" or "released." D.I. 144 at 19. This understanding is consistent with the written description, which discloses "disseminating" the compilation so that an Internet user can determine the jump codes associated with the preselected Internet locations. D.I. 144, Ex. 1, col. 5, ll. 50-55. Neither the claims nor the written description require that the compilation be "publicly accessible."

Defendants further argue that because the patent discloses publishing the compilation of preselected Internet locations "on-line," the claimed compilation must be "publicly accessible." D.I. 147 at 7. While the patent does disclose that, in addition to publishing descriptions or reviews of various sites in a printed publication, the descriptions and reviews can also be published online at the predetermined Internet location (D.I. 144, Ex. 1, col. 6, ll. 11-15), it does not follow that such an "on-line" collection is "publicly accessible." In other words, simply because something is published "on-line" does not mean that it is "publicly accessible." Defendants' position is nothing more than an unsupported conclusion. *See N. Telecom Ltd.*, 215 F.3d at 1295 ("Vagueness and inference cannot overcome an ordinary meaning of a claim term . . . .").

### 2.    Applicant Did Not Disclaim a "Single Merchant Server"

In an attempt to avoid infringement, defendants seek to exclude systems that allow navigation to Internet locations or Web pages associated with a single entity or single merchant.

Defendants do so by rewriting the claim to require that published compilation include Internet locations "associated with more than one person or entity" (D.I. 147 at 14) or Internet locations "associated with diverse individuals or entities" (D.I. 146 at 12). Because there is not support in the claim language or the written description for such a construction (*see* D.I. 144 at 24-25, 28), defendants are forced to rely on the prosecution history. That reliance, however, is misplaced. Even aside from defendants' misinterpretations made by selective quotations and cut-and-paste rewriting, defendants fail to recognize that absent explicit statement by the applicant disavowing claim scope, the plain and ordinary meaning of the claim term controls. *See N. Telecom Ltd.*, 215 F.3d at 1295.

### a.     Levergood

Defendants attempt to exclude navigation within a single merchant server by first citing prosecution statements regarding U.S. Pat. No. 5,708,780 to Levergood et al. ("Levergood") (Ex. F). Defendants' analysis of the applicant's statement regarding Levergood is flawed. First and foremost, applicant's statement regarding Levergood's single merchant server were not directed to the claimed "published compilation," but rather the "means for automatically accessing." The statements, therefore, cannot be a disclaimer of scope of the claimed "a published compilation." *See York Prods., Inc. v. Cent. Tractory Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996) ("Unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage.").

More importantly, even assuming the statement was related to "a published compilation of preselected Internet locations," a reasoned analysis of applicant's statements regarding Levergood reveals that the applicant did not disclaim navigation within a single merchant server, rather the invention can be used to access any and all Internet locations. *See N. Telecom, Ltd.*, 215 F.3d at 1295 (emphasizing a "reasoned analysis" approach when reviewing the prosecution history).

Levergood is directed, in part, to providing access to network servers through the use of conventional telephone numbers. During prosecution of the '835 patent, the examiner rejected

claims under 35 U.S.C. 103(a) as being unpatentable over Levergood. Ex. G at 061689. According to the examiner, but for a "published compilation," Levergood included the elements of the '835 patent application. *Id.* at 061689-90. The examiner further stated that it would have been obvious to one of ordinary skill in the art to publish a compilation of predetermined Internet locations because such a publication would enhance the commercial advertisements for a user of Levergood's system. *Id.* at 061690.

In response to the examiner's rejections, the applicant distinguished Levergood on a number of different bases. In doing so, the applicant indicated that in some respects, the present invention was more narrow than Levergood, and other respects, the present invention was broader or more flexible than Levergood. For example, the applicant argued that the present invention required a "published compilation of preselected Internet locations," and Levergood did not disclose, let alone teach, applicant's "published compilation of preselected Internet locations." Ex. H at 061792. In addition, the applicant also explained that Levergood failed to disclose applicant's "means for automatically accessing." *Id.* To that end, the applicant argued that its invention provided Internet users "with the ability to reach any and all Internet locations connected to the Internet, as opposed to the single merchant server utilized by the Levergood at al. system." *Id.* at 061792-93. In this respect, applicant's invention was more flexible, or broader, than Levergood.

