**EXHIBIT L**



**UNITED ST... ES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/705,967 | 08/30/96 | GAGNON | 8351.001 |

| EXAMINER |
|---|
| TON, D. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2784 | 15 |

DATE MAILED:

## INTERVIEW SUMMARY

All participants (applicant, applicant's representative, PTO personnel):

(1) David Ton         (3) _____
(2) David Edmondson   (4) _____

Date of interview: 8/17/99

Type: ☐ Telephonic  ☒ Personal (copy is given to ☐ applicant  ☒ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes  ☒ No  If yes, brief description: _____

Agreement ☐ was reached.  ☒ was not reached.

Claim(s) discussed: 1

Identification of prior art discussed: 5,804,803 + INTERNET YELLOW PAGE (1995 EDITION) + PRIOR ART OF RECORD.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: 35 USC 103 problems were discussed. Applicants discussed about published compilation.

---

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has are ready been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐ Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign this form unless it is an attachment to another form.

FORM PTOL-413 (REV.1-98)

*David Ton* (signature)

● U.S. GPO 1996-410-232/40051

IMC_PLTF 061829

Manual of Patent Examining Procedure, Section 713.04 Substance of Interview must Be Made of Record

A complete written statement as to the substance of any face-to-face or telephone interview with regard to an application must be made of record in the application, whether or not an agreement with the examiner was reached at the interview.

§1.133 Interviews

(b) In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for response to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

§ 1.2. Business to be transacted in writing. All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete a two-sheet carbon interleaf Interview Summary Form for each interview held after January 1, 1978 where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks in neat handwritten form using a ball point pen. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.

The Interview Summary Form shall be given an appropriate paper number, placed in the right hand portion of the file, and listed on the "Contents" list on the file wrapper. The docket and serial register cards need not be updated to reflect interviews. In a personal interview, the duplicate copy of the Form is removed and given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephonic interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the telephonic interview rather than with the next official communication.

The Form provides for recordation of the following information:

- Serial Number of the application
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (personal or telephonic)
- Name of participant(s) (applicant, attorney or agent, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the claims discussed
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). (Agreements as to allowability are tentative and do not restrict further action by the examiner to the contrary.)
- The signature of the examiner who conducted the interview
- Names of other Patent and Trademark Office personnel present.

The Form also contains a statement reminding the applicant of his responsibility to record the substance of the interview.

It is desirable that the examiner orally remind the applicant of his obligation to record the substance of the interview in each case unless both applicant and examiner agree that the examiner will record same. Where the examiner agrees to record the substance of the interview, or when it is adequately recorded on the Form or in an attachment to the Form, the examiner should check a box at the bottom of the Form informing the applicant that he need not supplement the Form by submitting a separate record of the substance of the interview.

It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview:

A complete and proper recordation of the substance of any interview should include at least the following applicable items:

1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner. The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he feels were or might be persuasive to the examiner,
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete or accurate, the examiner will give the applicant one month from the date of the notifying letter or the remainder of any period for response, whichever is longer, to complete the response and thereby avoid abandonment of the application (37 CFR 1.135(c) ).

Examiner to Check for Accuracy

Applicant's summary of what took place at the interview should be carefully checked to determine the accuracy of any argument or statement attributed to the examiner during the interview. If there is an inaccuracy and it bears directly on the question of patentability, it should be pointed out in the next Office letter. If the claims are allowable for other reasons of record, the examiner should send a letter setting forth his or her version of the statement attributed to him. If the record is complete and accurate, the examiner should place the indication "interview record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

IMC_PLTF 061830

# 16/C
9-15-99

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent Application of: ) | Examiner: D. Ton |
| Eric F. GAGNON ) | Group Art Unit: 2784 |
| Serial No.: 08/705,967 ) | Atty. Dkt.: 000351.00001 |
| Filed: August 30, 1996 ) | MCG:DJE:dfs |
| For: SYSTEM FOR PROVIDING ) EASY ACCESS TO THE WORLD ) WIDE WEB ) | September 13, 1999 |

RECEIVED SEP 15 1999 TECH CENTER 2700

## AMENDMENT

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

The following amendments and remarks are respectfully requested to be entered in response to the non-final Office Action mailed June 11, 1999.

### IN THE CLAIMS:

Please add the following new claims:

--19. The system of claim 1, wherein said published compilation comprises a review of each of said preselected Internet locations.

20. The method of claim 11, wherein said published compilation comprises a review of each of said preselected Internet locations.--

## REMARKS

The Office Action dated June 11, 1999, has been carefully considered. In response, the Applicant respectfully submits that this application is in condition for allowance. Accordingly, reconsideration of the application and allowance of claims 1-20 are respectfully solicited.

