# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNET MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-633 (KAJ) |
| | ) | |
| DELL, INC., OFFICE DEPOT, INC., | ) | |
| J.C. PENNEY COMPANY, INC., | ) | **JURY TRIAL DEMANDED** |
| WILLIAMS-SONOMA, INC., and | ) | |
| J. CREW GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS DELL, INC.'S, J.C. PENNEY CO. INC.'S, WILLIAMS-SONOMA, INC.'S AND J. CREW GROUP, INC.'S ("DEFENDANTS") <u>CLAIM CONSTRUCTION REPLY BRIEF</u>

Richard L. Horwitz (2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

David E. Killough
Matthew S. Wermager
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: (512) 542-8400

*Attorneys for Defendant*
*Dell Inc.*

Dated: July 17, 2006

Philip A. Rovner (3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

OF COUNSEL:

James G. Gilliland, Jr.
April E. Abele
Matthew R. Hulse
TOWNSEND AND TOWNSEND
    AND CREW LLP
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Tel: (415) 576-0200

*Attorneys for Defendants*
*J.C. Penney Company, Inc.,*
*Williams-Sonoma, Inc. and*
*J. Crew Group, Inc.*

**Table of Contents**

I.   INTRODUCTION ................................................................................................... 1

II.  IMC IS WRONG ON THE LAW.............................................................................. 1

III. DEFENDANTS' PROPOSED CLAIM CONSTRUCTIONS ARE RIGHT; IMC'S ARE WRONG. ........................................................................................................ 2

    A.  A Published Compilation of Preselected Internet Locations .................................. 2

        1.  "Published" means "publicly accessible" not "disseminated"......................... 2

        2.  The "published compilation" is a "list" not a "collection". ............................. 3

        3.  The "preselected Internet locations" in the "published compilation" are "URLs" "associated with more than one person or entity" not "identified material or subject matter". ........................................................................... 3

            (a) Defendants' construction is fully supported by the intrinsic record and IMC's attack on that construction is without merit. ......................... 3

            (b) IMC's construction defies the intrinsic evidence and common sense....... 6

    B.  A "unique predetermined multi-digit jump code" is a "number consisting of more than one digit" not merely a "code consisting of more than one digit." ........... 8

    C.  A "Predetermined Internet Location Having An Address Published In Said Published Compilation. ...................................................................................... 11

        1.  The published "address" must be a URL and not some unspecified "designation for a particular Internet location". ............................................ 11

        2.  The "predetermined Internet location" must provide access to other places on the Internet associated with other persons or entities. ............................... 12

IV.  CONCLUSION..................................................................................................... 13

# TABLE OF AUTHORITIES

### Cases

*C. R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004) ................................................................................. 12

*Ekchian v. The Home Depot, Inc.*,
   104 F.3d 1299 (Fed. Cir. 1997) ........................................................................ 2, 6, 13

*Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*,
   279 F.3d 1022 (Fed. Cir. 2002) ................................................................................. 5

*Honeywell Int'l, Inc. v. ITT Industries, Inc.*,
   2006 WL 1703376 (Fed. Cir. June 22, 2006) .......................................................... 3

*Liebel-Florshiem Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................................. 3

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................................................................ 8

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) ............................................................................... 7

*Nystrom v. Trex Co., Inc.*,
   424 F.3d 1136 (Fed. Cir. Sep. 14, 2005) ................................................................. 2

*On Demand Machine Corp. v. Ingram Ind., Inc.*,
   442 F.3d 1331 (Fed. Cir. Mar.ch 21, 2006) ............................................................ 2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 1, 2, 11, 12

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999) ......................................................................... 5, 11

*Seachange Int'l Inc. v. C-Cor Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) .............................................................................. 13

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................ 12

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
   442 F.3d 1322 (Fed. Cir. 2006) ............................................................................... 5

I.  **INTRODUCTION**[1]

Defendants, in their opening claim construction brief, provided the Court with exhaustive support of their proposed constructions from both the specification and the prosecution history of the `835 patent. These constructions provide the only reasonable interpretations for the claim terms at issue.

