IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNET MEDIA CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-633-SLR |
| ) | |
| DELL, INC., OFFICE DEPOT, INC., ) | |
| J.C. PENNEY COMPANY, INC., ) | |
| WILLIAMS-SONOMA, INC. and ) | |
| J. CREW GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 14th day of January, 2009, having heard oral argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of the patent in suit,[1] as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:[2]

1. As to claim 1, set forth in its entirety, with the disputed language

---

[1]The patent in suit is U.S. Patent No. 6,049,835 ("the '835 patent").

[2]The '835 patent, directed towards a system (and a method) for providing automatic access to preselected Internet locations, proves the maxim that the simpler the invention, the more complicated the language used to describe and analyze it.

emphasized:[3]

    1. A system for providing automatic access to preselected locations on the Internet, comprising:

    a **published compilation of preselected Internet locations**, said **published compilation** including a unique predetermined multi-digit jump code assigned to each of said **preselected Internet locations** published therein;

    a **predetermined published Internet location having an address published in said published compilation,** said **predetermined published Internet location** including means for capturing a desired multi-digit jump code assigned to each **preselected Internet location** after said multi-digit jump code has been entered by a user after accessing said **predetermined published Internet location**;

    means to accessing said **predetermined published Internet location**;

    means for receiving said desired multi-digit jump code from said means for capturing and means for converting said received multi-digit jump code to a URL address corresponding to the desired **preselected Internet location**; and

    means for automatically accessing said desired **preselected Internet location** using said URL address corresponding to said desired **preselected Internet location**, whereby said user need only enter said desired **preselected Internet location** without having to enter said corresponding URL address.

2. The '835 patent is directed to providing to "users of the World Wide Web portion of the Internet" "a specialized Web site which can be used in conjunction with published jump codes to readily and automatically access other Web sites or Internet locations, without the user having to remember or input the URL[4] of the desired Web

---

    [3]The disputed language of claim 11 is essentially the same, the only difference being that claim 11 is a method claim, rather than a system claim.

    [4]According to the patent, "[e]very Web site has an exact address or location on the Web. Such addresses are known as a Uniform Resource Locator or URL. URLs consist of a confusing string of subdirectories, files or executable commands, separated

site." (Col. 4, ll. 33-48) According to the preferred embodiment of the invention,[5] a user of the Web enters a specialized Web site by entering the URL of the specialized Web site. The URL of the specialized Web site must be disseminated in conjunction with the dissemination of jump codes for desired Web destinations, which codes are obtained from a printed publication. (Col. 5, ll. 39-44) The invention describes the printed publication as containing "a plurality of reviews of Web sites, each of which has a corresponding four digit jump code associated therewith." (Col. 5, ll. 57-61) After the user is on-line with the specialized Web site and enters the desired jump code, the specialized Web site is described as including a software program that is capable of accepting the jump code and "search[ing] through its database of URLs" in order to "find[ ] the URL which is linked to the input jump code. The software then links the user either directly to the desired Web site, or alternatively, first to a brief written review of the Web site." (Col. 7, ll. 6-10; *see also* col. 5, ll. 34-65)

3. It is clear from the specification that the user chooses his/her desired Web sites through the materials contained in the printed publication and accesses said Web sites through entry of the four digit jump codes; i.e., the point of the invention is to allow users of the Web to browse the Web without having to use any URLs except that of the specialized Web site. This idea is captured in the claim language which describes "a URL address" as "corresponding to," not being the same as, a "preselected Internet

---

by slashes, which are extremely difficult to work with and which must be typed into the user's Web browser exactly as they appear, including the use of upper and lower-case letters, in order to go to a Web site." (Col. 3, ll. 53-60)

[5]The only embodiment described.

location" (see col. 8, ll. 29-32), just as one's house is distinct from one's street address. Although the inventor used the words "Internet location" interchangeably with "URL,"[6] the specification also provides that, in addition to Web sites, "any other type of subject matter contained on the Internet **which has a URL**" can be accessed using the jump codes. (Col. 6, ll. 1-3) (emphasis added)

4. Therefore, the phrase "**a published compilation of preselected Internet locations**" is construed to mean "a publicly accessible collection of information which corresponds to preselected Web sites (or to any other type of preselected data found on the Internet) which have unique URL addresses, the URL addresses being associated with diverse individuals or entities."[7]

---

[6](See, e.g., col. 3, ll. 53-55; col. 4, ll. 29-30, 34-35, 39, 44)

[7]In describing the claimed invention to the patent examiner, the inventor explained that his invention

> provides Internet users with the ability to reach any and all Internet locations on any of the servers connected to the Internet, **as opposed to the single merchant server** utilized by the [prior art] Levergood et al. system.

(D.I. 138 at 061792-92) (emphasis added) Likewise, in distinguishing the claimed invention from other prior art, the inventor explained:

> [W]hile Edelstein et al. proposes that information providers advertise the electronic addresses of **their** resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources. Instead, the advertisement taught by Edelstein et al. would take the form of an advertisement for a **single company with the electronic address of the company's resource,** just as companies today advertise their own (not their competitors') resources by their URLs.

4

5. The phrase "**a predetermined published Internet location**" is construed to mean "a predetermined Web site (or any other type of data found on the Internet): (a) which has a unique URL address included in the published compilation; and (b) which serves to provide access to other preselected Internet locations.[8]

6. The phrase "**a unique predetermined multi-digit jump code**" is construed to mean "a unique predetermined code consisting of more than one number." There is nothing in the specification, however, to warrant the defendants' proposed narrower construction, limiting the code to just numbers, so long as the code has more than one number.

*signature*
United States District Judge

(*Id.* at 061834) (emphasis added)

---

[8] I.e., the specialized Web site described in the specification.

5