## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNET MEDIA CORPORATION )
)
      Plaintiff, )
)
      v. )   C.A. No. 05-633 (SLR)
)
DELL, INC., OFFICE DEPOT, INC., J.C. )
PENNEY COMPANY, INC., WILLIAMS- )
SONOMA, INC., J. CREW GROUP, INC., )
)
      Defendants. )
)

**OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT OF DEFENDANTS J.C. PENNEY COMPANY, INC.,
WILLIAMS-SONOMA, INC., AND J. CREW GROUP, INC.**

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
OF COUNSEL:
Wilmington, DE 19899
(302) 984-6000
James G. Gilliland, Jr.
E-mail: *provner@potteranderson.com*
Matthew R. Hulse
TOWNSEND AND TOWNSEND AND   *Attorneys for J.C. Penney Company, Inc., Williams*
CREW LLP   *Sonoma, Inc., and J. Crew Group, Inc.*
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
(415) 576-0200

Dated: April 20, 2009

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF ARGUMENT ...............................................................................1

III.    STATEMENT OF FACTS ......................................................................................3

        A.      The Patented Technology .............................................................................3

        B.      Defendants' Accused Systems......................................................................8

IV.     LEGAL STANDARDS .........................................................................................10

        A.      Summary Judgment Standard .....................................................................10

        B.      Direct Infringement Standard .....................................................................11

                1.      Literal Infringement ........................................................................11

                2.      The Doctrine Of Equivalents ...........................................................11

        C.      Indirect Infringement Standard ..................................................................12

V.      ARGUMENT .........................................................................................................12

        A.      Defendants' Accused Systems Do Not Infringe .......................................13

                1.      Defendants' Accused Systems Do Not Have A
                        "Published Compilation Of Preselected Internet
                        Locations".........................................................................................13

                2.      Defendants' Accused Systems Do Not Have A
                        "Predetermined Published Internet Location" .................................15

                3.      IMC Cannot Prove Either Infringement Under The
                        Doctrine of Equivalents Or Indirect Infringement..........................17

VI.     CONCLUSION.......................................................................................................18

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ................................................................. 3, 12, 18

*Bayer AG v. Elan Pharm. Research Corp.*,
  212 F.3d 1241 (Fed. Cir. 2000) ........................................................................ 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................... 10

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ........................................................................ 12

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
  103 F.3d 978 (Fed. Cir. 1997) .......................................................................... 11

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  365 F.3d 1054 (Fed. Cir. 1994) ........................................................................ 12

*Honeywell Int'l. Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) ................................................................. 2, 12, 17

*Kahn v. Gen. Motors Corp.*,
  135 F.3d 1472 (Fed. Cir. 1998) ........................................................................ 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).......................................................................................... 10

*Oracle Corp. v. Parallel Networks, LLP*,
  588 F. Supp. 2d 549 (D. Del. 2008)................................................................... 11

*Southwall Tech., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) .......................................................................... 15

*Trell v. Marlee Elecs. Corp.*,
  912 F.2d 1443 (Fed. Cir. 1990) ........................................................................ 12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)............................................................................................ 11

*Wolverine World Wide Inc. v. Nike, Inc.*,
  38 F.3d 1192 (Fed. Cir. 1994) .......................................................................... 11

## TABLE OF AUTHORITIES (con't)

Page

**Statutes and Rules**

35 U.S.C. § 271 ..................................................................................................................... 12

Fed. R. Civ. P. 56(e) ............................................................................................................ 10

## I.   INTRODUCTION

This is an action for patent infringement in which plaintiff Internet Media Corporation ("IMC") alleges that defendants Dell, Inc. ("Dell"), Office Depot, Inc. ("Office Depot"), J.C. Penney Company, Inc. ("J.C. Penney"), Williams-Sonoma, Inc. ("Williams-Sonoma"), and J. Crew Group, Inc. ("J. Crew") infringe U.S. Patent No. 6,049,835 ("the '835 patent"). On January 14, 2009, this Court entered its ruling construing certain claim terms in the '835 patent. As so construed, IMC cannot prove infringement by any of the defendants. Consequently, in accordance with the Court's Order entered on March 30, 2009, defendants J.C. Penney, Williams-Sonoma, and J. Crew (collectively, "Defendants") hereby move for entry of summary judgment in their favor.