Notwithstanding the foregoing, defendants seek to turn applicant's statements regarding Levergood's "single merchant server" to a disclaimer of scope of the claimed "published compilation of preselected Internet locations." Employing cut-and-paste rewriting of the prosecution history, Office Depot alleges that "the patentee distinguished the claimed invention from the Levergood prior art on the grounds that Levergood's system merely provided the user with 'sub-links within a merchant's own website which is operated on a single merchant server.'" D.I. 146 at 12. The applicant, however, said no such thing. What the applicant actually said was:

> As is made clear for example at column 10, lines 10-12 and 24-26, the system described in the Levergood et al. patent is directed to utilizing conventional telephone numbers or

other identifiers which are in reality merely sub-links within a merchant's own website which is operated on the 'single merchant server.'

Ex. H at 061791. Thus, in this passage, the applicant was simply outlining how Levergood operates; it was not a disclaimer of a "single merchant server" as Office Depot alleges. *See N. Telecom Ltd.*, 215 F.3d at 1294 (noting that "descriptions of the asserted references" in the prosecution history were not a disclaimer of claim scope).

More importantly, Office Depot ignores a critical statement on the very next page. As discussed above, in response to the examiner's discussion of "means for automatically accessing," the applicant stated: "Applicant's invention provides Internet users with the ability *to reach any and all Internet locations* on any of the servers connected to the Internet, as opposed to the single merchant server utilized by the Levergood et al. system." Ex. H at 061792-93 (emphasis added). In other words, regarding the "means for automatically accessing," the present invention can do what Levergood discloses *and more*.

While Office Depot ignores this passage, the Dell defendants mistakenly cite this passage in support of their position that the applicant disclaimed a "single merchant server." D.I. 147 at 14 ("In distinguishing over this art, IMC stated '[a]pplicant's invention provides Internet users with the ability to reach any and all Internet locations on any of the servers connected to the Internet, as opposed to the single merchant server utilized in the Levergood et al. system.'"). In doing so, the Dell defendants fail to recognize that, absent an express disclaimer, merely providing an example of the difference between the invention and the prior art is not a clear and unambiguous disavowal of claim scope. *See Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1375 (Fed. Cir. 2004) ("Gemstar's statements in the prosecution history do not indicate a disavowal or disclaimer of claim scope, but merely provide an example to illustrate the differences between the invention and the prior art.") (internal citation omitted). Here, the applicant described the claimed "means for automatically accessing" as being broader than that disclosed by Levergood. Unlike Levergood, which according to the applicant was limited to a "single merchant server," the present invention

has the ability to reach "any and all locations." Ex. H at 061792. The applicant was not arguing, as the Dell defendants suggest, that the invention *must* be used to access locations other than those provided by a single merchant server. *See Gemstar-TV Guide Int'l*, 383 F.3d at 1375 (finding no disclaimer or disavowal where applicant "stated only that the [prior art] reference was incapable of performing certain type of search, not that the scope of the claimed invention was limited to that particular type of search"). Accordingly, the required words of manifest exclusion or restriction representing a clear disavowal of claim scope are not present in these passages from the prosecution history.

### b.    Edelstein

Perhaps the most glaring instance of defendants' selective quotation and re-drafting of the prosecution history occurs in their discussion of Edelstein (Ex. D). The Dell defendants allege that the applicant disclaimed navigation within a single merchant server because the applicant argued that Edelstein "would not motivate the issuing of a published compilation that 'would almost certainly include the electronic addresses of their competitors' resources' as opposed to just the electronic addresses of one company." D.I. 147 at 14. Similarly, Office Depot alleges that the invention excludes a single merchant server because "the patentee distinguished the claimed invention from the Edelstein patent on the ground that Edelstein's compilation took the form 'of an advertisement for a single company with the electronic address of that company's resources,'" and was not a compilation that included "the electronic addresses of their competitors' resources." D.I. 146 at 12. Yet this is an incorrect reading of Edelstein and the prosecution history. A proper and reasoned analysis of Edelstein and the prosecution history reveals that the applicant did not disclaim navigation within a single merchant server.

Edelstein is directed toward providing access to Internet resources through the use of easily remembered mnemonic aliases, such as "US Senate" or "IBM." Ex. L at 061833; *see also* Ex. D at 061543, col. 4, ll. 63-64. To access a network resource, a user, who either knows or guesses an alias, inputs the alias into software on a client computer. *Id.* at 061535, Abstract.