The Examiner is thanked for the courtesy extended to the Applicant's representative during the personal interview conducted August 17, 1999. The following is a summary of the

interview.

During the interview, the Applicant's representative noted that *Edelstein et al* fails to teach or suggest a published compilation. In response, the Examiner argued that *Edelstein et al* uses a database linking the mnemonic aliases with the URL's and that the database could be printed out for use as a published compilation.

The Examiner also noted another reference which he had found in a search, namely, U.S. Patent No. 5,804,803 to *Cragun et al*. *Cragun et al* is concerned with providing consumers with information on prospective purchases. To that end, *Cragun et al* teaches a system including a client computer into which a consumer scans the UPC bar code of an item to be purchased and a server computer storing a database linking each UPC with a URL for a Web page describing the product. The Examiner further noted the existence of Internet directories which list companies and their full URL's.

The Examiner took the position that the database of either *Edelstein et al* or *Cragun et al* could be printed out and used as a published compilation, that *Cragun et al* teaches listing numerical codes (UPC's) with URL's, and that the known Internet directories provide motivation to print out the databases.

The Applicant's representative responded as follows. First, it would not have been possible, much less obvious, for a user to gain access to the database of *Edelstein et al* or *Cragun et al* to print it out. Second, *Cragun et al* is specifically intended for use in a store, where a consumer can take a can of chicken soup to the bar-code scanner of the client computer and scan in the UPC bar code to access the Web site of the manufacturer of the soup. By contrast, the published compilation of the present invention is usable from any computer with Internet access, e.g., a home computer, and is not limited to use with products bearing UPC bar codes. Third, it would not have been obvious to combine either *Edelstein et al* or *Cragun et al* with a published

2

IMC_PLTF 061832

Internet directory. *Edelstein et al* teaches away from the use of published compilations, depending on mnemonic codes instead. *Cragun et al* relies on the UPC bar codes on the packaging of actual products, with the result that a published compilation would have been superfluous.

The Examiner acknowledged that the use of the published compilation provides a distinction over the prior art, but maintained that the distinction is too minor for patentability.

Claims 1-2, 5-9 and 12-18 stand rejected under 35 U.S.C. §103(a) over *Edelstein et al.* Claims 3-4 and 10-11 stand rejected under 35 U.S.C. §103(a) over *Edelstein et al* in view of *Lewis*. For the reasons set forth below, the Applicant respectfully traverses both grounds of rejection and submits that the present claimed invention would not have been obvious over *Edelstein et al*, with or without the further teachings of *Lewis*.

The present claimed invention uses a published compilation of preselected Internet locations. The published compilation has a unique predetermined multi-digit jump code assigned to each of the preselected Internet locations published therein.

By contrast, *Edelstein et al* teaches simplifying the addressing of Internet resources (typically, but not exclusively, Web sites) through easily remembered source aliases and resource aliases. Each source alias identifies a provider of an Internet resource (e.g., the U.S. Senate), while each resource alias identifies a specific Internet resource (e.g., a Web page giving a biography of Senator Dole). The source aliases and resource aliases are stored on a central registry server 102 and root servers 103 in a central services region 101. If a user enters an invalid resource alias, the user receives a list of proximate resource aliases, as described in column 11, lines 59-65.

Thus, *Edelstein et al* relies largely on the user's memory, rather than on a published compilation of preselected Internet locations in combination with a predetermined published

3

Internet location having an address published in the published compilation. In fact, the Examiner acknowledges that *Edelstein et al* does not explicitly teach publishing the compilation.

However, the Examiner argues that *Edelstein et al* teaches published compilations such as Yellow Pages, White Pages or Web crawlers. The Examiner reasons that it would have been obvious to publish the list of resource aliases of *Edelstein et al* "because it would provide more advertisement of the URL address by using other media . . . ."

The Applicant respectfully disagrees with the Examiner's reasoning for the following reasons. First, column 2 of *Edelstein et al* discusses the disadvantages of the known Yellow Pages, White Pages and Web crawlers, and it is one of the goals of *Edelstein et al* to overcome those disadvantages. Therefore, *Edelstein et al*, far from rendering obvious the use of Yellow Pages, White Pages and Web crawlers, teaches away from their use.

As a consequence, the present claimed invention, by using a published compilation, proceeds contrary to the accepted wisdom of the prior art as evidenced by *Edelstein et al*. That fact is strong evidence of nonobviousness. *W. L. Gore & Associates, Inc. v. Garlock, Inc.*, 220 U.S.P.Q. 303, 312 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984).