In stark contrast, Internet Media Corporation ("IMC"), in its opening claim construction brief ("IMC Br."), ignored the intrinsic record on point to advance insupportable constructions IMC hopes will shoehorn Defendants' activities into the scope of IMC's patent claims. IMC's constructions are impermissible on the intrinsic record and under well-established Federal Circuit precedent.

II.  **IMC IS WRONG ON THE LAW**

The parties agree, as they must, that the claims, the specification and the prosecution history guide the construction of patent claims. Defendants applied that guiding principle in construing the claim terms at issue. IMC did not, often referring instead to the supposed "ordinary meanings" of terms or to dictionary definitions or to other extrinsic evidence in conflict with the intrinsic record. In doing so, IMC departed from the Federal Circuit's clear direction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), that, first and foremost, the intrinsic record is almost always determinative of the plain and ordinary meaning of claim language to a person of skill in the art and that extrinsic evidence may never be used to contradict the meaning accorded to a term by the intrinsic record. *Phillips v. AWH Corp.*, 415 F.3d at 1322-23.

IMC wrongly contends that Defendants' constructions impermissibly read limitations from the specification into the claims. Defendants have not read limitations from the specification into the claims, but rather have interpreted the claims in light of the meanings

---

[1] The term "Defendants," as used herein, refers to Dell, J.C. Penney, Williams Sonoma and J. Crew. Office Depot has joined in the majority of these Defendants' constructions, but has offered its own construction for the phrase "preselected Internet locations."

assigned to claim terms by the specification since the specification is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d at 1315. Indeed, the Federal Circuit has held that "[i]n general, the scope and outer boundary of claims is set by the patentee's description of his invention," *On Demand Machine Corp. v. Ingram Ind., Inc.*, 442 F.3d 1331, 1338 (Fed. Cir. Mar. 21, 2006) (Ex. 9)[2], and that when a patentee uses a term or phrase narrowly throughout the specification, the claim should be construed accordingly, *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143-44 (Fed. Cir. Sep. 14, 2005).[3]

IMC clearly delineated the scope of its claims during prosecution of its application for the `835 patent but, in its opening brief, tellingly ignored the prosecution history.[4] The law, however, is clear that the prosecution history must be considered in construing the claims of a patent. *Phillips*, 415 F.3d at 1317. As much as it might wish to do so now, IMC cannot avoid the limiting effect of statements it made during prosecution. "[B]y distinguishing between the invention and the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Ekchian v. The Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).

### III. DEFENDANTS' PROPOSED CLAIM CONSTRUCTIONS ARE RIGHT; IMC'S ARE WRONG.

#### A. A Published Compilation of Preselected Internet Locations

##### 1. "Published" means "publicly accessible" not "disseminated".

It is curious that IMC takes issue with Defendants' position that "published" means "publicly accessible." "Publicly accessible" is broader than and encompasses IMC's construction that "published" means "disseminated" (*i.e.*, something "disseminated" is thereby made "publicly accessible"). The on-line list referenced in the specification is not

---

[2] Exhibits 1-9 are attached to Defendants' Joint Opening Brief (D.I. 147).
[3] In *Nystrom*, the Federal Circuit found that the "ordinary and customary" meaning of the term "board" to a person of skill in the art was restricted to wood boards because the inventor described the invention in the *context of wood, and maintained this context throughout the patent. Id.* at 1143-1144.
[4] The only reference to anything remotely connected to prosecution history of the `835 patent is IMC's citation to a portion of the Cragun patent. (IMC Br. at 31.)

"disseminated," but still is "published" by making it publicly accessible. (Ex. 1, 7:63-65 ("an on-line list within the JumpCity Web site").) Defendants' construction is true to the specification, encompassing both printed and on-line publication; IMC's construction inexplicably excludes the latter embodiment and so must be wrong.