The '835 patent claims a published compendium of websites on the Internet together with a specialized Internet site that allows users easily to connect to the multiple websites listed in the compendium. IMC has tried to stretch its patent to cover the website of a single merchant and that merchant's catalog of products. However, as properly construed by this Court, the '835 patent does not apply to a single merchant's website and, therefore, none of the moving parties infringe as a matter of law.

## II.   SUMMARY OF ARGUMENT

1.      The Court should grant Defendants' summary judgment of noninfringement on all the asserted claims of the '835 patent and enter judgment for Defendants.

2.      There is no genuine issue as to any material fact concerning the structure or function of Defendants' accused websites and catalogs. The question of literal infringement, therefore, collapses into claim construction and can be decided on summary judgment.

3.      IMC asserts essentially the same theory of infringement against each Defendant. Based upon this Court's construction of the claims of the '835 patent, IMC's infringement theory

fails as a matter of law.

4.      IMC alleges that Defendants' accused systems infringe the asserted claims of the '835 patent because, among other things, Defendants' product catalogs purportedly are "published compilations of preselected Internet locations." This argument fails as a matter of law because IMC represented to the U.S. Patent and Trademark Office ("PTO") that its claimed invention does **not** cover a publication which advertises products of a ***single merchant***. The Defendants' accused catalogs, therefore, are not "published compilations of preselected Internet locations" because they advertise products of a single merchant: all of the products in Williams-Sonoma's catalogs are sold by Williams-Sonoma; all of the products in J. Crew's catalogs are sold by J. Crew; and all of the products in J.C. Penney's catalogs are sold by J.C. Penney.

5.      IMC also alleges that Defendants' accused systems include a "predetermined published Internet location." This argument fails as a matter of law because the claimed invention requires that the "predetermined published Internet location" of each accused system permit access to any and all locations on the Internet. Here, however, Defendants' accused systems only permit access to web pages associated with a single merchant (e.g., Williams-Sonoma). Consequently, the accused systems lack a "predetermined published Internet location" as a matter of law.

6.      IMC is estopped from asserting infringement under the doctrine of equivalents because IMC made arguments to the PTO during prosecution which narrowed the scope of the claimed invention. IMC cannot recapture under the doctrine of equivalents the claim coverage it surrendered in prosecution to secure issuance of the '835 patent. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139-40 (Fed. Cir. 2004).

7.      Defendants have not indirectly infringed the '835 patent, either contributorily or by inducement. Since Defendants' accused systems do not directly infringe any claim, there can

be no indirect infringement. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1048-49

(Fed. Cir. 2000)

## III.    STATEMENT OF FACTS

The '835 patent claims a form of published directory listing hundreds or thousands of

websites and a short-cut method of accessing those websites.  IMC's business concept was ill-

conceived; powerful on-line search engines allowing users of the Internet to find desired

websites eliminated any desire for a published compilation of websites.  Left without a

functioning business, IMC has tried to read its patent on the product catalog of a single company

and that company's one website.  Based upon this Court's construction of the terms of the '835

patent, and the undisputed operation of Defendants' websites, the accused systems do not

infringe as a matter of law.

### A.    The Patented Technology

In August of 1996, IMC filed the patent application which ultimately led to the '835

patent, entitled:  SYSTEM FOR PROVIDING EASY ACCESS TO THE WORLD WIDE WEB

UTILIZING A PUBLISHED LIST OF PRESELECTED INTERNET LOCATIONS

TOGETHER WITH THEIR UNIQUE MULTI-DIGIT JUMP CODES.

By the time IMC filed its patent application, the Internet had already developed into a

mighty resource, providing users access to thousands upon thousands of files located on

computers around the world, all of which are connected together in an enormous network.  The

basic concept of the Internet – allowing navigation to files residing on other computers

connected to the network – was elegant and simple: assign to the location of each of those files a

unique address identifying that file's location on a computer connected to the Internet.  Such

unique addresses were christened URLs, an acronym for "Universal Resource Locators."[1]

As the number of URLs increased exponentially in the mid 1990's, they grew more complex. Memorizing the URLs of desired Internet locations was impractical, manually entering URLs into an Internet browser was error prone and was viewed by some as a cumbersome task. Also, according to IMC, there was the frustration associated with finding useful websites since many did not offer "any truly useful information or other benefits." (Ex. A, 3:66-4:1.)[2]

Eric Gagnon, the named inventor of the '835 patent, believed the perceived deficiencies of prior methods of navigating the Internet evidenced "a need for a system which the Web user can use to access Websites which contain a substantial amount of original information, graphics, or multi-media, provide useful advice, news or entertainment, and present the information in a well-thought out and professional manner." (*Id.*, 4:15-22.) "Most importantly" there was "a great need to provide Web users with a system for accessing such Web pages in an easy to use, automatic, and efficient manner." (*Id.*)

IMC's system was an attempt to simplify navigation among multiple places of interest on the Internet. The '835 patent's alleged invention was to publish a book listing the URLs for the locations of Internet files of interest and assigning to each a unique number (called a "jump code."). A user could then access a companion site on the Internet, enter one of the jump codes and automatically access the corresponding Internet location.