13

According to Edelstein, these mnemonic aliases provide an advantage over prior art indexes or difficult to remember URL addresses:

> Indexes assist users in locating [network] resources, but as information grows exponentially, indexes are larger and thus more difficult to traverse and may not be able to remain current. Information providers may chose to advertise electronic addresses of their resources (such as URLs on the Internet) by other means (newspapers, radio, television and other media, for example); electronic addresses advertised by these means are often cumbersome and difficult to remember . . . .

*Id*. at 061543, col. 3, ll. 22-30.

During prosecution of the patent-in-suit, the examiner rejected certain claims as obvious in view of Edelstein. Ex. K at 061823. According to the examiner, but for publishing a list of aliases, Edelstein included the claimed elements of the '835 patent application. *Id*. at 061824. The examiner also stated that because Edelstein disclosed prior art compilations, such as Yellow Pages, it would have been obvious to enhance the Edelstein system by publishing a list of aliases in a compilation. *Id*. at 061824-25. The examiner claimed that one would be motivated to combine Edelstein with the prior art indexes because it would provide advertising in addition to that of traditional media, such as newspapers or radio. *Id*. at 016825.

In response to the examiner's rejections, the applicant disputed, among other things, the examiner's position that it would have been obvious to combine Edelstein with a published compilation, such as an index or Yellow pages. According to the applicant, the entire point of the mnemonic aliases was to avoid the disadvantages associated with such indexes. Ex. L at 061834. Edelstein, therefore, taught away from the use of published compilations.

In addition, the applicant argued:

> [W]hile *Edelstein et al* proposes that information providers advertise the electronic addresses of *their* resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources. Instead, the advertisement taught be *Edelstein et al* would take the form of an advertisement for a single company with the electronic address of that company's resource . . . .

*Id*. (italics in original). In other words, Edelstein's proposed advertisement was not concerned with advertising multiple addresses or resources, let alone addresses associated with other entities.

14

Therefore, according to the applicant, there would be no reason to combine Edelstein's proposed advertisement with the prior art indexes. *Id.* at 061834 ("Therefore, the Applicant respectfully submits that Edelstein et al. teaches away from the present invention for that reason as well."). Put another way, an individual company would not be motivated to publish a Yellow Pages that includes the alias of its own resources as well as the aliases of its competitor's resources.

In view of the foregoing and contrary to defendants' position, the applicant's statement that Edelstein's advertisement would take "the form of an advertisement for a single company with the electronic address of that company's resource" was not a disavowal or disclaimer of a compilation or directory of multiple Internet locations associated with a single merchant. It was an argument against the examiner's obviousness rejection. *See Nystrom,* 374 F.3d at 1113 (patentee's statement that the prior art was not concerned with materials made from wood was not a disavowal of materials other than wood, but an argument against the examiner's obviousness rejection"). Accordingly, defendants' construction is based on an erroneous reading of the prosecution history and should therefore be rejected.

### C.    "A Multi-Digit Jump Code" is Not Limited to a "Number"

Defendants claim that they rely on the claim language, the specification and explicit statements in the prosecution history to construe the term "multi-digit jump code." D.I. 147 at 15. Nothing could be further from the truth. Not only do defendants ignore the plain language of the claims, they mischaracterize the specification, and again replace reasoned analysis of the prosecution history with cut-and-paste rewriting and mere speculation. The proper construction for "**multi-digit jump code**" is a "**unique predetermined code consisting of more than one digit and used to access an Internet location.**" D.I. 144 at 29-32.

As discussed in detail in Internet Media's Opening Brief (*id.* at 30-31), the Court need look no further than the claims to determine that "multi-digit jump code" is not limited to simply numbers. Specifically, claims 1 and 9 recite "a unique predetermined *multi-digit jump code*," and dependant claims 9 and 19 recite "the system of claim 1, wherein said *multi-digit jump code* is a

*four digit number.*" *Id.*, Ex. 1, col. 8, claims 1 and 9 (emphasis added). Because "number" does not appear in the independent claim, under the doctrine of claim differentiation, the term "jump code" is presumed to have a different and broader meaning than "number." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2004).

Defendants ignore the plain language of the claims, avoid any mention of the doctrine of claim differentiation, and instead jump straight to the prosecution history and specification to support their narrow construction. Regarding the specification, defendants first argue that in order for there to be antecedent basis (support) in the specification for the term "number" as recited in claims 9 and 19, the term "multi-digit jump code" must be a "number." D.I. 147 at 17. Yet the plain meaning of the term "code," which appears throughout the specification, provides the necessary support for the claim term "number" because the ordinary meaning of "code" is "a system of symbols (as letters *or numbers*) used to represent assigned and often secret meanings." D.I. 144, Ex. 33 at 221 (emphasis added). Defendants' reasoning is therefore flawed.