Second, while *Edelstein et al* proposes that information providers advertise the electronic addresses of *their* resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources. Instead, the advertisement taught by *Edelstein et al* would take the form of an advertisement for a single company with the electronic address of that company's resource, just as companies today advertise their own (not their competitors') resources by their URL's. Therefore, the Applicant respectfully submits that *Edelstein et al* teaches away from the present claimed invention for that reason as well.

Moreover, even if the published compilation were for some reason deemed to be obvious

4

IMC_PLTF 061834

over *Edelstein et al*, such a published compilation would still not include a multi-digit jump code assigned to each of the preselected Internet locations. *Edelstein et al* teaches assigning a serial number to each resource alias, but that serial number is used for internal network purposes only. The user does not see the serial numbers. Instead, as explained in the paragraph spanning columns 11 and 12, the user enters a character sequence of a purported resource alias. Providing a published compilation of the serial numbers would defeat a key purpose of *Edelstein et al* taught in column 3, line 40, namely, providing mnemonic aliases. Therefore, the use of multi-digit jump codes as recited in the present claims provides a further distinction over *Edelstein et al*.

Further, with regard to the printed matter of claims 6 and 13, the Examiner argues that the teaching of Yellow Pages in *Edelstein et al* covers such printed matter. The Applicant respectfully disagrees with that reading of *Edelstein et al*. The second full paragraph of column 2 of *Edelstein et al* characterizes the Yellow Pages described therein as "software tools . . . for use on the Internet" and as "similar [i.e., not identical] to the telephone 'yellow pages' . . . ." In other words, the Yellow Pages described in *Edelstein et al* are electronic Yellow Pages, not printed matter.

During the interview, the Examiner argued that the database of *Edelstein et al* could be printed out and used as a published compilation. However, a user would not necessarily have the access to the database required to print it out. Moreover, even if a user could print out the database, the mere fact that the prior art could have been modified in a certain manner would not have made the modification obvious unless the prior art suggested the desirability of the modification. *In re Laskowski*, 10 U.S.P.Q.2d 1397, 1398 (Fed. Cir. 1989). In the present case, the prior art does not provide motivation to print out the database; in fact, *Edelstein et al's* reliance on mnemonic aliases teaches away from doing so.

5

Nor does mere knowledge in the prior art of published compilations of Internet resources provide such motivation. Such known published compilations, or at least the ones presented by the Examiner during the interview, print the URL for each resource in full. As a consequence, the mnemonic aliases of *Edelstein et al* would have been pointless and therefore unobvious. Also, since the Examiner did not explain how such known published compilations overcome the problems of the Internet Yellow Pages which *Edelstein et al* have the explicit goal of overcoming, *Edelstein et al* teaches away from combining the teachings of that patent with those of the known published compilations.

With regard to *Cragun et al*, since that reference has yet to be applied in a rejection or even formally made of record, the traversal of any rejection which may possibly be made over that reference, beyond what is required to summarize the interview, is premature. If the Examiner deems the invention to be unpatentable over *Cragun et al* or over a combination of references including *Cragun et al*, the Applicant respectfully requests a new Office Action to that effect. Of course, such an Office Action must be made non-final.

The teaching of an Internet gateway in *Lewis* does not overcome the above-noted deficiencies of *Edelstein et al*. Therefore, the combination of the two references would not have resulted in the subject matter of any of the present claims.

Finally, the Applicant respectfully submits that the subject matter of new claims 19 and 20 departs further from the teachings of the applied references. That subject matter finds support in the originally filed specification, e.g., on page 10, lines 8-11.

In view of the foregoing amendments and remarks, reconsideration and withdrawal of the rejection of claims 1-18 is earnestly solicited and the entrance and an indication of the allowability of claims 1-20 is respectfully requested.

In the event that there are any questions relating to this Amendment or to the application

6

IMC_PLTF 061836

in general, it would be appreciated if the Examiner would telephone the undersigned attorney concerning such questions so that the prosecution of this application may be expedited.

Please charge any deficiency in fees, or credit any overpayment thereof, to the deposit account of Blank Rome Comisky & McCauley LLP, deposit account number 23-2185 (000351.00001/P). In the event that a Petition for an Extension of Time is required to render this submission timely, the Applicant hereby petitions under 37 C.F.R. § 1.36(a) for an Extension of Time for as many months as are required to render this submission timely. Any fee due is authorized above.

Respectfully submitted,

Eric F. GAGNON

By: _____
Michael C. Greenbaum
Reg. No. 28,419

Customer No.: 002779
BLANK ROME COMISKY & McCAULEY LLP
The Farragut Building
900 - 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202)530-7436 (direct dial) or 530-7400 (switchboard)
Facsimile: (202)463-6915

7

IMC_PLTF 061837