### 2. *The "published compilation" is a "list" not a "collection".*

Defendants' construction that the "published compilation" is a "list" is grounded in IMC's statement in the specification that the "[t]he system of the present invention utilizes a published *list* of preselected Web sites." (Ex. 1, 4:54-55, emphasis added.) IMC counters by citing a case which stands for the unremarkable – and here inapplicable – proposition that a claim generally is not restricted to a preferred embodiment. *See Liebel-Florshiem Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). IMC's statement in the specification was not simply a disclosure of a preferred embodiment, but rather is a definitive statement of what the "invention" *is* according to IMC itself. The Federal Circuit has held that when a patentee makes such a statement the patentee should be bound by its word. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 2006 WL 1703376, *6 (Fed. Cir. June 22, 2006).

### 3. *The "preselected Internet locations" in the "published compilation" are "URLs" "associated with more than one person or entity" not "identified material or subject matter".*

#### (a) *Defendants' construction is fully supported by the intrinsic record and IMC's attack on that construction is without merit.*

The main issues before the Court in construing the term "a published compilation of preselected Internet locations" are as follows:

- What is published in the compilation: preselected Internet locations or something else? The claim language itself is clear; the published compilation must be comprised of preselected Internet locations.

- How does the intrinsic record define "Internet locations" in the context of a compilation? IMC's own use of the term "location" in the intrinsic record to mean URL is the only possible meaning of preselected Internet location that both is supported by the intrinsic evidence and fits in the context of the claim language requiring that the compilation be comprised of preselected Internet locations.

3

- Should IMC be held to its representations to the PTO that its claims distinguished from the prior art because IMC's system was not restricted to accessing the URLs associated with a single merchant?  Federal Circuit precedent requires that IMC be bound by its representations to the PTO.

As discussed in Defendants' opening brief, "Internet location" is used in two different contexts both in the claims and in the specification and has two different meanings depending on those contexts:  (1) a URL (*e.g.*, "[e]very website has an exact address, or location on the Web. . . known as a Uniform Resource Locator or URL." (Ex. 1,  3:53-55.)); or, (2) a place on someone's computer where an electronic file resides (*e.g.*, "[a] Web site is basically a collection of files located under a directory somewhere on someone's computer connected to the Internet." (*Id*. 3:31-34.)).  In the context of the first element of the claims, the "Internet locations" in "a compilation of preselected Internet locations" must be URLs, because a "compilation" cannot be comprised of physical places on the Internet.

In opposing Defendants' construction, IMC notes that the claim *later* recites that a "URL address" corresponds to an "Internet location" and so, argues IMC, "Internet locations" cannot themselves be URLs.  IMC, however, fails to address the context in which the claim uses the term in this *later* portion of the claim.  The *later* claim term cited by IMC actually recites a "means for converting said desired multi-digit jump code to a URL address corresponding to the ***desired*** preselected Internet location."  That use marks the *first* time the claim uses the phrase "***desired*** preselected Internet location."  After introducing the term "***desired*** preselected Internet location," the next claim term recites a "means for automatically ***accessing said desired*** preselected Internet location."  IMC's use of "said desired Internet location" in that next phrase confirms that IMC was introducing a *new* phrase immediately before - "***desired*** preselected Internet location."  Further, according to the claim, a user must be able to access the "***desired*** preselected Internet location" itself, not the "***compilation*** of preselected Internet locations" recited in the first claim element.  Therefore, the term "***desired*** preselected Internet location" must refer to the actual physical place the user desires to ***access***.  That has nothing to do with the meaning of "Internet

4

location" in the context of the first claim element, which speaks of a "*compilation* of preselected Internet locations".[5]

IMC also argues that Defendants' construction excludes the preferred embodiment of the invention, referring to Figures 1 and 2 and elements 112, 114, 116, etc. of the specification. (IMC Br. at 24.) IMC, however, misrepresents its own invention. The preferred embodiment, according to the specification, is the book "What's on the Web." (Ex. 1, 5:50-61; excerpts of the *What's on the Web* book are provided in Ex. 5.) Contrary to IMC's assertions, every entry in "What's on the Web" provides a URL. Further, the specification refers to items 112, 114, 116, etc., as "a plurality of reviews of websites 112, 114, 116," etc. Claim 10 of the `835 patent claims "[t]he system of claim 1, wherein said published compilation comprises a review of each of said preselected Internet locations." Thus, the "preselected Internet locations" in claim 1 cannot be the claim 10 reviews themselves, but must be something different. The specification tells us that the something different is the URLs of places of interest on the Internet.