More specifically, the main embodiment of the '835 patent, a book called *What's on the*

---

[1] URL has also been referred to as a "Uniform Resource Locator."

[2] Exhibits in support of Defendants' motion are contained in the Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment of Noninfringement, filed herewith. As additional support for Defendants' motion, Defendants file herewith the Declaration of Matthew R. Hulse in Support of the Motion for Summary Judgment of Noninfringement of Defendants J.C. Penney Company, Inc., Williams Sonoma, Inc., and J. Crew Group, Inc. ("Hulse Decl.").

*Web* and published by IMC, published a summary and review of multiple websites, as well as the

URLs of those websites together with a "jump code" assigned to each website.  (Ex. A, 5:50-61.)

An excerpt from the 1995-96 version of the book is reproduced below.



**52**   Chapter 3: **Business, Investment, & Self-Help**   What's on the Web



**Follow that Package!**
**FedEx Airbill Tracking Form**  7112
Feeling nervous about the big business presentation you sent, via Federal Express, to your business partners? Will they receive them in time? Well, wipe the sweat off your brow and log onto to FedEx's tracking page. There you can track where your package or envelope is, anywhere in the world, anytime of the day. It couldn't be simpler— just type in your tracking number in the field provided and the status of the package will be displayed. —E.v.B.)

http://www.fedex.com/

(Ex. B)  As shown in this excerpt from *What's on the Web,* the "published compilation" includes:

a review of each preselected website (in this case, Federal Express), the URL

(http://www.fedex.com), and the four-digit jump code (7112) corresponding to the URL.

    The book also included the URL for IMC's companion website,

http://www.jumpcity.com/, called "Jump City," such that a user could locate a desired *website* in

the book, determine the appropriate code corresponding to that website and use the companion

Jump City website to automatically access the desired website (Ex. A, 5:37-44):

> A user desiring to access one of the preselected websites first gains access
> to the World Wide Web, using a Web browser, by accessing a special
> Website [e.g., JumpCity at http://www.jumpcity.com/] which contains
> software for receiving any of the published four-digit jump codes and,
> based upon the stored relationship of the URLs corresponding to the input
> jump code, directly accesses the Website corresponding to the jump code
> inputted by the user.

(Ex. A, 4:57-65.)   A schematic illustrating how the JumpCity website operates in conjunction

with *What's on the Web* is shown below:



The book, *What's on the Web,* is designated by reference numeral 110, and the JumpCity

website is designated by reference numeral 108.  The JumpCity website is accessed through a

personal computer 100.  Taking the website located at http://www.fedex.com by way of

example, the user enters Federal Express's jump code (7112) into the JumpCity website, and a

software program in JumpCity then "searches through its database of URLs, and finds the URL

which is linked to the input jump code.  The software then links the user either directly to the

desired Website, or alternatively, first to a brief written review of the Website."  (*Id.*, 7:6-10.)

Thus, a user may, through the use of simple numerical jump codes and the JumpCity website,

access websites whose URLs are listed in *What's on the Web* without having to key in their

URLs.  (Ex. A, 7:10-19.)

Claim 1 of the '835 patent is exemplary of the asserted claims:[3]

> 1. A system for providing automatic access to preselected locations on the Internet, comprising:
>
> a published compilation of preselected Internet locations, said published compilation including a unique predetermined multi-digit jump code assigned to each of said preselected Internet locations published therein;
>
> a predetermined published Internet location having an address published in said published compilation, said predetermined published Internet location including means for capturing a desired multi-digit jump code assigned to each preselected Internet location after said multi-digit jump code has been entered by a user after accessing said predetermined published Internet location;
>
> means for accessing said predetermined published Internet location;
>
> means for receiving said desired multi-digit jump code from said means for capturing and means for converting said received multi-digit jump code to a URL address corresponding to the desired preselected Internet location; and
>
> means for automatically accessing said desired preselected Internet location using said URL address corresponding to said desired preselected Internet location, whereby said user need only enter said desired multi-digit jump code to access a desired preselected Internet location without having to enter said corresponding URL address.