Defendants further claim "that all of the references in the specification are consistent with the requirement that the 'multi-digit jump code' be a 'number.'" D.I. 147 at 17. This position, however, is contradicted by defendants' prior statement that "the specification *never* calls the 'four digit jump code' a quote-unquote 'number.'" *Id.* (emphasis in original). There is simply nothing in the specification that requires that the "multi-digit jump code" be a "number." Recognizing this fact, defendants resort to the commercial embodiment to import "number" into the claim language. *Id.* (citing *What's On the Web*). But if it is impermissible to read limitations into the claims from the specification, then it is certainly impermissible to read limitations into the claims from the commercial embodiment.

With the specification against them, defendants turn to the prosecution history. For instance, defendants claim that "when forced to distinguish over the prior art during prosecution, IMC explicitly defined its 'jump codes' as 'numbers' and actually amended its claims to recite 'multi-digit jump code' to reflect this distinction." D.I. 147 at 15. In support of this position,

defendants selectively cite applicant's statement that "[a]pplicant's jump code is a uniquely predetermined number which is published together with the published compilation of preselected [sic] locations on the Internet." D.I. 147 at 16. Yet a proper analysis of the entire passage reveals that the purpose of the applicant's statement was not to define the claimed jump code as a "number," but rather to distinguish the claimed jump code as "unique" and "published."

During prosecution, the examiner rejected the applicant's invention based in part on Levergood, which, according to the examiner, taught that "the user may obtain the unique predetermined jump code of locations on the Internet (telephone number or company name or product name, col. 9 lines 33-40) through advertising[.]" Ex. G at 061690. The applicant responded as follows:

> However, contrary to the teachings of the Levergood et al. patent, Applicant's jump code is an [sic] *uniquely* predetermined published number *which is published together with the published compilation* of preselected locations on the Internet. In the Levergood et al. patent, the disclosed telephone numbers are *not uniquely predetermined nor are they published together with the published compilation* of the preselected locations on the Internet."

Ex. H at 061792 (emphasis added). By omitting the latter sentence from their brief, defendants suggest that the purpose of the applicant's argument was to define his "jump code" as a "number." But the true focus of the quoted passage was to persuade the examiner that Levergood's telephone numbers were not "uniquely predetermined" or "published" within a published compilation.

Moreover, any doubt as to the meaning of the term "multi-digit jump code" was removed when—after the exchange described above—the applicant amended claims 1 and 11 to recite "multi-digit jump code" and added dependant claims 9 and 19, which state "wherein said multi-digit jump code is a four digit number." Ex. J at 061804, 061806-07. In view of these amendments and as discussed above, under the doctrine of claim differentiation, the term "jump code" is presumed to be broader than the term "number." The term "multi-digit" simply indicates the quantity of symbols within the "jump code." These claims as finally worded control the Court's construction. *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1090 (Fed. Cir. 2003)

(stating that claims control over a loose remark in the course of prosecution).

As a final attempt to limit "multi-digit jump code," defendants improperly rely on prosecution statements regarding Edelstein. According to defendants, in the applicant's exchange with the examiner regarding Edelstein, the applicant argued "that a reference could not anticipate or be used to render obvious the system of the invention unless it published numbers." D.I. 147 at 16. This is false. During prosecution the examiner rejected applicant's invention, stating Edelstein's system includes:

> a compilation of *preselected Internet locations ['list of Resource Aliases'*, col. 8 lines 7-24], said compilation including a unique *predetermined multi-digit jump code ['serial number'*, col. 9, lines 21-35] assigned to each of said preselected Internet locations therein[.]

Ex. K at 061824 (emphasis added). The examiner further stated that "[i]t would have been obvious to one of skill…to enhance [the] Edelstein system by publishing the list of *Resource aliases [i.e., preselected Internet locations]…*." *Id.* at 018625 (emphasis added). In response, the applicant stated that even if Edelstein were to publish the disclosed aliases ("the preselected Internet locations"), the compilation would not include what the examiner deemed to be the "multi-digit jump codes," that is, the "serial numbers." Ex. L at 061834-35. The applicant was not, as defendants claim, stating that the claimed "multi-digit jump code" must be a "number."