As also discussed in Defendants' opening brief, Defendants' construction that a "published compilation of preselected Internet locations" is "a publicly accessible list of different URLs associated with more than one person or entity, each URL corresponding to a different preselected place on the Internet" is dictated by IMC's representations to the PTO. First, IMC told the PTO that the invention was a published compilation that includes electronic addresses, *i.e.*, URLs. (Ex. 2, IMC_PLTF 061834 (emphases added).) Later in prosecution, IMC distinguished over prior art which taught listing numerical codes (UPCs) with URLs, not by saying its compilation was not a list of numbers matched with URLs, but

---

[5] As discussed in Defendants' opening brief on page 19, the fact that a single claim employs for a claim term both of two different definitions provided in the specification is not a unique occurrence and has been acknowledged repeatedly by the Federal Circuit. *See*, *e.g.*, *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*., 442 F.3d 1322, 1327-28 (Fed. Cir. 2006); *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1031 (Fed. Cir. 2002); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1311 (Fed. Cir. 1999).

rather that the list of the prior art was not published and that the prior art system could access only pages within one entity's web site and could not access all web sites of interest. (*Id.*, IMC_PLTF 061832-33; Ex. 2, IMC_PLTF 061791[6].) Federal Circuit case law mandates that such an explicit statement act as a disclaimer in claim scope. S*ee, e.g., Ekchian v. The Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).

IMC argues that because claim 5 recites that the "preselected Internet locations are in the World Wide Web," this language somehow absolves IMC of its clear disavowal of claim scope. That argument is a *non sequitur*. The specification makes clear that Internet locations exist in both the World Wide Web portion of the Internet and in the newsgroup and usenet group portions of the Internet. (Ex. 1, 1:59-64.) Claim 5 is simply claiming more specifically that it is the World Wide Web portion of the Internet that is accessed. IMC's argument is a red herring.

### (b) IMC's construction defies the intrinsic evidence and common sense.

"A published compilation of preselected Internet locations," requires, *inter alia*, three things: 1) that there be a compilation; 2) that the compilation be published; and 3) that the published compilation be comprised of preselected Internet locations. There can be no dispute as to these requirements and IMC, at least initially, implies agreement when it states "[i]n addition to being "published," the claim requires that "Internet locations" included in the "published compilation" be "preselected." (IMC Br. at 20.) However, the things compiled in the compilation, according to IMC, are **_not_** "preselected Internet locations."

IMC provides the following construction for the term "Internet location:" "*identified material or subject matter (content) that is provided via the Internet by one or more*

---

[6] IMC specifically disclaimed what it referred to as the "single merchant server" concept or "merely sub-links within a merchant's own website which is operated on the 'single merchant server'" and told the PTO that IMC's invention "provides Internet users with the ability to reach any and all Internet locations on any of the servers connected to the Internet, as opposed to the single merchant server utilized by the Levergood et al. system." (Emphasis added.)

6

*computers*" (IMC Br., 17 (emphasis added).)  Even assuming, *arguendo*, that this construction of preselected Internet locations makes sense (which it does not, as discussed below), proper claim construction of the entire claim term would then require that the published compilation be comprised of this so-called "identified material . . ."  Not so, according to IMC.  Rather, IMC's construction for the entire term is "a disseminated collection of *information, such as descriptions, text or graphics, at least some of which correspond to preselected Internet locations [i.e., "identified material or subject matter (content) that is provided via the Internet by one or more computers*]" (*Id.*, 19 (emphasis added).)