Claim 1 describes a system which includes a "published compilation of preselected Internet locations" (e.g., the book *What's on the Web*).  The published compilation includes a "multi-digit jump code" assigned to each predetermined Internet location (e.g., the jump code corresponding to Federal Express).  The published compilation further includes a "predetermined published Internet location," (i.e., http://www.jumpcity.com) which is published in the "published compilation," and that permits entry of a multi-digit jump code for accessing a desired preselected Internet location (e.g., http://www.fedex.com).

---

[3] The asserted claims of the '835 patent are claims 1-3, 5, 6, 8, 10, 11-13, 15-16, 18 and 20.

**B.    Defendants' Accused Systems**

IMC contends that the '835 patent covers Defendants' use of catalogs and the Internet to promote their products.  The accused system of Williams-Sonoma, for example, includes a printed Williams-Sonoma catalog that contains descriptions of products offered for sale by Williams-Sonoma.  (Ex. C, ¶¶63-68.)  The product descriptions include, among other things, item numbers which can be used to place an order by mail, by telephone, or online.  (*Id.*)  When the product number is entered into the Williams-Sonoma website, http://www.williams-sonoma.com, the site generates a web page corresponding to that product.  (*Id.*)  According to IMC, the operation of the accused systems of J.C. Penney and J. Crew are virtually identical to Williams-Sonoma's accused system.[4]  (Ex. C, ¶¶48-53,78-83; *see also* Exs. D-F (Internet Media's Responses to Interrogatory No. 1 of J.C. Penney, Williams-Sonoma, and J. Crew), including claim chart attached to each interrogatory response.)

To illustrate the operation of an accused system, set forth below is a description of the use of a current Williams-Sonoma printed catalog and website.  The Williams-Sonoma catalog includes a description of the "herb snips" product:



(Hulse Decl., ¶3.)  As shown above, the product description in the printed Williams-Sonoma catalog includes an item number (75-8200123) corresponding to the herb snips product.  A

---

[4] The facts recited herein are taken from IMC's Complaint and, therefore, cannot be disputed by IMC.

consumer may use the item number to obtain further information about the product through

Williams-Sonoma's website, http://www.williams-sonoma.com, which IMC contends is a

"predetermined published Internet location" as claimed in the '835 patent.  (Hulse Decl., ¶4.)

That web page includes a box into which the herb snips item number may be entered:



When the item number corresponding to the herb snips product is entered into the Williams-

Sonoma website, a Williams-Sonoma web page is generated which discloses information about

that product.  Below is a portion of a web page generated as a result of entering the item number

for the herb snips product (75-8200123):



(Hulse Decl., ¶5.)  This web page is an example of what IMC contends is a "preselected Internet location" as claimed in the '835 patent.

## IV.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment shall be granted where the moving party "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b).  IMC, as the holder of the asserted patent, bears the burden of proving infringement. *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1476-77 (Fed. Cir. 1998).  To obtain summary judgment, Defendants need only show "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  IMC, as the nonmoving party, must "come forward with 'specific facts showing that there is a genuine issue for trial'" in order to successfully oppose this motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

### B.    Direct Infringement Standard

#### 1.    Literal Infringement

A determination of literal infringement requires that "every limitation set forth in a claim must be found in an accused product, exactly." *Oracle Corp. v. Parallel Networks, LLP*, 588 F. Supp. 2d 549, 563 (D. Del. 2008) (quoting *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Where there is no material dispute of fact over the physical characteristics of the accused product, *e.g.*, its structures or functions, "the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997). Where an independent patent claim is not infringed, it is axiomatic that any claims depending from that claim are also not infringed. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

#### 2.    The Doctrine Of Equivalents

If a claim element is not literally present in an accused product, there is no literal infringement. However, a product which does not literally infringe a patent claim may be found to infringe if there is "equivalence" between the elements of the accused product and the claim elements of the patented invention. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). An element of an accused product may be considered to be equivalent to a claim element of the patented invention if there are "insubstantial differences" between the element in the accused product and the claim element of the patented invention. *Id.* at 39-40. But there is an important limitation on a patentee's ability to establish infringement under the doctrine of equivalents: when a patentee narrows the scope of the claims during prosecution before the PTO, by either amending the claims or making arguments, the patentee is estopped from recapturing

the previously-surrendered claim scope with the doctrine of equivalents. *Honeywell Int'l. Inc.,*