**D.    A Predetermined Published Internet Location**

The most glaring example of defendants' attempt to redraft the claims is found in their construction of "a predetermined published Internet location," which according to defendants, must be "a publicly accessible predetermined place on the Internet having a URL published in said published compilation and providing access to other places on the Internet associated with other persons or entities." D.I. 147 at 18. As with defendants' other constructions, this construction is based upon a fundamental misunderstanding of the Internet and the intrinsic record. The proper construction for "**a predetermined published Internet location having an address published in said published compilation**" is simply a "**predetermined Internet location having an address**

**published in said published compilation,**" wherein "**address**" takes on its ordinary meaning in the Internet industry as "**a designation for a particular Internet location.**" D.I. 144 at 32-38.

Defendants again base their construction on the mistaken belief that the Internet and Web are physical "spaces." Defendants argue that the "'predetermined Internet location' must be a physical *location* on a computer on the Internet." D.I. 147 at 19 (emphasis added). This is incorrect. As discussed in detail above, when an Internet user accesses a Web site or other "Internet location," the user is, in reality, requesting, and then receiving, content and information from one or more server computers. This is no different when the user accesses the claimed "predetermined published Internet location."

Defendants further reason that the "predetermined published Internet location" must be a "location," as opposed to plaintiff's proposed "identified material or subject matter provided by one or more computers" because, according to defendants, "jump codes cannot be captured, received or converted in 'identified material or subject matter.'" D.I. 147 at 22. This argument is flawed for two reasons. First, defendants rewrite the claim to suggest that the "predetermined Internet location" must include the "means for capturing," "means for receiving" and "means for converting." *Id.* at 19. This is a gross misrepresentation of the claim language. As claimed, the "predetermined Internet location" includes the "means for capturing," while the claimed "system" includes the "means for receiving" and "means for converting." D.I. 144, Ex. 1, col. 8, claim 1. Moreover, as described in the specification, the "means for capturing" includes an "on-screen HTML box or form." *Id.,* Ex. 1, col. 7, ll. 3-5. An *on-screen* HTML box or form is content provided to the *user computer* via one or more server computers. *See* D.I. 144, Ex. 2 (defining "Web site" as including HTML documents served via an HTTP server). Therefore, contrary to defendants' position, a Web user does not enter a code at a location on a server computer, the user enters the code into content on the user's computer, such as an on-screen HTML box or form that is provided with the "predetermined Internet location."

Regarding defendants' position that the predetermined Internet location be "publicly

accessible," there is nothing in the specification that requires as much. As discussed above, simply because something is "on-line" does not mean it is publicly accessible. In addition, regarding defendants' requirement that the predetermined Internet location "provide access to other places on the Internet associated with other persons or entities," this again is another attempt to exclude navigation on a "single merchant server." As discussed in detail above, there is simply no basis in the claims, the written description or the prosecution history for such a limitation.

Lastly, defendants' position that the "address" of the "predetermined Internet location" be a "URL" was refuted in detail in plaintiff's Opening Brief. D.I. 144 at 33-35. Defendants also attempt to argue that a "URL" must be an "absolute" URL, i.e., it must include the protocol "http://." D.I. 147 at 21, n. 8. While "URL" is not currently being construed, plaintiff is compelled to respond that, in view of the written description and under the Federal Circuit's decision in *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1090 (Fed. Cir. 2003), wherein the court addressed this exact issue, the term "URL" is not limited to absolute URLs.

## IV.    CONCLUSION

For the reasons set forth in Internet Media's Opening Brief and this Reply Brief, Internet Media's proposed constructions of the disputed terms should be adopted. For the Court's convenience, these constructions are attached herewith as Ex. N.

| | |
|---|---|
| *Of Counsel:*<br>Ronald J. Schutz<br>Diane L. Simerson<br>Michael A. Collyard<br>Andrea L. Gothing<br>Busola A. Akinwale<br>ROBINS, KAPLAN, MILLER & CIRESI, LLP<br>800 LaSalle Avenue<br>Minneapolis, MN 55402-2015<br>(612) 349-8500 | BLANK ROME LLP<br><br>*/s/ Thomas P. Preston*<br>By:_____<br>Thomas P. Preston, Esquire<br>I.D No. 2548<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>Ph: (302) 425-6478<br>Fax: (302) 425-6464 |
| Dated: July 17, 2006 | *Attorneys for Plaintiff Internet Media*<br>*Corporation* |