      Thus, according to IMC, the published compilation is comprised of "information" rather than the "identified material" IMC defines as preselected Internet locations.  Such a construction flatly ignores the language of the claim itself which requires "a published compilation *of* preselected Internet locations."  In addition, asking the Court to apply "widely accepted meaning[s] to commonly understood words" (IMC Br. at 19.), IMC has construed the term "of" to mean "at least some of which correspond to."  That's not even a dictionary definition, let alone one found in the intrinsic record.  IMC is not permitted to re-draft the claims in the guise of construction.  *See Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1374 (Fed. Cir. 2004) ("courts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.").

      While "Internet location," as previously discussed, is used in two different contexts in both the claims and the specification and has two different meanings depending on those contexts, "Internet location" is *never* defined by the intrinsic evidence as "identified material or subject matter."  Again, the specification reveals that an "Internet location" is either: (1) a URL; or (2) a place on someone's computer where an electronic file resides.  Rather than choosing from the definitions it included in the specification – or even relying on any portions of the specification in which the word "location" is used (*see* Ex. 4 to Defendants' Br.) – IMC instead adopts an arbitrary construction of "Internet location."  Moreover, IMC

7

uses its arbitrary construction in **_all_** contexts presented by the claims, even though that construction is impossible in the context, for example, of the claimed "predetermined Internet location" (*e.g.*, the JumpCity web site), which the claims require to perform the functions of "receiving," "converting" and "accessing" (Ex. 1, Claims 1 and 11). It simply is not possible for "identified material or subject matter" to perform any of those functions, so IMC's construction must be wrong.[7]

### B. A "unique predetermined multi-digit jump code" is a "number consisting of more than one digit" not merely a "code consisting of more than one digit."

The construction of "multi-digit jump code" boils down to the following question: Is the multi-digit jump code a number, or is it a combination of numbers and letters? In prosecution of the eventual `835 patent, IMC provided the answer when it defined its jump code as a "number" in order to overcome prior art references. IMC cannot now change that definition in an attempt to fit Defendants' products.

In construing "multi-digit jump code," not only does IMC avoid the context in which the disputed claim term is used and any discussion of the explicit disclaimer of claim scope during prosecution, IMC reorders the words and avoids construing the term "code" altogether, essentially handing the construction of the term "multi-digit jump code" to the jury. The law requires otherwise. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

---

[7] IMC, in several places in its brief, sets up and knocks down the straw man idea that when an Internet user accesses a Website, that user is actually traveling through space to visit the file or program generating the display for the website. (*See, e.g.*, IMC Br. at 4-5.) To Defendants' knowledge, no party to this action has ever asserted that a human being may physically travel through the Internet. Equally off the mark, however, is IMC's supposedly corollary construction that an "Internet location" must, in turn, be merely "identified material or subject matter (content) that is provided via the Internet by one or more computers." IMC misdirects the Court to examples of what is displayed by a Website. IMC ignores the fact that a user must first "access" a Website before he can view any "material or subject matter" displayed by that Website. (IMC Br. 17, 18.) That content must reside somewhere, *i.e.*, a place, in order to be accessible. Even though the Internet user is not himself traveling to that place, even IMC concedes that the user's request for that information must be directed to a particular place. (IMC Br. at 17.)

First, the word "code" must be read in conjunction with the claim term in which it is found. Here, the claim requires that the code be a "multi-digit jump code." In this context, as presented in Defendants' opening brief, the code must be a number because the ordinary meaning of digit refers to a number. (Ex. 7 at 354.)

Second, the Court need look no farther than the prosecution history to discern the definition of IMC's jump code. To overcome a reference which used company names and product names as codes, IMC stated that "[a]pplicant's jump code is an uniquely predetermined *number* which is published together with the published compilation of preselection [sic] locations on the Internet." (Ex. 2, IMC_PLTF 061792(emphasis added).) IMC reiterated its position that the jump code was a number when it distinguished a different reference because even if that reference disclosed a published compilation, the compilation would only publish mnemonic aliases (*i.e.*, numbers and letters) and not the serial numbers (*i.e.*, only numbers) applied to those mnemonic aliases. IMC's representations that its "jump code" is a number are inescapable.