370 F.3d at 1139-40.

### C.   Indirect Infringement Standard

The two forms of indirect infringement within the United States are active inducement

pursuant to 35 U.S.C. § 271(b), and contributory infringement pursuant to § 271(c). *Oracle*

*Corp.,* 588 F. Supp. 2d at 563-64.  Both theories of indirect infringement require that direct

infringement by another be proven as a predicate. *Arthur A. Collins, Inc.,* 216 F.3d at 1048-49.

Contributory infringement requires that the accused infringer sell a "component" of a patented

invention "knowing the same to be especially made or especially adapted for use in an

infringement of such patent." *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990)

(quoting 35 U.S.C. § 271(c)).  There can be no contributory infringement, however, if the

component is either not "a material part of the invention," or has a "substantial non-infringing

use." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 1994).  The

patentee has the burden of proving that the component sold has no "substantial non-infringing

use." *Id.*  Inducement of infringement requires that the accused infringer "knew or should have

known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co.,* 471 F.3d

1293, 1306 (Fed. Cir. 2006) (en banc) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.,*

917 F.2d 544, 553 (Fed. Cir. 1990).  In any event, Defendants cannot be liable for indirect

infringement when there is no direct infringement by another.

## V.   ARGUMENT

Defendants' do not infringe the '835 Patent because at least two crucial elements of every

asserted claim are missing from Defendants' systems. IMC contends that Defendants infringe

the '835 patent because, among other things, they distribute catalogs or advertisements

containing product information, including item numbers associated with individual products

which can be entered into a website to generate a product web page.  IMC's theory is that such catalogs or advertisements are "published compilations of preselected Internet locations," and the website into which product item numbers are entered is a "predetermined published Internet location" as claimed in the '835 patent.  Both contentions are wrong.

A.    Defendants' Accused Systems Do Not Infringe

1.    Defendants' Accused Systems Do Not Have A "Published Compilation Of Preselected Internet Locations"

The undisputed evidence demonstrates that Defendants' accused systems lack a "published compilation of preselected Internet locations" under the Court's claim construction.[5] All parties agree that Defendants' catalogs recite product item numbers which can be entered into Defendants' websites to generate a page corresponding to each product (the "accused catalogs").  (Hulse Decl., ¶¶3-12.)  The accused catalogs, however, are not "published compilations of preselected Internet locations" because they only relate to the products of a single merchant.  Consequently, the accused catalogs do not satisfy the Court's construction of that claim element, namely, "a publicly accessible collection of information which corresponds to preselected Web sites (or to any other type of preselected data found on the Internet) which have unique URL addresses, the URL addresses *being associated with diverse individuals or entities*."  (Ex. G, ¶4 (emphasis supplied).)  Rather than "being associated with diverse individuals or entities," the accused catalogs advertise information corresponding to products associated with *a single merchant*.  In other words, the accused catalogs of Williams-Sonoma only advertise products sold by Williams-Sonoma; the accused catalogs of J. Crew only advertise products sold by J. Crew; and the accused catalogs of J.C. Penney only advertise products sold

---

[5] This claim element is found in every asserted claim of the '835 patent.

by J.C. Penney. Likewise, the URL addresses published in the catalogs of these single merchants correspond only to the websites associated with these single merchants. The J.C. Penney catalog, for example, does not publish the URLs for the websites of Williams-Sonoma, J. Crew, or any other company. (Hulse Dec., ¶9.) Consequently, the accused catalogs are not "published compilation[s] of preselected Internet locations" under the Court's claim construction.

Moreover, IMC is estopped from asserting that the accused catalogs are "published compilations of preselected Internet locations" based on IMC's arguments to the PTO during prosecution of the '835 patent. IMC obtained allowance of the '835 patent by explicitly asserting that the claimed invention did *not* cover a printed advertisement for a single merchant.