In arguing against Defendants' construction, IMC first points to Defendants' use of the word "different" and claims that it provides no additional insight into the meaning of the term. (IMC Br. at 30.) Again, IMC disregards context. The entire claim element recites " a unique predetermined multi-digit jump code assigned to each of the preselected Internet locations published therein." Defendants' construction, when inserted into the claim element yields "a ***different*** predetermined number consisting of more than one digit assigned to ***each*** of the preselected Internet locations." "Different," in conjunction with "each," shows that the jump codes are "unique" as the claim requires. This concept is no different than IMC's statement that "within the published compilation one "jump code" is assigned to no more than one Internet location." (*Id.*)

Next, IMC argues that a "multi-digit jump code" cannot be a number because claim 9 recites that the multi-digit jump code is a four digit number. IMC's argument fails for two reasons. First, as discussed in Defendants' opening brief, Claim 9 is the first time the

9

specification uses the term "number" to refer to the jump code. As such, in order to find support in the specification, "number" must have the same meaning as "jump code." (Defendants' Br. at 17.) Second, there is no issue of claim differentiation in that claim 9 simply requires that the number of claim 1 be a four digit number as opposed to a number having some other quantity of digits. The specification reveals that the multi-digit jump code is not limited to the four digit number preferred embodiment claimed in claim 9: "obviously a larger number of digits could be utilized in order to enable the accessing of a larger number of Web sites or newsgroups or other URL locations on the Internet." (Ex. 1, 6:66-7:2.)

IMC cites to two "references" for its position that the term digit can be used to refer to numbers and/or letters. Neither reference helps IMC. First, IMC cites to a portion of U.S. Patent No. 5,804,803 to Cragun et al. ("the Cragun reference") that was cited during prosecution. IMC relies upon the Cragun reference's use of "hexadecimal digits" to somehow support the idea that a digit can be a letter; such a proposition is disingenuous. "Hexadecimal," by definition, is a "number system with a base of 16." *Webster's Ninth New Collegiate Dictionary*, p. 568, attached as Ex. 10 hereto. Thus, it is entirely consistent to use the term "digit" to refer to a component of a hexadecimal number. This is confirmed later in the Cragun reference when, referring to the embodiment that was actually discussed in prosecution, the use of UPC numbers, the patent states: "[a]lso, the customer could type numerical digits representing the code on the object instead of scanning the object." (IMC Ex. 34, 12:8-10.)

Next, rather than focus on the intrinsic record or even on extrinsic evidence predating the issuance of the patent,[8] IMC cites to a screen shot of the display of a web page hosted by Dell in 2005 which uses the term "alphanumeric digits." If the plain-English meaning of the word "digit" (*i.e.,* "number" (Ex. 7 at 354)) included letters as well as numbers, the author would <u>not</u> have had to use the word "alphanumeric." Accordingly, this evidence proves

---

[8] Only the knowledge of one of skill in the art <u>as of the time of the application for the patent at issue</u> is relevant. *Phillips*, 415 F.3d at 1313.

Defendants' construction not IMC's. Nor should the Court in any event be diverted from the intrinsic record. Although IMC cites to *Pitney Bowes* for the proposition that such extrinsic evidence supposedly is "trustworthy extrinsic evidence," the Federal Circuit there was discussing whether to consider expert affidavits when construing a technical term and not website material generated by a party long after the patent in question issued. The term "digit" is not a term that is specific to the field of the invention and, according to the Court in *Pitney Bowes,* resort to extrinsic evidence is appropriate "with respect to technical terms, as opposed to non-technical terms in general usage." *Pitney Bowes*, 182 F. 3d at 1309. Moreover, extrinsic evidence can never be used, as IMC urges here, to contradict the intrinsic record. *Phillips* 415 F.3d at 1322-23.