During prosecution, the PTO rejected the pending patent application on the grounds that U.S. Patent No. 5,764,906 ("Edelstein") rendered the claimed invention invalid. (Ex. H.) In response, IMC argued that its claimed invention was different from Edelstein because, among other things, Edelstein did not disclose a "published compilation" as claimed by IMC. Plaintiff specifically asserted that, in <u>contrast</u> to its claimed invention, Edelstein disclosed an advertisement *for a single merchant*:

> [W]hile Edelstein et al. proposes that information providers advertise the electronic addresses of *their* resources, it does not follow that information providers would have been motivated to publish a compilation, which would almost certainly include the electronic addresses of their competitors' resources. Instead, the advertisement taught by Edelstein et al. would take the form of an advertisement for a *single company with the electronic address of the company's resource,* just as companies today advertise their own (not their competitors') resources by their URLs.

(Ex. I, p. 4.) In other words, IMC expressly distinguished the claimed invention from systems only publishing the electronic addresses (i.e., URLs) for a single company. Yet that is precisely the type of advertisement which IMC now accuses of infringement: each of the accused catalogs of Defendants advertise products for a single company and in their catalogs make reference only

to the company's own website.  In short, the accused catalogs are precisely the type of advertisements which IMC told the PTO were ***not*** covered by the claimed invention.  By narrowing the scope of the claimed invention to obtain allowance of the '835 patent, IMC is now estopped from reading its claims more broadly in litigation.  Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

### 2.      Defendants' Accused Systems Do Not Have A "Predetermined Published Internet Location"

In addition to lacking a "published compilation of preselected Internet locations," the accused systems do not have a "predetermined published Internet location."  This requirement is present in both of the asserted independent claims of the '835 patent.  The claims require that the "predetermined published Internet location" be published in the "published compilation of preselected Internet locations."  The Court has construed "predetermined published Internet location" to mean "a predetermined Web site (or any other type of data found on the Internet): (a) which has a unique URL address included in the published compilation; and (b) **which serves to provide access to other preselected Internet locations**."  (Ex. G, ¶5(emphasis supplied).)

IMC contends that Defendants' accused systems satisfy this limitation by including a website address in the accused catalogs (e.g., http://www.williams-sonoma.com).  (Exs. D-F.)  IMC further contends that such website addresses permit access to "other preselected Internet locations" by permitting entry of a product item number on the website to generate a web page corresponding to that product.  (*Id.*)  But IMC's infringement theory fails as a matter of law because this claim element, as construed by the Court, does not cover a web page within a single merchant's website.

IMC asserted to the PTO during prosecution that the claimed invention does ***not*** cover a single merchant's website.  In particular, IMC distinguished the claimed invention from U.S.

Patent No. 5,708,780 ("Levergood") after the PTO rejected IMC's pending patent claims in view

of the Levergood reference.  In an effort to distinguish the claimed invention from Levergood,

IMC asserted the claimed invention was different because it permitted Internet users to reach ***any***

location on the Internet.  In contrast, according to IMC, Levergood involved Internet locations

associated with a single merchant:

> [The claimed invention] provides Internet users with the ability to
> reach ***any and all Internet locations*** on any of the servers
> connected to the Internet, ***as opposed to the single merchant
> server*** utilized by the [prior art] Levergood et al. system.

(Ex. J, p. 4 (emphasis supplied).)  Like its arguments concerning Edelstein, IMC argued to the

PTO that the claimed invention did not cover systems associated with a single merchant, such as

the one disclosed in Levergood, but rather <u>required</u> "the ability to reach ***any and all*** Internet

locations on any of the servers connected to the Internet."  (*Id.* (emphasis supplied).)  In other

words, the claimed invention requires that the "predetermined published Internet location"

permit access to ***any and all*** locations on the Internet.  The websites of the accused systems (e.g.,

http://www.jcrew.com), in contrast, do not permit such access.  Rather, when an accused system

is used in an allegedly infringing manner (e.g., a product item number located in a catalog is

entered into the merchant's website to generate a web page associated with that product), one

cannot access "any and all Internet locations" but, instead, merely can retrieve a web page from

within the single merchant's own website.

The accused systems only permit access to web pages that are associated with products of

a single merchant.  One can enter product item numbers on J. Crew's website, for example, to

generate web pages that correspond to J. Crew's products.  But it is undisputed that it is

impossible to enter a product item number on J. Crew's website to access web pages that are not

related to J. Crew.  Entering a product code into the J. Crew website will not take the user to the

J. C. Penney website, or the Williams-Sonoma website, etc.  Consequently, Defendants' accused

systems do not satisfy the "predetermined published Internet location" limitation.