In order to obtain allowance of its claims, IMC represented to the PTO that its multi-digit jump code is a number. IMC should be held to its words.

### C.  *A "Predetermined Internet Location Having An Address Published In Said Published Compilation.*

#### 1.  *The published "address" must be a URL[9] and not some unspecified "designation for a particular Internet location".*

This claim element requires that the predetermined published Internet location have an "address" published in the published compilation. Defendants' construction of the term "address" to mean "URL" is consistent with the patent specification, which discloses that "[e]very web site has an *exact address*, or location on the Web. . . known as a Uniform Resource Locator or URL." (Ex. 1, 3:53-55 (emphasis added).) Thus, because the term "address" is specifically defined in the specification as a URL, "the inventor's lexicography governs." *Phillips* 415 F.3d at 1316.

IMC argues that the Defendants' construction of "address" is too narrow, and that the term should be construed in accordance with its "ordinary meaning" to mean "a designation

---

[9] Defendants provided a definition of URL in its opening brief. That definition provided that a URL must include a protocol (*e.g*., "http://"). IMC's makes numerous references to character strings in its brief that are not URLs. For instance, on page 8, IMC references "www.msn.com." Such a string of characters is not a URL.

11

for a particular Internet location." (IMC Br. at 33.) While the term "designation . . ." is not used in the specification, merely substituting "designation" for "address" only makes IMC's construction more vague than the claim itself and ignores the specification's teaching that the "address" (or "designation" for that matter) for every place on the Internet – and specifically for the claimed predetermined Internet location – is a URL. (Ex.1, 5:34-44.)

IMC cites a definition of "address" in a Microsoft Press computer dictionary to support its position. (IMC Ex. 2.) Extrinsic evidence is not only "less significant than the intrinsic record in determining the 'legally operative meaning of claim language,'" *C. R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004), but also cannot be used to contradict the intrinsic record, *Phillips* 415 F.3d at 1322-23. IMC cites no authority to the effect that its extrinsic dictionary definition should trump the specification; indeed, the law is to the contrary. *Id.*

IMC further argues that the term "address" in claims 1-20 cannot mean URL because the term "URL" is recited in the same claims. (IMC Br. at 35.) However, the term URL is recited in the claims with reference to the URLs corresponding to the "desired preselected Internet locations," not with reference to the predetermined Internet location.

Indisputably, claims must be read in light of the specification, of which they are a part. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, because the specification expressly defines the term "address" to mean a URL, that meaning should control.

### 2. The "predetermined Internet location" must provide access to other places on the Internet associated with other persons or entities.

IMC argues that this portion of the Defendants' construction is incorrect because claim 5 recites "wherein said preselected locations on the Internet are in the World Wide Web." (IMC Br. at 36.) As discussed above, IMC is wrong. Claim 5 merely says that the preselected Internet locations must be located in the World Wide Web as opposed to some other portion of the internet. (*See* Ex.. 1, 1:55-64, recognizing that the World Wide Web is a

segment of the Internet.)  Thus, claim 5 speaks only to where the preselected Internet locations can be found on the Internet; not whether they have to be associated with diverse individuals or entities.

IMC's construction ignores the prosecution history.  As discussed in Defendants' opening brief and above, the patentee distinguished the prior art Levergood patent by arguing that unlike the Levergood system, which provided the user with "sub-links within a merchant's own website" through a "single merchant server," the claimed invention provides Internet users "with the ability to reach any and all Internet locations on any of the servers connected to the Internet."  (Ex 2, IMC_PLTF 061791.)  This disclaimer is clear and unmistakable, and limits the scope of the claimed invention whether or not the patentee's statements were relied on by the Examiner in issuing the patent.  *Seachange Int'l Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1374 (Fed. Cir. 2005).