IMC may argue that J.C. Penney's accused system satisfies the claim limitations discussed above because J.C. Penney's web site includes a web link to Sephora's web site. (Hulse Decl., ¶12.)  This link, however, is not relevant at all to the claimed invention of the '835 patent.  The Sephora web link does satisfy the "published compilation" limitation of the '835 patent.  In fact, there is no evidence of any printed J.C. Penney catalogs containing item numbers that, when entered into the J.C. Penney web site, will direct the user to Sephora's web site.  (*Id.*, ¶13.)  All such entries will take the user to the J.C. Penney web site.  Similarly, the Sephora web link does not satisfy the "predetermined published Internet location" limitation of the '835 patent.  There is no evidence of any printed J.C. Penney catalog that contains the web site address of Sephora.  (*Id.*, ¶13.)  In short, the link to Sephora may be a convenience to users of the J.C. Penney website, but it is not relevant at all to the '835 patent, and therefore does not raise a genuine issue of material fact precluding the entry of summary judgment.

For the reasons set forth above, Defendants' accused systems do not have either a "published compilation of preselected Internet locations" or a "predetermined published Internet location."  The accused systems therefore do not literally infringe the asserted claims as a matter of law.

### 3.     IMC Cannot Prove Either Infringement Under The Doctrine of Equivalents Or Indirect Infringement

As discussed above, in order to obtain allowance of the patent, IMC made several arguments to the PTO to distinguish the claimed invention from the prior art Edelstein and Levergood references.  In doing so, IMC narrowed the scope of the claimed invention in the manner described above.  IMC, therefore, is estopped from recapturing the previously-surrendered claim scope through the doctrine of equivalents.  *Honeywell Int'l. Inc.,* 370 F.3d at 1139-40.  Consequently, as a matter of law, IMC cannot establish under the doctrine of

equivalents that Defendants' accused systems satisfy the "published compilation of preselected Internet locations" and "predetermined published Internet location" limitations of the asserted claims.

Finally, Defendants' accused systems do not indirectly infringe as a matter of law, either contributorily or by inducement.  Both theories of indirect infringement require as a predicate that direct infringement by another be proven.  *Arthur A. Collins, Inc.*, 216 F.3d at 1048-49. However, IMC cannot prove direct infringement because Defendants' systems are missing at least two elements of the asserted claims.  Consequently, there also is no indirect infringement as a matter of law.

## VI.    CONCLUSION

Based upon the Court's construction of key terms in the '835 patent, IMC cannot meet its burden of showing that Defendants' accused systems meet each and every limitation of the asserted claims.  Consequently,  entry of summary judgment of noninfringement is proper and should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James G. Gilliland, Jr.
Matthew R. Hulse
TOWNSEND AND TOWNSEND AND
CREW LLP
Two Embarcadero Center, 8th Floor
San Francisco,  CA 94111
(415) 576-0200

Dated:  April 20, 2009

912669

By: _____
Philip A. Rovner (#3215)
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail:  *provner@potteranderson.com*

*Attorneys for J.C. Penney Company, Inc., Williams Sonoma, Inc., and J. Crew Group, Inc.*

April 20, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 20, 2009, the within

document was electronically filed with the Clerk of the Court using CM/ECF which will

send notification of such filing(s) to the following; that the document was served as

indicated on the following counsel; and that the document is available for viewing and

downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Thomas P. Preston, Esq.
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE  19801
preston-t@blankrome.com

Titania Mack Parker, Esq.
Greenberg Traurig, LLP
The Nemours Building
1007 N. Orange Street, Suite 1200
Wilmington, DE  19801
parkertm@gtlaw.com

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

I hereby certify that on April 20, 2009, I have sent the document in the

manner listed to the following non-registered participants:

### BY E-MAIL

Ronald J. Schutz, Esq.
Diane L. Simerson, Esq.
Andrea L. Gothing, Esq.
Nicole N. Morris, Esq.
Robins, Kaplan, Miller & Ciresi, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
rjschutz@rkmc.com
dlsimerson@rkmc.com
algothing@rkmc.com
nnmorris@rkmc.com

David B. Weaver, Esq.
Kristen P. Foster, Esq.
Vinson & Elkins L.L.P.
2801 Via Fortuna, Suite 100
Austin, TX  78746
dweaver@velaw.com
kfoster@velaw.com

**BY E-MAIL**

Douglas R. Weider, Esq.
Michael A. Nicodema, Esq.
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY  10166
weiderd@gtlaw.com
nicodemam@gtlaw.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
provner@potteranderson.com