Consequently, because the patentee disclaimed protection for systems which allow navigation solely within URLs associated with a single merchant, the claims must be construed to require that the "predetermined published Internet location" give the user the ability to access other places on the Internet associated with other person or entities. *See*, *e.g.*, *Ekchian v. The Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997).

### IV.   CONCLUSION

For the foregoing reasons and those stated in Defendants' opening brief, Defendants' respectfully request that their proposed constructions of the disputed claim language be adopted.

| POTTER ANDERSON & CORROON LLP | POTTER ANDERSON & CORROON LLP |
|---|---|
| By: */s/ David E. Moore*<br>    Richard L. Horwitz (2246)<br>    David E. Moore (#3983)<br>    Hercules Plaza 6th Floor<br>    1313 N. Market Street<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    rhorwitz@potteranderson.com<br>    dmoore@potteranderson.com | By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (3215)<br>    Hercules Plaza 6th Floor<br>    1313 N. Market Street<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    provner@potteranderson.com |
| OF COUNSEL:<br><br>David E. Killough<br>Matthew S. Wermager<br>VINSON & ELKINS L.L.P.<br>2801 Via Fortuna, Suite 100<br>Austin, Texas 78746-7568<br>Tel:  (512) 542-8400<br><br>*Attorneys for Defendant*<br>*Dell Inc.* | OF COUNSEL:<br><br>James G. Gilliland, Jr.<br>April E. Abele<br>Matthew R. Hulse<br>TOWNSEND AND TOWNSEND<br>        AND CREW LLP<br>Two Embarcadero Center, 8th Floor<br>San Francisco, California 94111<br>Tel:  (415) 576-0200<br><br>*Attorneys for Defendants*<br>*J.C. Penney Company, Inc.,*<br>*Williams-Sonoma, Inc. and*<br>*J. Crew Group, Inc.* |

Dated:  July 17, 2006


741561

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**<u>CERTIFICATE OF SERVICE</u>**

I, David E. Moore, hereby certify that on July 17, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

| | |
|---|---|
| Thomas P. Preston | Titania R. Mack |
| Blank Rome LLP | GreenbergTraurig, LLP |
| Chase Manhattan Centre | The Nemours Building |
| 1201 Market Street, Suite 800 | 1007 North Orange Street |
| Wilmington, Delaware 19801 | Suite 1200 |
| | Wilmington, Delaware 19801 |

Philip A. Rovner
Potter Anderson & Corroon LLP
1313 N. Market St.
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

I hereby certify that on July 17, 2006, I have Electronically Mailed the documents to the following non-registered participants:

| | |
|---|---|
| Ronald J. Schutz | Douglas R. Weider |
| Diane L. Simerson | Barry J. Schindler |
| Andrea L. Gothing | Michael A. Nicodema |
| Nicole N. Morris | Gaston Kroub |
| Robins, Kaplan, Miller & Ciresi, LLP | Greenberg Traurig LLP |
| 2800 LaSalle Plaza | MetLife Building |
| 800 LaSalle Avenue | 200 Park Avenue |
| Minneapolis, MN 55402-2015 | New York, NY  10166 |
| rjschutz@rkmc.com | weiderd@gtlaw.com |
| dlsimerson@rkmc.com | nicodemam@gtlaw.com |
| algothing@rkmc.com | kroubg@gtlaw.com |
| nnmorris@rkmc.com | schindlerb@gtlaw.com |

James G. Gilliland, Jr.
April E. Abele
Robert G. Litts
Townsend and Townsend and Crew LLP
Two Embarcadero Center
San Francisco, CA 94111
jggilliland@townsend.com
aeabele@townsend.com
rglitts@townsend.com

|  |  |
|---|---|
| By: | /s/ David E. Moore |
|  | Richard L. Horwitz |
|  | David E. Moore |
|  | Potter Anderson & Corroon LLP |
|  | Hercules Plaza, 6th Floor |
|  | 1313 N. Market Street |
|  | Wilmington, DE  19899-0951 |
|  | (302) 984-6000 |
|  | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |

704823